UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

FILED
DEC 23 1999

JOHN M. WATERS, CLERK
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CHARLES GREEN, )
    Plaintiff, )
)
v. )
) Case No. 99-2126
ILLINOIS POWER COMPANY and )
THE INTERNATIONAL )
BROTHERHOOD OF ELECTRICAL )
WORKERS, LOCAL 51, )
    Defendants. )

## REPORT AND RECOMMENDATION

Defendant Illinois Power Company (IP) has filed a motion to dismiss[1] for claim preclusion, issue preclusion, and time bar. This Court is vested with jurisdiction to hear Plaintiff's claims pursuant to 28 U.S.C. § 1331. After reviewing the pleadings and memoranda presented by the parties, it is my recommendation, pursuant to my authority under 28 U.S.C. § 636(b)(1)(B), that Defendant Illinois Power Company's Motion to Dismiss (#8) be **GRANTED** for the reasons set forth below.

### Background

Plaintiff alleges four counts: (I) IP discriminated against Plaintiff on the basis of race by not hiring him for shift technician positions at IP's Baldwin and Wood River facilities that were posted on July 11, 1996, and filled on January 6, 1997, and April 28, 1997. (II) IP passed Plaintiff over for these positions because of retaliation for filing a charge of discrimination with the EEOC, a statutorily protected activity, in the form of not hiring him for shift technician positions at the Baldwin and Wood River facilities that were filled on January 6, 1997, and April 28, 1997. (III) IP engaged in a pattern of race discrimination by denying Plaintiff promotions in 1992, 1994, 1995, and 1996. (IV) International Brotherhood of Electrical

---

[1] Although the motion does not specifically state the rule under which it is being brought, the Court infers from Defendant Illinois Power Company's Memorandum in Support of Its Motion to Dismiss (p.2, fn. 3), that this is a motion brought under Fed. R. Civ. P. 12(b)(6).

Exhibit 5

Workers, Local 51 (IBEW) refused to process five grievances filed by Plaintiff but processed less meritorious grievances filed by whites.

Counts I-III are made pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1999). Defendant IP asserts that the alleged discrimination in Counts I-III cannot be relitigated because the claims and issues have already been decided through due process of law. In addition, IP alleges that the claims being brought in Counts I-III are partially time barred. Defendant IBEW has not brought a motion to dismiss and, therefore, Count IV is not at issue for the purposes of this motion.

When ruling on a motion to dismiss, all well-pleaded factual allegations as well as reasonable inferences drawn from them are accepted as true in the light most favorable to the plaintiff. *Cornfield v. Consol. High Sch. Dist. No. 230,* 991 F.2d 1316, 1324 (7th Cir. 1993) (citing *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir. 1985), *cert. denied,* 475 U.S. 1047 (1986)). When considering a motion to dismiss, the court examines the sufficiency of the complaint, not the merits of the lawsuit. *Triad Associates v. Chicago Housing Authority,* 892 F.2d 583, 586 (7th Cir. 1989). The motion to dismiss will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The court may "take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment." *Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir. 1994) (quotation marks and citation omitted).

Plaintiff Charles Lee Green, an African American male, has worked for IP since January 7, 1991; he has worked at IP's Danville service area since June 1992, where he is currently a substation electrician. He filed his first charge of discrimination (#210971056) with the Equal Employment Opportunity Commission (EEOC) on January 6, 1997, "alleging that he had been discriminated against because of his race in that he had been passed over in the past for promotions." (Compl. at 7.) In this charge Plaintiff checked "Race" under the category "Cause

of Discrimination Based On." As the dates between which the discrimination took place, Plaintiff listed "03/01/96" under "earliest" and no date under "latest," and he checked the box for "continuing action." Then, "subsequent to the time that he filed his [charge] Plaintiff . . . began making comments to his co-workers concerning his actions in initiating his civil rights claim." (Compl. at 7.) He was given his right-to-sue letter on June 24, 1997, and proceeded to file a complaint against his employer, IP, and its corporate parent, Illinova Corporation,[2] in the Central District of Illinois on July 17, 1997, a case that will be referred to in this opinion as *Green I*.

That case (97-2148) was resolved by this Court's granting Defendant IP's motion for summary judgment. In its order, the Court identified Plaintiff's "discernable claims" as follows: "(1) that he was wrongly denied shift technician positions at two IP power plants; (2) that he was wrongly denied an electronic technician position; and (3) that his former supervisor was more generous in allowing leaves of absence for his white coworker." Plaintiff sought review of the Court's decision, and the grant of summary judgment was affirmed by the United States Court of Appeals for the Seventh Circuit. The Seventh Circuit summarized the facts behind *Green I* as follows:

> In July 1996, Green applied for vacant shift technician positions at IP's Baldwin and Wood River coal-fired power plants. IP managers at Baldwin quickly eliminated Green and two white candidates from consideration because of excessive absenteeism. Green had missed over 32 days of work, in addition to vacation time off, during the previous two years. Both of the excluded white candidates had better attendance records than Green. The Wood River managers refused to interview Green, not only because of absenteeism, but also because he lacked previous work experience in a coal-fired industrial power plant. Eventually, all the shift technician positions were filled by white candidates.

---

[2] The Court subsequently granted Illinova Corporation's separate summary judgment motion.

3

*Green v. Illinois Power Company,* 175 F.3d 1019 (7th Cir. 1999).[3] The Seventh Circuit concluded as part of its opinion that Green was not qualified for the Baldwin and Wood River shift technician positions.

In the meantime, Plaintiff had filed a second charge against IP (#210980600) with the EEOC on November 28, 1997, which is the basis for this lawsuit, *Green II*. In the second charge Plaintiff checked the "Race" and "Retaliation" boxes under the category of "Cause of Discrimination Based On." As the dates between which the discrimination took place, Plaintiff listed "01/06/97" under "earliest" and "04/28/97" under "latest." The particulars of this charge described retaliation on the specific dates of January 6, 1997, and April 28, 1997, dates on which Plaintiff "was not given the opportunity to be considered for two Baldwin Station Shift Technician positions. . . . I was also denied an opportunity to take the POSS test, which is required for the Shift Technician position. The last test was given in April 1997." Pl.'s EEOC Charge #210980600. Plaintiff received a right-to-sue letter from the EEOC mailed February 26, 1999, and he filed the *Green II* complaint on May 26, 1999.

Plaintiff indicates that Count I of the *Green II* complaint is a claim based on 42 U.S.C. § 2000e-2.[4] Count I of Plaintiff's allegations is based on Plaintiff's not being hired for announced open positions for shift technicians at IP's Baldwin and Wood River plants, positions which were announced in July 1996. Plaintiff asserts that he "applied in a timely manner for the positions"

---

[3] Pursuant to Rule 53 of the United States Court of Appeals for the Seventh Circuit, unpublished cases may be cited in opinions regarding claim and/or issue preclusion.

[4] §2000e-2(a) Employer practices. It shall be an unlawful employment practice for an employer–
(1)   to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2)   to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

4

and that he "was qualified for those positions." (Compl. at 3.) His qualifications to serve in those positions are not specifically explained in the complaint, although he states that "by virtue of his training, background, and experience [he] was well qualified to hold those positions and it was consistent with his career goals and objectives." (Compl. at 4.) Plaintiff continues that "notwithstanding the application made by Plaintiff . . . and his qualifications for those positions, he was not afforded the opportunity to take the POSS test, was not offered an opportunity to interview for the positions and was not offered any of the positions." (Compl. at 4.) He says that "he was passed over for positions for which he was well-qualified in favor of less qualified Caucasian males." (Compl. at 4.) These positions "were filled on or about January 6, 1997 and on or about April 28, 1997." (Compl. at 8.)

In Count II, Plaintiff alleges that IP practiced retaliatory employment discrimination in violation of 42 U.S.C. § 2000e-3(a)[5] by not hiring him for shift technician vacancies at the Baldwin and Wood River facilities that were announced on July 11, 1996:

> That by virtue of the conduct described in the preceding paragraphs the Plaintiff . . . was the recipient of discriminatory treatment in employment because he was retaliated against for previously filing a charge of discrimination against Illinois Power in violation of 42 U.S.C. § 2000e-3(a) in that he was passed over for positions for which he was well-qualified in favor of individuals who were less qualified and had less experience than did the Plaintiff, Charles Green. Additionally, the successful applicants for those positions had not previously filed a charge of discrimination or complained about discrimination against Illinois Power.

---

[5] § 2000e-3(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings.

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

5

(Compl. at 9.)

In Count III, also based on 42 U.S.C. § 2000e-2 (see footnote 4), Plaintiff lists several other instances when he was allegedly passed over for positions for which he applied or wanted to apply at Illinois Power, asserting a pattern or practice of race discrimination against African American employees by IP. These positions are as follows: substation electronic technician in January 1992; substation electronic technician in October 1994; substation electronic technician in January 1995; and two substation electronic technician positions in April 1996. Plaintiff asserts that "by virtue of [this] conduct . . . Plaintiff . . . and other African-American employees of Illinois Power have been the recipient[s] of discriminatory treatment in employment because of race in violation of 42 U.S.C. § 2000e-2 in that they have been passed over for positions for which they have been well-qualified in favor of less qualified Caucasian males." (Compl. at 14.)

## Discussion

### I.     Threshold Issues

Two threshold issues must be addressed before the Court can turn its attention to claim and issue preclusion. First, the allegations are partially time barred. Second, the *Green II* complaint's claims exceed those made in Plaintiff's second EEOC charge.

### A.     Time Bar

An EEOC charge must be filed within 300 days of the dates of the occurrences to be included in the charge. 42 U.S.C. § 2000e-5(e)(1); *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 574 (7th Cir. 1998). Plaintiff "concedes that the actions which occurred on January 6, 1997 are time barred. . . ." (Pl.'s Mem. at 6.) Only occurrences taking place between February 2, 1997 (300 days prior to filing the second EEOC charge) and April 28, 1997 (last date of alleged discrimination in the second EEOC charge) may be considered from Plaintiff's second EEOC charge. Therefore, based on the facts regarding dates provided in the complaint, Count III is

completely time barred,[6] and Count II is time barred regarding the alleged retaliatory act on January 6, 1997 (as Plaintiff has conceded in his memorandum). Count I is time barred regarding any alleged acts prior to February 2, 1997, as well. What remains for the Court's consideration are Counts I and II as they apply to the time period February 2, 1997, through April 28, 1997.

### B.   Claims Raised in EEOC Charges

In support of his argument that the claims in *Green II* are not precluded, Plaintiff asserts, "In the first lawsuit filed by [Plaintiff] the Court could not have heard issues of discrimination which occurred subsequent to his filing of his charge with the EEOC." (Pl.'s Mem. at 3.) "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. Western and Southern Life Insurance Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). "This rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion . . . and of giving the [employer] some warning of the conduct about which the employee is aggrieved." *Id.* (citations omitted). If further occurrences of discrimination and/or separate instances of retaliation took place after January 6, 1997, the date of filing his first EEOC charge, then Plaintiff had to address the new occurrences separately in a new EEOC charge.

After applying this rule to the first EEOC charge, however, the Court is also obligated to apply the rule to the second EEOC charge. This result is less favorable for Plaintiff. "[T]he goals behind the requirement of prior resort to administrative relief would be frustrated if the filing of a general charge with the EEOC would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). "The test for determining whether an

---

[6] If Count III were not dismissed for being time barred, it would have been dismissed for not fitting within the claims raised in the second EEOC charge (see section I(B) of this opinion).

7

EEOC charge encompasses the claims in a complaint . . . grants the Title VII plaintiff significant leeway: all Title VII claims set forth in a complaint are cognizable that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Cheek*, 31 F.3d at 500 (quotation marks and citations omitted). When applying this principle to the facts in *Cheek*, the Seventh Circuit stated the following:

> Because an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination. The claims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, *describe the same conduct and implicate the same individuals.*

*Id.* at 501 (emphasis added). *See Rush*, 966 F.2d at 1110 ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination.").

In Plaintiff's second EEOC charge, he describes his allegation as two separate points. First, he explains that he filed the first charge and then was denied "the opportunity to be considered for two Baldwin Station Shift Technician positions. I could have been transferred and promoted into these positions. I was also denied an opportunity to take the POSS test, which is required for the Shift Technician position. The last test was given in April of 1997." Second, he writes, "I believe I have been discriminated against because of my race, Black, in violation of Title VII . . . in that the Respondent chose to fill these position[s] with non-Black outside hires who have no experience. I have more seniority and experience and believe that I am being retaliated against because I filed a charge of discrimination, in violation of [Title VII]." The Court infers from this language only one allegation – that Plaintiff filed his first charge against IP and, allegedly, was subsequently retaliated against for filing the charge by not being interviewed for two shift technician positions at IP's Baldwin facility.

8

Applying the principles set out in *Cheek* and *Rush* to the case at hand, the Court should dismiss the remainder of Count I, which is a count based not on a violation of 42 U.S.C. 2000e-3(a) – retaliation for filing a charge of discrimination – but on 42 U.S.C. § 2000e-2. Count II survives this analysis because the EEOC charge and the complaint do appear to generally describe the same conduct and implicate the same individuals. Plaintiff's not being interviewed for positions at the Wood River facility is mentioned in the *Green II* complaint under Count II but is not mentioned anywhere in the second EEOC charge; however, the Court finds that the information regarding the Wood River facility amplifies the Baldwin facility retaliation allegation made in the second EEOC charge. *See Cheek*, 31 F.3d at 503 ("[P]ursuant to 29 C.F.R. § 1601.12(b), these additional allegations cannot expand the scope of the allegations in Cheek's original charge; they only may 'clarify or amplify' the allegations in the charge."). In summary, Count II (as it applies to the time period February 2, 1997, through April 28, 1997) remains for discussion below, while Counts I and III are dismissed in their entirety.

## II. Issue Preclusion

IP asserts that Count II is issue precluded based on the judgment in *Green I*. The Court agrees.[7]

The Court is applying federal rules of issue preclusion to *Green II* because *Green I* was brought in federal court. *See Barnett v. Stern*, 909 F.2d 973, 977 (7th Cir. 1990); *Matter of Energy Co-op., Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987), *cert. denied*, 484 U.S. 928 (1987). The Court does not know, on the basis of the *Green II* complaint, whether the shift technician positions applied for at the Baldwin and Wood River facilities in *Green II* were the same ones in *Green I*. Regardless, Count II is issue precluded. "Issue preclusion refers to the effect of a

---

[7] As Counts I-III are all dismissed on other grounds, the Court notes only briefly that if the Baldwin and Wood River positions referenced in the *Green II* complaint were discovered to be the same positions at issue and decided in *Green I*, then Plaintiff most certainly would be claim precluded.

9

judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in the initial action." *Barnett*, 909 F.2d at 977 n. 5 (7th Cir. 1990) (quotations marks and citations omitted). "[C]ollateral estoppel [issue preclusion] relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).

The essential issue in both *Green I* and *Green II* is whether Plaintiff was qualified for shift technician positions at the Baldwin and Wood River facilities and, if he was, whether he was denied the positions in violation of Title VII. "Under the doctrine of collateral estoppel [issue preclusion], once a court has decided an issue necessary to its judgment, that decision is conclusive in a subsequent suit on a different cause of action involving a party to the prior litigation." *Kunzelman v. Thompson*, 799 F.2d 1172, 1176 (7th Cir. 1986) (citing *United States v. Mendoza*, 464 U.S. 154, 158 (1984); *Montana*, 440 U.S. at 153). "[A] court should generally invoke collateral estoppel [issue preclusion] when: (1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical." *Painewebber Inc. v. Farnam*, 870 F.2d 1286, 1289 (7th Cir. 1989) (citing *Kunzelman*, 799 F.2d at 1176).

Even if Plaintiff had newly applied to different shift technician positions at the Baldwin and Wood River facilities within a year after the first rejections, he is issue precluded from raising claims against these additional refusals to hire him. First, Green and IP are the same parties as in *Green I*. Second, this Court actually and necessarily decided, and was affirmed by the United States Court of Appeals for the Seventh Circuit, that the Baldwin and Wood River facilities had ample reason to find Plaintiff unqualified for their open shift technician positions – namely, absenteeism and lack of experience. Third, under Title VII Green needed to prove he

10

was qualified for the positions in *Green I* as he would have to do in *Green II*.[8] Fourth, the issue of why he was denied the opportunity to interview for the positions is identical between the two lawsuits. Even if Green had re-applied for jobs in the Baldwin and Wood River facilities in January and April 1997 after being rejected in August 1996, the Court believes that his chronic absenteeism and his lack of experience in a coal-fired facility still would have been reasonable barriers preventing his being hired.

To satisfy the elements of a retaliation claim, a plaintiff must show that "she engaged in a statutorily-protected activity, that an adverse employment action occurred, and that there exists a causal link between the protected activity and the adverse employment decision." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998). The Court has no reason, based on the complaint at issue and the second EEOC charge, to believe that any other retaliatory activity is being alleged aside from the denial of the opportunities to interview and test for the positions at the Baldwin and Wood River facilities already examined. When ruling on a motion to dismiss, the court "will not strain to find inferences favorable to the plaintiffs which are not apparent on the face of [the complaint]." *Coates v. Ill. State Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir. 1977) (citing *Metcalf v. Ogilvie*, 436 F.2d 361, 363 (7th Cir. 1970)). On that basis, Count II should be dismissed in its entirety.

---

[8] As the Seventh Circuit stated in its decision on *Green I*:

> Green failed to make out a prima facie case, the first prong of the McDonnell-Douglas framework, because he did not prove that he was qualified for the electronic or shift technician positions. . . . [H]is poor attendance record rendered him unqualified for the shift technician positions at Baldwin and Wood River. In addition, Green does not possess the requisite coal-fired industrial plant experience for the position at Wood River. Furthermore, as the district court found, IP's reasons for denying Green these positions – . . . excessive absenteeism and lack of experience – are legitimate and nondiscriminatory. Although Green argues these reasons are pretextual, he has offered no evidence to support his contention.

*Green v. Illinois Power Company*, 175 F.3d 1019 (7th Cir. 1999) (citations omitted).

11

### Sanctions

In addition to seeking a dismissal with prejudice, Defendant IP has asked the Court to award its fees and costs incurred in the bringing of its motion. It is not common for the Court to award fees merely because a party has been successful in its motion to dismiss. Here, however, an award of fees and costs is particularly appropriate because Plaintiff blatantly abused the system by bringing the exact same claims that were previously resolved against him. The request for an award of fees and costs should be allowed, and Plaintiff should be ordered to reimburse Illinois Power Company for its costs in obtaining a dismissal of claims that never should have been filed.

### Conclusion

The motion to dismiss Counts I-III against Defendant Illinois Power (#8) should be **GRANTED** and Counts I - III be dismissed in full and with prejudice. Plaintiff should be ordered to pay Illinois Power Company all attorney fees and costs associated with obtaining this dismissal. The parties are advised that any objection to this recommendation must be filed in writing with the Clerk within ten (10) working days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538 (7th Cir. 1986).

ENTER this 23rd day of December, 1999.

_____
DAVID G. BERNTHAL
UNITED STATES MAGISTRATE JUDGE