E-FILED
Monday, 05 December, 2005 06:54:11 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| CHARLES L. GREEN,<br><br>      Plaintiff,<br><br>    v.<br><br>ILLINOIS POWER COMPANY,<br>an Illinois Corporation,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)   No. 01-2090<br>)<br>)<br>)<br>)<br>)<br>) |

FILED
SEP 23 2002
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

## ORDER

Charles Green, an African-American, has been employed by Illinois Power Company since 1991, and he remains employed there. During the past five years, Green has filed several discrimination lawsuits against Illinois Power. See Green v. Illinois Power Co., No. 02-2097; Green v. Illinois Power Co., No. 01-2090; Green v. Illinois Power Co., et al., No. 99-3114; Green v. Illinois Power Co., et al., No. 99-2126; Green v. Illinois Power Co., et al., No. 97-2148.

This particular case began on April 17, 2001, when Green filed a pro se Complaint (#1) against Illinois Power alleging 25 counts of race discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This court granted Illinois Power's motion to dismiss Counts 16-25 because they were either time-barred, outside the scope of the EEOC charge, or precluded by previous litigation (#52).

Exhibit 9

On July 1, 2002, Illinois Power filed a Motion for Summary Judgment (#121). Green submitted a Response (#125), a Memorandum of Law in Opposition of Motion for Summary Judgment (#126), and a volume of Exhibits (#127). Illinois Power then filed a Reply (#133).

Also pending before this court are Illinois Power's Motion to Strike the Plaintiff's Affidavit and Exhibits (#128), Green's Response and Objections to the Motion to Strike (#131), and Green's Memorandum of Law in Support of the Response and Objections to the Motion to Strike (#132). Additionally, Green filed a Motion for Oral Argument or Hearing on Motion for Summary Judgment (#124).

The court has carefully considered all of these filings, and for the reasons articulated below, Illinois Power's Motion for Summary Judgment (#121) is GRANTED, Illinois Power's Motion to Strike (#128) is DENIED as moot, Green's Motion for Oral Argument or Hearing (#124) is DENIED.

## RELEVANT LAW

1.  Summary Judgment

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In evaluating a summary judgment motion, the court focuses on whether any material dispute of fact exists that would require a trial. Winter v. Minn. Mut. Life Ins. Co., 199 F.3d 399, 408 (7th Cir. 1999). In making this determination, the court construes all facts and draws all reasonable inferences in favor of the nonmoving party. King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999). Because

the purpose of summary judgment is to isolate and dispose of factually unsupported claims, however, the nonmoving party must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. Michael v. St. Joseph County, 259 F.3d 842, 845 (7th Cir. 2001), cert. denied, 122 S.Ct. 2328 (2002).

2.  Race Discrimination

A claim of discrimination under Title VII may be proven directly or indirectly. O'Neal v. City of New Albany, 293 F.3d 998, 1003 (7th Cir. 2002). Green lacks any direct evidence of race discrimination and so his claims must be evaluated under the indirect method of proof as established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Traylor v. Brown, 295 F.3d 783, 787-88 (7th Cir. 2002). Under this analytic framework, the plaintiff first must provide evidence of a prima facie case of discrimination: (1) he is a member of a protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) similarly-situated employees outside the protected class were treated more favorably. Traylor, 295 F.3d at 788. For claims alleging a discriminatory failure-to-hire, the prima facie case changes slightly. A plaintiff must prove (1) he is a member of a protected class; (2) he applied and was qualified for the position at issue; (3) he was rejected; and (4) the position remained open while the employer sought other applicants. O'Neal, 293 F.3d at 1003.

If the plaintiff can meet this initial showing, then the burden shifts to the employer to assert a legitimate, nondiscriminatory reason for the challenged action. Simmons v. Chicago Bd. of Educ., 289 F.3d 488, 492 (7th Cir. 2002). The burden then shifts back to the plaintiff to present evidence that would allow the trier of fact to conclude that the employer's proffered reason is pretextual. Id., at 492.

3. Retaliation

The indirect burden-shifting method applies to claims of retaliation as well. Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465 (7th Cir. 2002). The plaintiff must first prove the prima facie case for a retaliation claim: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between his protected activity and the adverse action. Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1008 (7th Cir. 2002). If the plaintiff can establish the prima facie case, the burden then shifts to the employer to identify a legitimate reason for the adverse employment action. Hilt-Dyson, 282 F.3d at 465. The plaintiff then must prove that the employer's proffered reason is a pretext for unlawful retaliation. Id.

4. Hostile Work Environment

A hostile work environment, in violation of Title VII, exists when an employee is subject to such severe and pervasive conduct that a reasonable person would consider the workplace to be hostile or abusive. Salvadori v. Franklin Sch. Dist., 293 F.3d 989, 997 (7th Cir. 2002). To succeed on this claim, a plaintiff must demonstrate (1) the harassment was based on his membership in a protected class; (2) the conduct was severe or pervasive; and (3) there is a basis on which to hold the employer liable. Cerros v. Steel Techs., Inc., 288 F.3d 1040, 1045 (7th Cir. 2002). When evaluating a hostile work environment claim, this court analyzes the totality of the circumstances, including "the frequency of the harassing conduct, its severity, whether it was physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." Patt v. Family Health Sys., Inc., 280 F.3d 749, 754 (7th Cir. 2002).

## ANALYSIS

Green's 15 counts can be grouped together into related arguments: one claim that the terms of his employment changed after he accepted a new position; four claims involving positions he applied for but for which he did not get interviewed; three hostile work environment claims, including one claim that a derogatory remark rose to the level of discrimination

1.  Counts I, II, III, IV, V, VI, VIII, IX — Change in terms of employment

Around 1999, Illinois Power decided to create two new positions—a Preventive Maintenance Technician (PMT) position in both the southern and northern regions of its area of operation. The terms, conditions, and qualifications of the positions were to be governed by an agreement between Illinois Power and the local IBEW union in each region. Green, who lives in Danville, was a member of the IBEW Local 51, which negotiated with Illinois Power regarding the PMT position in the northern region.

Illinois Power posted the PMT vacancy in June 2000, and Green applied in August. Ultimately, after two other candidates had turned down the position, Substation Maintenance Manager George Aufmuth offered the PMT position to Green. Green accepted the position, after which Aufmuth informed him that because he lives in Danville, Green would have to report to the Champaign area headquarters, a more central location to the relevant service area than Green's residence. Green informed Aufmuth that he disagreed with Aufmuth's decision, that he would be filing a grievance regarding the changed terms of the position, and that he wished to decline the position. The PMT vacancy was reposted and eventually offered to another employee.

In his complaint, Green asserts that Illinois Power altered the conditions of the PMT position after he had accepted it as an act of unlawful race discrimination and retaliation. Specifically, Green

argues that Illinois Power allowed several Caucasian employees to take a company vehicle home at the end of the workday, but that it refused him the same right by changing the agreed-upon terms of the job. Moreover, Green also contends that Illinois Power acted because of previous EEOC charges Green had filed against the company.

To withstand summary judgment, Green must establish a genuine issue of material fact as to the prima facie elements of his claims. O'Neal, 293 F.3d at 1003. As noted above, the prima facie cases for race discrimination and retaliation both require proof of an adverse employment action, an important requirement because not every slight or inconvenience that makes an employee unhappy is actionable. Cerros, 288 F.3d at 1045; Hilt-Dyson, 282 F.3d at 466. Rather, an adverse employment action must cause material harm, more than mere inconvenience or a change in job responsibilities. Traylor, 295 F.3d at 788. Material adverse employment actions may include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." Hilt-Dyson, 282 F.3d at 465-66 (internal quotation marks omitted).

Green claims that Illinois Power altered some of the benefits of his new position. It does not appear from the record, however, that the benefits Green refers to were in fact guaranteed aspects of the job that Illinois Power took away from him.

Illinois Power has provided a copy of the agreement between Illinois Power and Local 51 concerning the PMT position in the northern region, authenticated by an affidavit from Aufmuth. The agreement provides, in relevant part, that the successful candidate for the northern region would be required to live within the Bloomington, Champaign, and Decatur areas, and the position was to be established in the headquarters of whichever area the candidate lived. "This employee may be

assigned to start and finish his/her day at home or a motel where he/she is staying overnight and may be assigned a Company vehicle for use in the performance of his/her duties" (emphasis added).

Green asserts in his response to the summary judgment motion that working from home, driving a company vehicle, and taking the company vehicle home daily were incentives built into the PMT position. The evidence Green cites in support of this contention, however, does not appear to bolster his position, and it certainly is not enough to create a genuine issue of fact as to the terms of the position. Given the discretion the agreement gave Illinois Power regarding permitting employees to take company vehicles home, Green cannot establish that Illinois Power materially altered the terms of his new job. As such, he has not demonstrated that he suffered a materially adverse employment action, a requirement for both his discrimination and his retaliation claims. Illinois Power is therefore entitled to summary judgment on the counts relating to the PMT position.

2.   Counts VII, X, XII, XIII — Refusal to Interview

Throughout his tenure at Illinois Power, Green has expressed interest in several vacancies Illinois Power advertised, four of which Green has incorporated into his complaint by asserting that Illinois Power did not interview him because of his race and in retaliation for prior EEOC charges. As noted earlier, for failure-to-hire claims, Green must establish as part of the prima facie case that he was qualified for the position and that the position remained open while other candidates were interviewed. The evidence submitted by both parties, however, indicates otherwise.

First, Illinois Power advertised a vacancy for an Electric Training Specialist (ETS) position. The ETS would be responsible for training apprentice and journeyman linemen. Accordingly, Illinois Power sought candidates who had previous lineman experience. Green admitted in his deposition that he had not worked as a journeyman linemen for Illinois Power. He argues, however,

that he worked as a journeyman lineworker, which is a higher-ranking position than journeyman lineman. Moreover, Green contends that the three candidates Illinois Power did interview had not graduated from college whereas he has a two-year electronics technician degree.

Despite Green's protestations that he was more qualified than the three people interviewed for the ETS position, he cannot establish that he had previous journeyman linemen experience. Illinois Power asserted, through the affidavit of a Senior Electric Trainer, that it was specifically seeking someone with journeyman linemen experience. Although Green may disagree with that requirement, this court does not sit as a super-personnel department to second guess the business judgment of an employer. Wells, 289 F.3d at 1007-08.

Second, Green applied for the Manager–Training Center (MTC) position, which, as its name suggests, bore the responsibility of managing all aspects of the Training Center. Shortly after the vacancy was posted, however, Illinois Power opted to combine the Training Department with the Environmental Safety and Health Department. As part of that merger, the existing manager of the Environment Safety and Health Department, Douglas Rutherford, assumed the managing role for the Training Department as well. After restructuring and reorganizing the two departments, Rutherford promoted a member of his existing staff to manage the newly-created Safety and Training division. Accordingly, no applicants for the MTC position were interviewed. Green fails to address the reorganization, and as such has not created a genuine issue of fact regarding whether the position remained open for other candidates to apply, a requirement of the prima facie case.

Third, Green expressed interest in a vacancy announcement for an Analyst or Associate Analyst position. Under "Minimum Qualifications," the job posting stated that "Bachelors degree in Computer Science or a related engineering field or comparable experience is preferred." Green

-8-

claims that no degree was required, but the evidence he identifies does not support that statement. And he has not presented facts which show that he was qualified for this position. Green admits that he does not have a degree in computer science or a related engineering field. Green details his varied job experiences, but none relate to computer science. Indeed, he admitted in his deposition that he has no prior experience in the computer science field.

Finally, Green responded to a vacancy announcement for the Process Control Supervisor (PCS) position, which noted that Illinois Power desired a graduate engineer with field experience. Green admits that he is not a graduate engineer, but he argues that he has more experience in energy delivery than the person Illinois Power hired. Again, however, this court will not second-guess job requirements Illinois Power has identified, requirements Green admits that he does not meet.

Green has not presented any evidence to this court which would create a genuine issue of material fact regarding whether he was qualified for the positions discussed or whether the MTC position remained open. Illinois Power is entitled to summary judgment on these claims.

3.   Counts XI, XIV, XV — Hostile Work Environment

Green's complaint also charges Illinois Power with maintaining a hostile work environment. Green asserts that he was "humiliated, embarrassed, harassed, and discriminated against" and that he was denied equal employment opportunities because of his race. In his response to the summary judgment motion, Green states that he "has been subjected to a hostile work environment through but not limited to discrimination, retaliation, attempts to do bodily harm or even cause death, harassment, denied training opportunities, applying different standards of employment, denied opportunities to serve on substation committees, and being place in a false light and other employees knew of the abusive conduct."

Green elaborates by identifying prior episodes of alleged racial discrimination in interviewing, hiring, promotion, and committee selection decisions. Many of the instances Green describes are time-barred, however, having occurred outside the 300-day period preceding his EEOC charge. See 42 U.S.C. § 2000e-5(e)(1); Johnson v. J.B. Hunt Transport, Inc., 280 F.3d 1125, 1128 (7th Cir. 2002). He also references the earlier counts of his complaint regarding the PMT position and the job vacancies for which Illinois Power did not interview him, but this court has already concluded that Illinois Power is entitled to summary judgment on those claims.

Green describes one specific event that contributed to the hostile work environment. At a meeting with other Illinois Power employees, Bryan Mayes,[1] a lineman with the company, "tapped one of his fellow white coworkers saying check this out" and then commented that he had read in a journal that an employee was fired for using the word "niggardly." According to Green, Mayes stood up and yelled the word. After the meeting, Green sent an e-mail to two supervisors recommending that Mayes attend sensitivity training or diversity workshops. One of the supervisors discussed the incident with Mayes, but Green expresses displeasure in his response to the summary judgment motion that Illinois Power did not terminate Mayes.

Although it does sound similar to a racial epithet, niggardly is not a racial slur. Moreover, a single offensive remark by someone who is not a supervisor or manager is not severe or pervasive enough to meet the prima facie requirement for a hostile work environment. Cerros, 288 F.3d at 1047; Patt, 280 F.3d at 754. Finally, in response to Green's complaint, a supervisor did discuss the incident with Mayes, satisfying the duty an employer has to take reasonable steps to rectify possible harassment. Salvadori, 293 F.3d at 997.

---

[1] Green refers to Bryan Mayes as Bryan Moews.

In his deposition, Green vaguely mentions other instances that contributed to the hostile work environment. For example, one of Green's coworkers was in the process of filing a charge against him alleging that he was not properly supervising other employees. Green stated, however, that he talked about this matter with his supervisor and discussed ways to handle the situation. Another coworker, Green contends, hides behind equipment to avoid him. Green also felt excluded because he was not returned to the Danville service area after the merger, although he admits that the decision regarding which employees to move was controlled by an agreement between Illinois Power and the local union. Green has not offered any evidence to show that these events were related to race or that the conduct was severe enough that a reasonable person would consider the workplace abusive. Cerros, 288 F.3d at 1045. And again, when Green complained to supervisors, it appears that they took reasonable steps to resolve the situation. Salvadori, 293 F.3d at 997. Green has not created a genuine issue of fact, and the incidents he describes do not rise to the level of a hostile work environment. Illinois Power is entitled to summary judgment.

## REMAINING MOTIONS

Illinois Power's request to strike Green's affidavit and exhibits is denied as moot. Additionally, after reviewing the filings by both parties, this court concludes that a hearing on the summary judgment motion is unnecessary. Accordingly, Green's Motion for Oral Argument or Hearing is denied.

## CONCLUSION

IT IS THEREFORE ORDERED:

(1) Illinois Power's Motion for Summary Judgment (#121) is GRANTED. Judgment is entered on all remaining counts in favor of Illinois Power and against Green.

(2) Illinois Power's Motion to Strike the Plaintiff's Affidavit and Exhibits (#128) is DENIED as moot.

(3) Green's Motion for Oral Argument or Hearing on Motion for Summary Judgment (#124) is DENIED.

(4) This case is terminated.

ENTERED this ___23rd___ day of ___September___, 2002.

*Michael P. McCuskey*
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE

AO 450 (Rev. 5/85) Judgment in a Civil Case

# United States District Court
## CENTRAL DISTRICT OF ILLINOIS

## JUDGMENT IN A CIVIL CASE

Charles L. Green

vs.

Illinois Power Company, an Illinois Corporation

FILED
SEP 2 3 2002
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

Case Number:  01-2090

[✓] **DECISION BY THE COURT.** This action came before the Court. The issues have been heard and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that summary judgment is entered on all remaining counts in favor of Illinois Power and against Charles L. Green.

ENTER this 23rd day of September, 2002

_____
JOHN M. WATERS, CLERK

_____
BY: DEPUTY CLERK