E-FILED
Monday, 05 December, 2005  06:54:47 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

APR 2 5 2002

LOCAL 51, INTERNATIONAL BROTHERHOOD )
OF ELECTRICAL WORKERS, AFL-CIO )
)                    No._____
)
and )
)                    02-0207
ILLINOIS POWER COMPANY )
)
Defendants )

PRO SE COMPLAINT AGAINST EMPLOYMENT DISCRIMINATION, UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e-2, 2000e-5, 2000e-16, CIVIL RIGHTS ACT OF 1991, U.S. CONSTITUTION (AMENDMENT 1,5,6,7,8,9,13,14), 28 U.S.C. §§ 1331, 1343 and 1332, 42 U.S.C. §1981, 42 U.S.C. §1981a, 706(g), 42 U.S.C. §1981a(a), 42 U.S.C. §1981a(b)(1), 42 U.S.C. §1981a(b)(3), 42 U.S.C. §1983, Restatement (Second) of Torts § 908(2)(1979), 42 U.S.C. §1981a(c), National Labor relations act, 49 Stat. 449, as amended 29U.S.C. 151 et seq,. FRCP 60 LANDRUM-GRIFFIN ACT 29 U.S.C. 411 (A). 28 U.S.C. § 1367, 42 U.S.C. 2000e-5(k) (1988 ed., Supp.III) and 42 U.S.C. sec. 1997e(e) and 48 Stat 1064, USC, Title 28, former § 723c (now § 2072)), 301 (b) of the Labor Management Relations Act, OSHA Act and Whistle Blowers Act, 1746 of title 28, U.S.C. **Title 18, Part I, Chapter 79, section 1621**, 42 USCS § 1985, **Title 18 U.S.C. § 4, 2, 241, 242, 245, 246, 1505, 1515**, Title 42 USC § 1961. Definition, Title 42 USC § 1962, 1964, 1965 and 1986.

The cause of action in this case raises an issue of federal law. Equitable relief sought.

COMPLAINT, MOTIONS AND JURY DEMAND

*/s/ Charles L. Green*

Charles L. Green
Plaintiff, Pro se
520 Monterey
Danville Illinois 61832
(217) 446-1724

Elaine Massock,
Heyl, Roster, Voelker & Allen,
Counsel for Illinois Power Company,
102 East Main Street, Urbana,
Illinois 61803-0129 2525

1

Exhibit 10

Come now the Plaintiff, Charles Green, and for his causes of action against the Defendants, Illinois Power Company (AKA "Illinois Power", IP), states as follows:

JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to the terms of Title 28, U.S.C., Sections 1331 and 1337 and civil rights jurisdiction 1343(a), together with Title 42 U.S.C. 1983, 42 U.S.C. 1981 United States Code, Section 2000e-5 and 2000e-16( c), U.S.C. Title 28 section of title 28 and Title 18, Section 1623, 241, 242, 245, 1515.

2. This is a civil action arising under the laws of the United States regulating commerce. Specifically, this is an action brought in furtherance of a certain act of Congress guaranteeing to employees protection against discriminatory treatment in employment because of race, color, religion, sex or national origin and protection against individual rights govern by the U.S. Constitution.

3. This case is also an action that involves perjury, fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, false swearing, due process or other misconduct of an adverse party.

4. The venue of this Court to entertain the issues raised in this case is appropriate by virtue of Title 28, United States Code, Section 1391(b) since Illinois Power and the IBEW are engaged in business activities within the judicial district of this Court and the claims giving rise to the above captioned proceeding did occur within the judicial district of this Court.

5. Supplemental jurisdiction by virtue of Title 42 USC § 1965.

6. The supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1367 over the state law claims which are so related to the federal claims in the action they perform

2

a part of the same case or controversy under Article III of the Constitution of the United States of America.

7. Nature of the Action. This is an employment discrimination case by an Illinois Power Company employee alleging an intentional pattern and practice and a continuing series of discriminatory and harassing conduct against plaintiff because of his race and because having complained about unlawful discrimination and participated in formal proceedings to protest such unlawful discrimination.

8. This is an employment discrimination case by an Illinois Power Company employee alleging an intentional pattern and practice and a continuing series of discriminatory and harassing conduct against plaintiff because of his race for exercising his first amendment rights and because having complained about unlawful discrimination and participated in formal proceedings to protest such unlawful discrimination.

9. This is an employment discrimination case by an Illinois Power Company and IBEW Local 51 employee alleging an intentional pattern and practice and a continuing series of retaliatory, discriminatory and harassing conduct against plaintiff because of his race for exercising his first amendment rights and because having complained about unlawful discrimination and participated in formal proceedings to protest such unlawful discrimination.

10. This is also an action under the common law of Illinois assault and false light, intentional infliction of emotional distress.

11. This is also an action governed by the OSHA Act, Whistle Blowers Act, Title VII of the Civil Rights Act and the United States Constitution.

12. This is also an action involving constructive demotion.

3

13. This is also an action involving violation of affirmative action policies

14. This is also an action involving violation of Collective Bargaining Agreement Between the International Brotherhood of Electrical Workers (IBEW) and Defendant Illinois Power Company..

15. This is also an action involving an abuse of discretion due to prejudice.

16. This is also an action involving perjury, fraud and/or false swearing.

17. This is an action where Plaintiff is claiming front pay, punitive damages, compensatory damages, pain and suffering, damages due to fraud.

18. Plaintiff is claiming hostile environment and continuing violation against defendants in violation and this should equitably toll all counts that are outside the scope of the EEOC charge.

19. Plaintiff is also claiming misrepresentation and breach of contract by defendants in violation.

20. This action also involve failure to mention possible conflict of interest.

21. This is an action against defendant for violating the seniority system.

22. This is an action against defendant for abusive conduct and trying to cover it up by committing perjury, false swearing, involves fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, due process or other misconduct of an adverse party.

23. This is also an action involving the deprivation of plaintiff's liberties and due process.

24. An arbitration hearing was held because of a grievance filed by Charles Green on September 8, 2000 in protest of Illinois Power Company allegedly changing the rules of the predictive maintenance technician position. The Grievant contends the rules were

4

changed to discriminate against him because of his race and to retaliate against him because of his prior claims of discrimination.

PARTIES:

25. Ms. Elaine Massock counsel for Illinois Power Company, Mr. Art Martin counsel for the Union (IBEW), Witnesses for the company Rod Hilburn, Myron Kumler, Ken Justice and Veta Rudolph Lieke witness for the Union Charles Green and Tom Peterson. Edward P. Archer Arbitrator.

26. That Illinois Power is a corporation incorporated in the state of Illinois engaging in the business of providing utility service to consumers.

27. That at all times pertinent to this proceeding Illinois Power did in connection with its business enterprise employ individuals to engage in manufacturing, transporting, selling, receiving, handling or otherwise working on or dealing in goods, products or services that have been moved in or produced for commerce and in an industry affecting commerce.

28. That Illinois Power has in each of twenty or more calendar weeks in the current or preceding calendar year employed twenty or more employees in connection with its business enterprises and constitutes an employer as that term is used in 42 U.S.C. Section 2000e(b).

29. That at all times pertinent to this proceeding the IBEW did in connection with its business enterprise employ individuals to engage in manufacturing, transporting, selling, receiving, handling or otherwise working on or dealing in goods, products or services that have been moved in or produced for commerce and in an industry affecting commerce.

5

30. That the IBEW has in each of twenty or more calendar weeks in the current or preceding calendar year employed twenty or more employees in connection with its business enterprises and constitutes an employer as that term is used in 42 U.S.C. Section 2000e(b).

31. That the Plaintiff, Charles Green, is an adult, African-American male and has resided within the confines of Vermilion County, at all times pertinent to the foregoing proceeding.

32. The Defendant's witness, Myron Kumler, is an adult, Caucasian male and has resided within the confines of Vermilion County Illinois and was an employee of Illinois Power Company at all times pertinent to the foregoing proceeding.

33. The Defendant's witness, Rod Hilburn, is an adult, Caucasian male and has resided within the confines of Will County Illinois and was an employee of Illinois Power Company at all times pertinent to the foregoing proceeding.

34. The Defendant's witness, George Aufmuth, is an adult, Caucasian male and has resided within the confines of Will County Illinois and was an employee of Illinois Power Company at all times pertinent to the foregoing proceeding.

35. Jeff Hall, is an adult, Caucasian male and has resided within the confines of Will County Illinois and was an employee of Illinois Power Company at all times pertinent to the foregoing proceeding.

36. Veta Lieke is an adult Caucasian female and has resided within the confines of Will County Illinois and was an employee of Illinois Power Company at all times pertinent to the foregoing proceeding.

37. Ken Justice, is an adult, Caucasian male and has resided within the confines of Will County Illinois and was an employee of Illinois Power Company at all times pertinent to the foregoing proceeding

38. That within the time prescribed by 42 U.S.C. Section 2000e-5 the Plaintiff, Charles Green, did cause to have filed with the Equal Employment Opportunity Commission [hereafter "EEOC"] a charge of civil rights violation against Illinois Power, which charge was filed with the EEOC and this proceeding is being filed within ninety days of the issuance of a Notice of Right to Sue mailed on or about February 23, 2001.

39. That the Plaintiff, Charles Green, was at all times relevant to the above proceeding an employee of Illinois Power and in that connection, had employment responsibilities with its Champaign, Illinois service area as a substation electrician.

40. That the Plaintiff, Charles Green, commenced his employment with Illinois Power on or about January 7, 1991 and has been employed continuously since that time by it. Charles Green has been employed at its Champaign and Danville, Illinois service area since about June of 1992.

41. I filed a charge with the Equal Employment Opportunity Commission (EEOC), Chicago District Office, District Director 500 West Madison Street, Suite 2800, Chicago Illinois 60661-2511 on or about November 3, 2000 (EEOC Charge #210A10574) against Illinois Power. I had filed two other charges with the EEOC (EEOC Charge #210971056) on January 6, 1997 against Illinois Power Company and on November 28, 1997 (EEOC Charge #210980600) against Illinois Power Company and the International Brotherhood Of Electrical Workers, Local 51, 301 E. spruce Street, Springfield Illinois. Each of the previous charges were issued a Dismissal and Notice of Rights and later

7

dismissed in the United States District Court, Central District of Illinois, Urbana Illinois against Illinois Power Company.

42. The above case against the international Brotherhood of Electrical Workers has been dismissed because plaintiff's attorney failed to respond to discovery orders.

43. That my current charge (EEOC Charge #210A10574) was dismissed and issued a Dismissal and Notice of Rights on January 23, 2001 by the EEOC, Chicago District Office by John P. Rowe, District Director 500 West Madison Street, Suite 2800, Chicago Illinois 60661-2511. A copy of Dismissal and Notice of Rights is attached to this Complaint and Jury Demand.

44. That the Equal Employment Opportunity Commission reasons for dismissing the charge are; The Commission issues the following determination: Based upon the commission's investigation, the Commission is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

45. That my current charges (EEOC Charge #210A10574) was dismissed and issued a Dismissal and Notice of Rights on January 23, 2001 by the EEOC, Chicago District Office by John P. Rowe, District Director. Immediately after the EEOC's dismissal, Illinois Power filled the Preventive Maintenance position with another Caucasian ( Joe Van Valey).

46. That immediately after the EEOC's dismissal, Illinois Power filled the Preventive Maintenance position with another Caucasian ( Joe Van Valey), which led me to file another charge with the Illinois Department of Human Rights (Charge # 2001SF0441)

8

on March 1, 2001. I am waiting to hear from the Department of Human Rights for the next step.

47. Plaintiff filed a Motion to vacate and supporting documents on March 13, 2002 he served a copy of his, Certificate of Service, NOTICE OF MOTION TO VACATE DECISION AND AWARD BY EDWARD P. ARCHER, ATTORNEY CLIENT PRIVILEGE, SANCTIONS AND JUDGMENT and supporting documents to the U.S. District Court, Central District of Illinois and to the following: Arthur J Martin, Counsel for IBEW, 1221 Locust, ste 250, St. Louis, MO 63103; Elaine Massock, Heyl, Roster, Voelker & Allen, Counsel for Illinois Power Company, 102 East Main Street, Urbana, Illinois 61803-0129; Edward P. Archer, Arbitrator, 1413 West 52nd Street, Indianapolis, Indiana 46228. See Exhibit 1-2.

FACTS:

48. An arbitration hearing was held because of a grievance filed by Charles Green on September 8, 2000 in protest of Illinois Power Company allegedly changing the rules of the predictive maintenance technician position. The Grievant contends the rules were changed to discriminate against him because of his race and to retaliate against him because of his prior claims of discrimination.

49. The clerks told plaintiff that he needed to serve a copy of the documents to Illinois Power, the arbitrator and the Union. After discussing this with the clerk I plaintiff amended the documents by placing case No. 01-2090 and mailed to Illinois Power Company and the IBEW and Edward P. Archer at the above address that evening. See exhibit 2. FRCP 60, FRCP 77, FRCP 59, FRCP 79.

50. Shig W. Yasunaga did not receive a copy of the above named instruments because he was not the attorney in the matter at hand. The only attorney or firm handling the matter that plaintiff was aware of is Elaine Massock, Heyl, Roster, Voelker & Allen, Counsel for Illinois Power Company, 102 East Main Street, Urbana, Illinois 61803-0129 and a copy of the motion and supporting documents were sent to their office.

CASE NUMBER:

51. The confusion comes where the Clerks office failed to assign a new number to this case and chose to use Case No. 01-2090. Charles Green must assume that the clerk office is providing litigants with the correct information. Plaintiff has again omitted Case No 012090 from these pleadings and request that this Court provide Charles Green with the proper case number. See U.S. Constitution Amendment 5, 6, 7, 13, 14 and FRCP 60, FRCP 77, FRCP 59 and FRCP 79 where all litigants shall have equal access to the courts including information and the right to due process and not deprived of their liberties.

52. Plaintiff has now filed on April 2, 2002 a motion to strike response by Illinois Power company filed by Shig Yasuanga. However, Charles Green was unaware that this court had already made a decision. Plaintiff did not check to see if a ruling had been made because every almost every request he has made has taken a considerable amount of time for a decision.

53. Elaine Massock represented the Defendant in (FMCS NO. 011128-02729-A ILLINOIS POWER COMPANY, (CHARLES GREEN-)P/M TECHNICIAN )JOB BID) and has not responded to Plaintiff's Motion to vacate. Therefore plaintiff request that this court find judgment for Charles Green.

54. Since Elaine Massock represented Illinois Power Company and Plaintiff provided her with a copy of the motion and supporting documents Illinois Power Company was properly served. Therefore, Defendant is in error by stating that they were not properly served. Their response is also in error because it does not exist. Plaintiff request that this court find judgment for plaintiff because Illinois Power has not responded through their attorney of record.

55. Plaintiff is now filing this complaint and motions to be placed in the proper location within the court.

56. George Aufmuth was aware that Charles Green had filed for example but not limited to prior Grievances, EEOC complaints prior to 1999.

57. George Aufmuth participated in for example but not limited to the grievance process for at least one of the grievances prior to 1999.

58. George Aufmuth knew of and/or participated in for example but not limited to the Court proceeding involving Case No. 97-2148 prior to 1999.

59. George Aufmuth was aware that Charles Green resided in the Danville area before 1999.

60. While Charles Green was residing in Danville, George Aufmuth hired Charles Green into an electronic technician position prior to 1999.

61. When an electronic technician position is open in the substation department within local 51 the job is posted in each area within the Local.

62. After the closing date for example of an electronic technician position the posting is removed and each area is to send the posting to the hiring supervisor.

63. The Hiring Supervisor for example George Aufmuth is to evaluate the returned job postings that he received from each area for the electronic technician positions.

11

64. Charles Green has resided in Danville Since 1992 and has applied for several electronic technician positions between 1992 and 1998.

65. While Charles Green worked in the Danville area he would on occasion contact George Aufmuth on issues involving but not limited to possible malfunctioning relays and other electronic devices located in the Danville area.

66. George Aufmuth stated that he was unaware that Charles Green resided in the Danville area until after Charles Green applied for and accepted the Predictive maintenance position.

67. After Charles Green Accepted the Predictive Maintenance position, George Aufmuth denied Charles Green the opportunity to drive the company vehicle to his place of residence (home or hotel) daily.

68. After Charles Green accepted the Predictive Maintenance position, George Aufmuth told Charles Green that he would have to report to the Champaign service area Building daily.

69. After Charles Green accepted the Predictive Maintenance position, George Aufmuth told Charles Green that he would have to report to the Champaign service area Building daily because it would reduce the cost of wear and tear of the company vehicle.

70. Charles Green was told that because of Danville's geographical location driving to Champaign and back to Danville would put more wear and tear on the company vehicle than it would for a person who accepted the predictive maintenance who resides in other areas for example but not limited to the Bloomington area.

71. Because of Danville's geographical location it would in fact reduce the wear and tear of the company vehicle therefore Illinois Power Company's reason is fraudulent.

72. Charles Green currently drives a company vehicle from Champaign to Danville and back to Champaign daily.

73. The driving distance from Danville to Champaign is the same distance as driving from Champaign to Danville.

74. Charles Green lives in Danville.

75. Myron Kumler lives in Danville.

76. Champaign area covers but not limited to Danville, Oakwood, Georgetown and Monticello.

77. Caucasian employees for example but not limited to Myron Kumler who lives in Danville, Bart Collins who lives in Georgetown and other Caucasian employees who lives in Monticello are allowed to have their vehicles in those cities as their reporting locations.

78. Caucasian employees such as but not limited to George Aufmuth, Rod Hilburn and Bill Hutchinson all drove company vehicles to their residence daily reporting to work in the Decatur area.

79. Bill Hutchinson lived in the Mt. Vernon Area.

80. Ron Goode, Gary Lee and other Caucasian employees live in the Belleville area Drive a company vehicle to their residence daily.

81. Ron Goode Reports to Decatur for work.

82. The opportunity to drive a company vehicle to your residence (hotel or home) was one of the perks for the predictive maintenance position and the cost was minute compared to the estimated $1.6 million savings that the position would bring to the company, according to the substation performance team.

83. The company would save even more and a good example would be set if George Aufmuth, Myron Kumler, Rod Hilburn, Bill Hutchinson, Ron Goode and other Caucasian employees would not drive a car home daily, especially since they have a fleet of cars in Decatur available for those who work in Decatur and they may check a car out daily from the fleet.

84. Charles Green has filed several complaints against Illinois Power prior to accepting the predictive maintenance position.

85. The complaints mentioned above were employment discrimination cases by an Illinois Power Company employee, Charles Green, alleging an intentional pattern and practice and a continuing series of discriminatory and harassing conduct against him because of his race and because having complained about unlawful discrimination and participated in formal proceedings to protest such unlawful discrimination.

86. For the reasons listed above Charles Green is being retaliated against.

87. At the Arbitration hearing concerning the predictive maintenance position all witnesses took an oath to tell the truth.

88. Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United states Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years, or both. (b) This section is applicable whether the conduct occurred within or without the United States. (e) Proof beyond a reasonable doubt under

this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence.

89. Counsel represented each witness for Illinois Power Company.

90. George Aufmuth stated under oath that he was unaware that Charles Green had filed for example but not limited to prior Grievances, EEOC complaints prior to the time when Charles Green applied for the predictive maintenance position and accepted it.

91. George Aufmuth stated under oath that he was unaware that Charles Green resided in the Danville area prior to the time when Charles Green applied for the predictive maintenance position and accepted it..

92. Veta Rudolph, Ken Justice, George Aufmuth, Myron Kumler and Rod Hilburn were witnesses for Illinois Power company at the arbitration hearing concerning the predictive maintenance position.

93. Veta Rudolph, Ken Justice, George Aufmuth, Myron Kumler and Rod Hilburn knew of and/or participated in at least one of the grievance process concerning Charles Green prior to Charles Green accepting the predictive maintenance position.

94. Veta Rudolph, Ken Justice, George Aufmuth, Myron Kumler and Rod Hilburn knew of and/or participated in at least one of the charges filed in the District Court concerning Charles Green and Illinois Power company prior to Charles Green accepting the predictive maintenance position.

95. Veta Rudolph, Ken Justice, George Aufmuth, Myron Kumler and/or Rod Hilburn Knew that at least one of Illinois power witnesses was committing perjury and/or fraud at the arbitration hearing involving the predictive maintenance position.

96. Veta Rudolph, Ken Justice, George Aufmuth, Myron Kumler and Rod Hilburn were aware of Case No. 97-2148, Illinois Power Company vs. Charles Green.

97. Fraudulent statements are in violation of Illinois Power Company's personnel policies.

98. Whoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined under this title or imprisoned not more than five years, or both. Proof beyond a reasonable doubt under this section is sufficient for conviction.

99. George Aufmuth stated that he contacted human resources because a minority (black) employee had applied for the predictive maintenance position.

100. George Aufmuth never stated that he contacted human resources when Caucasian employees applied for the position of predictive maintenance.

101. As I recall George Aufmuth stated that it is standard practice for him to contact human resources when a minority applies for a position.

102. If this was standard practice he should have contacted human resources for all positions that Charles Green applied for when he was the hiring supervisor which could have eliminated past law suits.

103. George Aufmuth told me before the arbitration hearing that he made this decision on his own to deny me the opportunity to drive the company vehicle to my place of residence (hotel or Home).

104. Perjury is when a person, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the U.S. authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true;

or in any declaration, certificate, verification, or statement under penalty of perjury, willfully subscribes as true any material matter which he does not believe to be true; 18 USC.

105. George Aufmuth testified under oath before an Arbitrator at least one particular statement was false; and he knew at the time that the testimony was false.

106. A new hearing should be ordered, on the basis of the Illinois Power counsel's use of perjured testimony.

107. Illinois Power Company's counsel knew the case included perjured testimony.

108. Illinois Power company's counsel and witnesses knew, or should have known, of the perjury.

109. Because of the perjured testimony Charles Green has been deprived of due process and there is a very strong likelihood that the false testimony could have affected the judgment of the Arbitrator.

110. Because of the perjured testimonies the Arbitrators decision should be vacated.

111. Plaintiff filed a motion to vacate the Arbitrators decision.

112. The Instruments were personally dropped off to the District Court. As plaintiff was filing the motions he was being assisted by two of the clerks. One of the clerks insisted that there be a court assigned Number on the face of the filings because she and the court did not recognize the case number of the arbitration proceeding.

113. This clerk of the court looked up my case number 01- 2090 which I had forgotten and the other clerk wrote the number on the documents to be filed and I was told that I had to have this number on the documents. See Exhibit 1.

114. The clerks told plaintiff that he needed to serve a copy of the documents to Illinois Power, the arbitrator and the Union. After discussing this with the clerk I plaintiff amended the documents by placing case No. 01-2090 and mailed to Illinois Power Company and the IBEW and Edward P. Archer at the above address that evening. See exhibit 2. FRCP 60, FRCP 77, FRCP 59, FRCP 79.

115. Shig W. Yasunaga did not receive a copy of the above named instruments because he was not the attorney in the matter at hand. The only attorney or firm handling the matter that plaintiff was aware of is Elaine Massock, Heyl, Roster, Voelker & Allen, Counsel for Illinois Power Company, 102 East Main Street, Urbana, Illinois 61803-0129 and a copy of the motion and supporting documents were sent to their office.

CASE NUMBER:

116. The confusion comes where the Clerks office failed to assign a new number to this case and chose to use Case No. 01-2090. Charles Green must assume that the clerk office is providing litigants with the correct information. Plaintiff has again omitted Case No 012090 from these pleadings and request that this Court provide Charles Green with the proper case number. See U.S. Constitution Amendment 5, 6, 7, 13, 14 and FRCP 60, FRCP 77, FRCP 59 and FRCP 79 where all litigants shall have equal access to the courts including information and the right to due process and not deprived of their liberties.

117. Plaintiff has now filed on April 2, 2002 a motion to strike response by Illinois Power company filed by Shig Yasuanga. However, Charles Green was unaware that this court had already made a decision. Plaintiff did not check to see if a ruling had been made because every almost every request he has made has taken a considerable amount of

18

time for a decision. Subsequent to the above filings the clerk discussed the situation with her supervisor and decided that I needed to file a new complaint to correct the errors made by the clerk and this is the purpose of this complaint.

118. Elaine Massock represented the Defendant in (FMCS NO. 011128-02729-A ILLINOIS POWER COMPANY, (CHARLES GREEN-)P/M TECHNICIAN )JOB BID) and has not responded to Plaintiff's Motion to vacate. Therefore plaintiff request that this court find judgment for Charles Green.

119. Since Elaine Massock represented Illinois Power Company and Plaintiff provided her with a copy of the motion and supporting documents Illinois Power Company was properly served. Therefore, Defendant is in error by stating that they were not properly served. Their response is also in error because it does not exist. Plaintiff request that this court find judgment for plaintiff because Illinois Power has not responded through their attorney of record.

120. Plaintiff does not have to provide evidence to every count at this stage of litigation.

121. Plaintiff is claiming hostile environment and continuing violation against defendants in violation and this should equitably toll all counts that are outside the scope of the EEOC charge.

122. Plaintiff is also claiming fraudulent acts by the defendants in violation.

123. Plaintiff is also claiming misrepresentation and breach of contract by defendants in violation.

124. Plaintiff filed his initial complaint against Illinois Power company under Title VII and several counts were dismissed due to preclusion, however this does not necessarily

preclude Plaintiff from filing claims in violation of plaintiff constitutional rights and U.S.C. 42 § 1983 of those Counts that were precluded.

125. Plaintiff filed his initial complaint against Illinois Power company under Title VII and several counts were dismissed due to preclusion, plaintiff is now filing a complaint against Illinois Power Company for those claims in violation of plaintiff constitutional rights and U.S.C. 42 § 1983.

126. Although Plaintiff filed his initial complaint against Illinois Power company under Title VII and several counts were dismissed due to preclusion and that those counts were not ruled on the merits in case 97-2148 or in 99-2126 and 01-2090, and because of fraud, Misrepresentation and a meritless dismissal of plaintiff's complaint and counts this court in its own judgment may include these counts against Illinois Power company under title VII in its own judgment since they can be ratified or reinstated through a writ of mandamus.

127. Plaintiff, Charles Green, was at all times of his employment in good standings.

128. Illinois Power has never had any reason to discipline Charles Green involving violations of company policies and procedures including labor agreements, which includes performance and absenteeism.

129. Illinois Power has never disciplined Charles Green involving violations of company policies and procedures including labor agreements, which includes performance and absenteeism.

130. Charles Green has a two year electronics technician degree, a one year Computer Programming Midrange/Mainframe certificate, a one year Computer Programming