E-FILED
Monday, 05 December, 2005  06:55:25 PM
Clerk, U.S. District Court, ILCD

Small Computers certificate, a one year certificate in Data Entry all of which has been presented to Illinois Power Company. See case No. 97-2148.

131.    Illinois Power's policy is for example but not limited to interview the top five candidates if available for an open position.

132.    For example but not limited to after researches the Illinois Power Company creates three positions.

133.    The positions created were Substation Predictive Maintenance Manager and two Substation Predictive Maintenance Technicians, one technician in the southern region and one in the northern region.

134.    The Technician positions are governed by the agreement between the company and the Union in each area/region.

135.    Although the positions are the same and are represented by different Unions each technician reports to the same manager (George Aufmuth) who is responsible for hiring employees to fill the two positions.

136.    That some of the incentives were, that you work from your home, get a company vehicle, and you are allowed to take the vehicle home daily.  These incentives were in the agreement made by the company and the Local Unions involved.

137.    An employee who has accepted the predictive maintenance position is expected to stay in a hotel if the location Area is more than 60 miles from the employees home residence other wise the employee is to drive back and fourth to the work location and the employees residence.

138.    An employee who has accepted the predictive maintenance position is expected to stay in a hotel if the location Area is more than 60 miles from the employees home

residence, the employee is to drive from his residence Monday morning check into a hotel for that work week and drive back to his place of residence Friday, at the end of that work week.

139. Defendant Illinois Power and hiring supervisors (Rod Hilburn, and George Aufmuth) along with a Committee performed a complete comprehensive analysis of the substation department including cost analysis before creating the new Predictive Maintenance Technician and Manager positions.

140. Plaintiff was involved in the development stages of the reorganization of the substation department and the development of the new position through an interview process.

141. The substation reorganization committee interviews each employee within the substation department by service area. Plaintiff along with Jim Gilliland was a member of the Danville service area at this time and was interview by George Aufmuth and a member of Excelon (a consulting firm).

142. That one of the qualifications for the position of predictive maintenance is, the candidate must have been a Journeyman Substation Electrician for at least three years. Plaintiff has been a Journeyman Substation Electrician for over three years therefore I qualify for the technician position.

143. That the Positions were posted. A Caucasian employee filled the manager position.

144. That a Caucasian employee accepted the southern technician position according to the Local Union rules that govern it and was allowed all the incentives within the agreement.

22

145. Myron Kumler told plaintiff that the predictive maintenance position was his if he wanted it.

146. That I Charles Green, a black employee, according to the Local Union rules that govern it accepted the northern position. The manager begins to change the rules and denied me, the black employee, some of the same incentives that were within the Local agreement that the white employee received after accepting the position.

147. That I told the company that I would begin the process to correct this error by filing a grievance. The company insisted on denying me the same opportunities as the Caucasian employee.

148. Defendant Illinois Power and hiring supervisors (Rod Hilburn, and George Aufmuth) for the Predictive Maintenance Technician states that Plaintiff would not be allowed to drive the car to his place of residence because it would cut down on wear and cost of maintenance of the company vehicle provided for the predictive maintenance position.

149. That approximately one week later mysteriously a one-inch winch line rated at about 50,000 pound breaking capacity, broke, causing the lifting hook from the substation bucket truck to fall off. Fortunately the hook missed me.

150. That according to a rope manufacturer who analyzed the rope (Yale Cordage, Inc., 26 Morin Street, Biddeford, ME 04005), the whip lock was missing from the rope where the lifting hook was. The whip lock prevents the splice from moving.

151. The whip lock can only be removed if broken over time and would be very visible. However, in this case it was completely removed and the winch line failed almost instantaneously. See affidavit of Charles Green.

23

152.  That the Occupational Safety and Health Administration (OSHA), 2918 Willow Knolls Road, Peoria, Illinois 61614 is investigating the issue with the rope Complaint No. 20327290.

153.  OSHA cited Illinois Power Company for violations in Complaint No. 20327290.

154.  Subsequent to Plaintiff filing and/or participating in Complaint No. 20327290 in 2001 defendant begin a series of discriminating, Harassing and Retaliatory acts against plaintiff for example but not limited to trying to find plaintiff incompetent.

155.  Plaintiff was forced to file additional complaints with OSHA for these Discriminating, Harassing and Retaliatory acts forced on Plaintiff by Defendant.

156.  The OSHA complaint is under investigation.

157.  That the proposal for the electronic technician position dated 1988 in its entirety was mutually agreed upon and approved by the International Brotherhood of Electrical workers and Illinois Power Company in 2000. See affidavit of Charles Green.

158.  I was interviewed for the predictive maintenance position and given a test.

159.  During the interview I was told that the successful candidate would be able to drive the company vehicle to his place of residence daily.

160.  For example if the employees is reporting to an area over 60 miles from his home he would be required to drive to the location stay in a hotel for the week and return on Friday to his home residence.

161.  If the duty location is less than 60 miles he would have to drive to the job site and back to his home residence daily.

162.  No other alternatives were discussed as a reporting location for the predictive maintenance position than those listed above.

24

163. George Aufmuth even used the example that if I was selected, I would have to drive from my home in Danville get a hotel in Galesburg and return on Friday.

164. He also stated that if the job site was in Champaign I would be required to drive back and forth daily from Danville to Champaign.

165. During the interview I was also told that the candidates would have to reside in Champaign Area, Decatur area or Bloomington Area.

166. Since I lived in the Champaign Area this qualified me for the position and the position will be based out of the Champaign area if I was the successful candidate and it would be based in the Decatur or Bloomington area if someone from those areas were the successful candidate.

167. If the positions were stationed in the Champaign area and I was the successful candidate I would have to drive back and forth to Champaign to my home residence daily because it is approximately 35 miles and less than 60 miles. All other reporting locations I would be required to stay in a hotel for the week and return home on Friday because their distances are greater than 60 miles

168. If the positions were stationed in the Decatur area the successful candidate would have to drive back and forth to Bloomington and Champaign to his home residence daily because it is approximately 50 miles and less than 60 miles. All other reporting locations the employee would be required to stay in a hotel for the week and return home on Friday because their distances are greater than 60 miles.

169. If the positions were stationed in the Bloomington area the successful candidate would have to drive back and forth to Decatur to his home residence daily because it is approximately 50 miles and less than 60 miles. All other reporting locations the

25

employee would be required to stay in a hotel for the week and return home on Friday because their distances are greater than 60 miles.

170.   Given the data in the preceding paragraphs the area that would provide the least wear and tear on the vehicle would be the employee located in the Danville area since the Decatur and Bloomington area candidates would have to travel approximately an extra 30 miles or more per day.

171.   Given the data in the preceding paragraphs it is very clear that it would be more cost effective to place the candidate in the Danville area.

172.   Therefore Illinois Power Company's reason for denying Charles Green the opportunity to drive the Company vehicle to his home residence daily is unworthy of credence and the real reasons were retaliation and discrimination because of his race (black).

173.   I was also told that the candidate for the predictive maintenance position must have been a substation journeyman for at least three years. I have been a substation journeyman for over three years therefore. I qualify for the position.

174.   According to the substation performance team the incentives for example being allowed a company vehicle to drive to the candidate's residence daily were incorporated into the agreement to entice qualified journeyman.

175.   According to the substation performance team the incentives for example being allowed a company vehicle to drive to the candidate's home residence daily were incorporated into the agreement not only to entice qualified journeyman, but the cost was so minute compared to the cost save by the predictive maintenance technician.

26

176.    Every Caucasian in the same or similar position as Charles Green if he were the successful candidate of the predictive maintenance technician are given the opportunity to drive their car home daily although some are traveling two or three times the distance.

177.    Subsequent to my filing my complaint, in my current position I have been forced to drive to Champaign service area in my personal vehicle daily and pick up a company vehicle that has been assign to me and go back to Danville to work. At the end of the day I am to report back to the Champaign service area, get my personal vehicle and drive back home.

178.    Plaintiff feels that he has been forced to continue driving back and forth to Champaign in retaliation by Illinois Power Company.

179.    I was interviewed for the predictive maintenance position George Aufmuth gave me the lowest score of all candidates.

180.    No member of the substation performance team, the IBEW or Illinois power company has come to an agreement to amend the predictive maintenance agreement to indicate that if you live in the Champaign area and/or the Decatur area and you are the successful candidate for the predictive maintenance position you will not be allow to drive a company vehicle to your residence (hotel or home).

181.    No member of the substation performance team, the IBEW or Illinois Power Company has come to an agreement to amend the predictive maintenance agreement to indicate that if you are the successful candidate you will be allow to drive a company vehicle to your residence (hotel or home) if you live in the Bloomington area.

182.    Subsequent to Charles Green filing a complaint involving Rod Hilburn, he was rewarded and promoted to manager.

183.   Subsequent to Charles Green filing a complaint involving Mike Mumm, he was rewarded and promoted to manager.

184.   Subsequent to Charles Green filing a complaint involving George Aufmuth, he was rewarded and promoted to manager.

185.   Subsequent to Charles Green filing a complaint involving Jeff Hall, he was rewarded and promoted to manager.

186.   Subsequent to Charles Green filing a complaint involving Rod Hilburn, George Aufmuth. Mike Mumm, Jeff Hall Charles Green was targeted for discrimination to date.

187.   The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to fill the Underutilized Information networking customer support specialist Position, Notification Number INFO000106 from 1994-1995 with black candidates during the time in which Plaintiff had an active position interest notification form on file.

188.   The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to fill the Underutilized Specialist, senior specialist Position, Notification Number ETNS000103 from 1995-1996 with black candidates during the time in which Plaintiff had an active position interest notification form on file.

189.   The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to fill the Underutilized system programmer Position, Notification Number INFO000119 from 1995-1996 with black candidates during the time in which Plaintiff had an active position interest notification form on file

28

190. The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to fill the Underutilized network system programmer Position, Notification Number INFO000101 from 1994-1995 with black candidates during the time in which Plaintiff had an active position interest notification form on file.

191. The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to fill the Underutilized programmer Position, Notification Number INFO000112 from 1994-1995 with black candidates during the time in which Plaintiff had an active position interest notification form on file.

192. The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to fill the Underutilized electrician position from 1995-1996 with black candidates during the time in which Plaintiff had an active transfer request form on file.

193. The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to fill the Underutilized electrician 1st class position located at the Clinton power station from 1993-1994 with black candidates during the time in which Plaintiff had an active transfer request form on file.

194. The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to fill the Underutilized electrician 1st class position located at the vermilion power station from

1993-1994 with black candidates during the time in which Plaintiff had an active transfer request form on file.

195.    The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to fill the Underutilized Analyst, Associated Analyst position from 2000 to 2001 with black candidates during the time in which Plaintiff had an active position interest notification form on file.

196.    The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to fill the Underutilized Process technology Supervisor position from 2000 to 2001 with black candidates during the time in which Plaintiff had an active position interest notification form on file.

197.    The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to fill the Underutilized Leadman position located in the Danville service area from 1997-1998

198.    The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to fill the Underutilized system Operations Specialist AKA System operations Supervisor Position that was filled by Dan Morrison on or around 1997 (where the candidates were preselected).

199.    The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to fill the

30

Underutilized Associate Analyst Position located in the Information Technology

Position on or around 1999 (where the candidates were preselected).

200.    The defendant failed to take affirmative steps to illustrate that it was truly an equal

opportunity employer and to comply with its affirmative Action policy to allow black

employees who are members of the IBEW and employees of Defendant the opportunity

to drive their company vehicle to their residence daily.

201.    The defendant failed to take affirmative steps to illustrate that it was truly an equal

opportunity employer and to comply with its affirmative Action policy to apply

absenteeism policies consistently for example but not limited to include information

about the absence record of Cheryl Krutsinger three years prior to her becoming a

substation electrician apprentice first step, substation electrician apprentice second step,

substation electrician apprentice third step, substation electrician apprentice fourth step

and substation electrician journeyman in 2001.

202.    The defendant failed to take affirmative steps to illustrate that it was truly an equal

opportunity employer and to comply with its affirmative Action policy to apply

absenteeism policies consistently for example but not limited to include information

about the absence record of Eldrige Dolan three years prior to him becoming a foreman.

203.    The defendant failed to take affirmative steps to illustrate that it was truly an equal

opportunity employer and to comply with its affirmative Action policy to apply

absenteeism policies consistently for example but not limited to include information

about the absence record of Patrick Doan three years prior to him becoming a foreman.

204.    The defendant failed to take affirmative steps to illustrate that it was truly an equal

opportunity employer and to comply with its affirmative Action policy to apply

31

absenteeism policies consistently for example but not limited to include information about the absence record of James Rosnett three years prior to him becoming a Crew leader.

205.    The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to apply absenteeism policies consistently for example but not limited to include information about the absence record of Chris Thoms three years prior to him becoming an electronic technician.

206.    The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to apply absenteeism policies consistently for example but not limited to include information about the absence record within the last seven years of any employee three years prior who was promoted to any position and their absence record was over 100 hours other than vacation.

207.    The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to apply policies consistently for example but not limited to providing Plaintiff with training that will advance his career especially those that he requested from 1992 –2001.

208.    The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to apply policies consistently for example but not limited to promoting plaintiff to a supervisory and/or any other management and/or company position from 1992-2001 .

32

209. fraud Latin fraud- fraus  a: any act, expression, omission, or concealment calculated to deceive another to his or her disadvantage.  a misrepresentation or concealment with reference to some fact material to a transaction that is made with knowledge of its falsity or in reckless disregard of its truth or falsity and with the intent to deceive another and that is reasonably relied on by the other who is injured thereby

210. Perjury ['per-je-re] Anglo-French perjurie parjurie, from Latin perjurium, from perjurus deliberately giving false testimony, from per- detrimental to + jur- jus law.  the act or crime of knowingly making a false statement (as about a material matter) while under oath or bound by an affirmation or other officially prescribed declaration that what one says, writes, or claims is true

211. false swearing : the making of false statements under oath or affirmation in a setting other than a judicial proceeding, also the crime of false swearing.

212. Charles Green was Sanction in case No 99-2146.

213. Case No. 99-2146 was a case involving but not limited to retaliation and discrimination.

214. This Case involves but not limited to perjury, fraud and/or false swearing.

215. Perjury, fraud and/or false swearing are greater crimes than Charles Green defending his honor by filing a complaint involving but not limited to retaliation and discrimination.

216. Charles Green was Sanction in case No 99-2146 in a case where he attempted to correct what he felt were illegal activities.

COUNT I

33

For his first cause of action, against but not limited to Illinois Power, George Aufmuth and Rod Hilburn the Plaintiff, Charles Green, states as follows:

217.   The cause of action in this case raises an issue of federal law. Equitable relief sought.

218.   That I was but not limited to subjected to different terms and conditions on or about August 29, 2000, because of retaliation.

## PRIMA FACIE ALLEGATIONS

219.   That I had filed two other charges with the EEOC within recent past.

220.   That in August 2000, I had applied for the position of Preventive Maintenance Technician.  On August 29, 2000, just subsequent to my acceptance of the position, Illinois Power subjected me to different terms and conditions in that certain incentives that accompany the Preventive Maintenance technician were removed or changed.  I was told for instance that I would not be allowed to take a company vehicle home daily.

221.   That the different terms and conditions of August 29, 2000 were not implemented upon other comparatives that accepted identical similar position.  Therefore the terms and conditions of the denial of company vehicle use, followed my formal charges within such period of time as to raise the inference of retaliatory motivation.

COUNT II

222.   The cause of action in this case raises an issue of federal law. Equitable relief sought.

223.   For his second cause of action, against but not limited to Illinois Power, George Aufmuth and Rod Hilburn the Plaintiff, Charles Green, states as follows:

34

224.    Paragraphs one through two hundred fifteen are incorporated by reference as if set forth directly herein.

225.    That I was but not limited to subjected to different terms and conditions on August 29, 2000, because of race, black.

226.    Paragraphs one through two hundred-nine are incorporated by reference as if set forth directly herein.

## PRIMA FACIE ALLEGATIONS

227.    That I am black. And resides in Vermilion County Illinois

228.    That I was well qualified for the position of Preventive Maintenance Technician.

229.    That on August 29, 2000, just subsequent to my acceptance of the position. Illinois Power subjected me to different terms and conditions in that certain incentives that accompany the Preventive Maintenance Technician were removed or changed. I was told for Instance that I would not be allowed to take a company vehicle home daily.

230.    That Roy Northcutt, who is Caucasian, applied for and accepted the Preventive Maintenance Technicians and just subsequent to the EEOC issuing me a right to sue letter Joe Van Valey, who is also Caucasian applied for and accepted the Preventive Maintenance Technicians. Illinois Power did not implement changes to those positions subsequent to their acceptance.

## COUNT III

231.    The cause of action in this case raises an issue of federal law. Equitable relief sought.

232.    Paragraphs one through two hundred twenty-two are incorporated by reference as if set forth directly herein.

233. For his Third cause of action, against but not limited to Illinois Power, George Aufmuth and Rod Hilburn the Plaintiff, Charles Green, states as follows:

234. That I was but not limited to forced to resign on September 1, 2000, because of discriminatory practice based upon race, black.

235. The acts by Defendant resulted in constructive demotion.

236. Paragraphs one through seventy nine are incorporated by reference as if set forth directly herein

PRIMA FACIE ALLEGATIONS

237. That I am black. And resides in Vermilion County Illinois

238. That I was well qualified for the position of Preventive Maintenance Technician.

239. That I was forced to resign on September 1, 2000, because of discriminatory practice based upon race, black

240. That on August 29, 2000, just subsequent to my acceptance of the position. Illinois Power subjected me to different terms and conditions in that certain incentives that accompany the Preventive Maintenance Technician were removed or changed. I was told for Instance that I would not be allowed to take a company vehicle home daily. Because of the above-cited discriminatory practice based on my race, I had no alternative but to resign from the position on September 1, 2000.

241. That Roy Northcutt and Joe Van Valey, both of whom are Caucasian, were not subject to discriminatory practice culminating in their resignations from their positions as Predictive Maintenance Technicians.

242. That with respect to but not limited to the positions described in paragraph 82 the Plaintiff Charles Green, by virtue of his training, background and experience was well

36

qualified to hold those positions and it was consistent with his career goals and objectives.

243.    That by virtue of the conduct described in the preceding paragraphs the Plaintiff, Charles Green, was the recipient of discriminatory treatment in employment because of his race in violation of 42 U.S.C. § 2000e-2 Affirmative Action Policies, U.S.C 1983, U.S. CONSTITUTION (AMENDMENT 1,5,6,7,8,9,13,14), 28 U.S.C. §§ 1331 and 1332, 42 U.S.C. §1981, 28 U.S.C. § 1367, 42 U.S.C. §1981a, 42 U.S.C. §1981a(a), 42 U.S.C. §1981a(b)(1), 42 U.S.C. §1981a(b)(3), 42 U.S.C. §1983, 706g, Restatement (Second) of Torts § 908(2)(1979), 42 U.S.C. §1981a(c),. in that he was subjected to discriminatory practices.

244.    That as a direct and proximate result of the discriminatory treatment described above the Plaintiff, Charles Green, suffered monetary damage through the loss of employment opportunities and advancements in employment consistent with his career goals and objectives together with mental anguish, inconvenience, embarrassment, the loss of the enjoyment of life as well as lost salary and benefits.

COUNT IV.

245.    The cause of action in this case raises an issue of federal law. Equitable relief sought.

246.    Paragraphs one through two hundred thirty six are incorporated by reference as if set forth directly herein.

247.    For his fourth cause of action. against but not limited to Illinois Power, George Aufmuth and Rod Hilburn the Plaintiff, Charles Green, states as follows:

37

248.  Myron Kumler, Rod Hilburn, George Aufmuth, Ken Justice and/or Veta Rudolph
Lieke participated in and/or committed perjury, fraud and/or false swearing in regard to
case FMCS NO. 011128-02729 –A which deprived plaintiff of due process and his
liberties.

COUNT V.

249.  The cause of action in this case raises an issue of federal law. Equitable relief
sought.

250.  Paragraphs one through two hundred forty are incorporated by reference as if set
forth directly herein.

251.  For his fifth cause of action, against Defendant Illinois Power Company , Plaintiff,
Charles Green, states as follows:

252.  The defendant failed to take affirmative steps to illustrate that it was truly an equal
opportunity employer and to comply with its affirmative Action policy to fill but not
limited to the High tech, Underutilized Information networking customer support
specialist Position, Notification Number INFO000106 from 1994-1995; Underutilized
Specialist, senior specialist Position, Notification Number ETNS000103 from 1995-
1996; Underutilized system programmer Position, Notification Number INFO000119
from 1995-1996; network system programmer Position, Notification Number
INFO000101 from 1994-1995; programmer Position, Notification Number INFO000112
from 1994-1995; Analyst, Associated Analyst position from 2000 to 2001 with black
candidates during the time in which Plaintiff had an active position interest notification
form on file.

38

253.  Defendant failure to follow their own personnel policies and procedures in filling the position listed in the previous paragraph deprived plaintiff of advancement opportunities within Illinois Power company.

COUNT VI.

254.  The cause of action in this case raises an issue of federal law. Equitable relief sought.

255.  Paragraphs one through two hundred forty five are incorporated by reference as if set forth directly herein.

256.  For his sixth cause of action, against Defendant Illinois Power Company , Plaintiff, Charles Green, states as follows:

257.  The defendant failed to take affirmative steps to illustrate that it was truly an equal opportunity employer and to comply with its affirmative Action policy to fill but not limited to the High tech, Underutilized system Operations Specialist AKA System operations Supervisor  Position that was filled by Dan Morrison on or around 1997 (where the candidates were preselected).and Associate Analyst Position located in the Information Technology Position on or around 1999 (where the candidates were preselected).

258.  Defendant failure to follow their own personnel policies and procedures in filling the position listed in the previous paragraph deprived plaintiff of advancement opportunities within Illinois Power company.

259.  Defendant failure to follow their own personnel policies and procedures in filling the position listed in this Count resulted in a constructive demotion and deprived plaintiff of advancement opportunities within Illinois Power company.

260.

COUNT VII.

261.   The cause of action in this case raises an issue of federal law. Equitable relief

sought.

262.   Paragraphs one through two hundred fifty-two are incorporated by reference as if set

forth directly herein.

For his seventh cause of action, against Defendant Illinois Power Company , Plaintiff,

Charles Green, states as follows:

COUNT VIII

263.   The cause of action in this case raises an issue of federal law. Equitable relief

sought.

264.   For his eighth cause of action, against but not limited to Illinois Power and Rod

Hilburn the Plaintiff, Charles Green, states as follows:

265.   That I was subjected to different terms and conditions on from 1992 to 1996,

because of race, black.

266.   I was but not limited to denied various training opportunities that I requested that

were offered by Illinois Power.  For example but not limited to computer software

classes, electricity class, stress management, time management and etc.

267.   Paragraphs one through three hundred six are incorporated by reference as if set

forth directly herein.

PRIMA FACIE ALLEGATIONS

268.   That I am black.

40

269. I requested training not only to enhance my skills and/or to make me more marketable for future job openings.

270. I was denied these training opportunities for example but not limited to electricity class DOS, Stress management class and spray license certification class because of my race.

271. I was told, for instance that I would not retain the information.

272. I am entitled to the same training opportunities as my Caucasian coworkers.

COUNT IX

273. The cause of action in this case raises an issue of federal law. Equitable relief sought.

274. Plaintiff incorporates by reference the allegation set forth in the preceding paragraphs of this Complaint as though set forth at length herein.

275. For his ninth cause of action, against but not limited to Illinois Power the Plaintiff, Charles Green, states as follows:

276. Plaintiff is claiming that his constitutional rights were violated for example but not limited to, defendant denied plaintiff the opportunity to express himself through the Defendants open door policy in 1997 after he made them aware of their pre-selection of candidates favoring Caucasians (which is in violation of their own policies and procedures.) See Exhibit 15-17 and 20-26.

277. This is in violation of plaintiff first amendment, fourteenth amendment and thirteenth amendment where plaintiff being black is given the same rights as whites including freedom of speech and press.

278. This is in violation of plaintiff fifth amendment where it deprived him of Liberty.

41

279.    Plaintiff is entitled to relief entitled to compensatory and punitive damages, front pay, in addition to equitable relief available under prior law. 42 U.S.C. § 1981a(a). Punitive damages may be awarded since the plaintiff demonstrated that the defendant engaged in a discriminatory practice with malice and with reckless indifference to the federally protected rights of an aggrieved individual. 42 U.S.C. § 1981a(b)(1) and 42 U.S.C. § 1981a(b)(3). Plaintiff is also entitled to relief do to negligence. 42 U.S.C. § 1983 and Civil Rights Act of 1991.

COUNT X.

280.    The cause of action in this case raises an issue of federal law. Equitable relief sought.

281.    Plaintiff incorporates by reference the allegation set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

282.    For his tenth cause of action, against but not limited to Illinois Power, the Plaintiff, Charles Green, states as follows:

283.    Illinois Power policies and procedures have placed emphasis on seniority Where Seniority may govern, "'not only promotion and layoff, but also transfer, demotion, rest days, shift assignments, prerogative in scheduling vacation, order of layoff, possibilities of lateral transfer to avoid layoff, 'bumping' possibilities in the face of layoff, order of recall, training opportunities, working conditions, length of layoff endured without reducing seniority, length of layoff recall rights will withstand, overtime opportunities, parking privileges, and [even] a preferred place in the punch-out line.'" However, when a black employee has seniority the rules change when placing employees in positions.

42

284.    For example if a black employee has more seniority for a particular position than the Caucasian employee but if the Caucasian employee exist and does not have more seniority than the black employee then the Caucasian is placed in the position as illustrated throughout these pleadings.

285.    For example I applied for but not limited to shift technician, electronic technician and predictive maintenance positions where I had more seniority than white applicants however Illinois Power violated the seniority system and changed the rules in favor of white applicants and placed white employees into the positions denying plaintiff these employment opportunities..

286.    The abusive conduct of the Defendant is in question and all issues and claims outside the scope of this charge are actionable and shall be treated as one. Plaintiff has filed grievances but not limited to these issues and the IBEW and Illinois Power Company has failed to process them, which is a violation of the collective bargaining agreement between the company and the IBEW.

287.    Their Breach of contract and their negligence has caused plaintiff harm, where plaintiff was denied due process and plaintiff is entitled to relief from but not limited t the IBEW and Illinois Power Company.

288.    And all Claims new and old involving seniority is subject to equitable tolling and are actionable. Given the abusive conduct of Defendant plaintiff request that this court take a look at all jobs plaintiff has applied for and was denied even those not listed in the pleadings. See GREEN I and GREEN II.

COUNT XI

289.    The cause of action in this case raises an issue of federal law. Equitable relief sought.

290.    Plaintiff incorporates by reference the allegation set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

291.    For his eleventh cause of action, against but not limited to Illinois Power, the Plaintiff, Charles Green, states as follows:

292.    After Rod Hilburn called me ignorant I exercised my rights governed by the first amendment, free speech and press, the company policy through the complaint process I elected the open door policy and filed a complaint with Paul Lang, vice president of Illinois Power Company.

293.    I met with Paul Lang and Jesse Price to discuss the issues. I also discussed that the rest rooms were not wheel chair accessible. We had a guest speaker who was confined to a wheel chair and had to crawl across the nasty floor to get to the toilet. Nothing was done about this situation or mine.

294.    Subsequent to my meeting with Paul Lang Illinois Power posted an electronic technician position. I applied for the position.

295.    In retaliation because of my race and for filing a complaint with Paul Lang and Jesse Price my 1st, 13,th, 14th and 5th amendment and seniority rights were violated. I was but not limited to not interviewed for the position. I was denied the position.

296.    The position was given to a less qualified Caucasian outside of the substation department. This employee was preselected by race. Every employee in the electronics technician at this time is white. 703(a)(1), 42 U.S.C. 2000e-2(a)(1), U.

44

S.C. 1983. See pleadings for GREEN I and GREEN II Including Motion for summary judgment and supporting documents.

297.

COUNT XII

298.    The cause of action in this case raises an issue of federal law. Equitable relief sought.

299.    Plaintiff incorporates by reference the allegation set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

300.    For his twelfth cause of action, against but not limited to Illinois Power, the Plaintiff, Charles Green, states as follows:

301.    Illinois Power policies and procedures have placed emphasis on experience and higher education. However, when a black employee has a higher education or experience or both the rules changes when placing employees in positions.

302.    For example if a black employee has more education for a particular position than the Caucasian employee but the Caucasian employee has experience, not necessarily more experience than the black employee then the Caucasian is placed in the position as illustrated throughout these pleadings.

303.    For example but not limited to I was denied Information technology specialist positions although I had more education and experience. And the positions were given to less-qualified white employees, for example but not limited to Mike Driskel.

304.    Plaintiff also had a higher education than the Caucasian employees who were placed in, but not limited to the predictive maintenance technician position,