Page 3

106 F.3d 403 (Table)

106 F.3d 403 (Table), 1997 WL 14789 (7th Cir.(Ind.))
**Unpublished Disposition**

**(Cite as: 106 F.3d 403, 1997 WL 14789 (7th Cir.(Ind.)))**

Devore alleged that all the defendants engaged in a conspiracy to deprive him of what seems to be most of the affirmative rights listed in the Constitution.

It is possible that Devore could seek damages for the actions of the defendants which violated his civil rights beyond the violation that he claims occurred when the injunction issued. Such a claim would not call into question the state court judgment and therefore the district court would have jurisdiction. *See Nesses,* 68 F.3d at 1005. Nor would such an action necessarily be barred by *res judicata,* because Indiana law probably would not have required Devore to state his conspiracy claim against all these defendants in a counterclaim to the suit brought by the county seeking the injunction. (The parties have not discussed Indiana's law of *res judicata* and we need not do so here). None of this matters, however, because the district court was correct in its assessment that Devore's allegations were insufficient to state a claim. Although a plaintiff need only make a short and plain statement showing that he is entitled to relief, Fed.R.Civ.P. 8(a), and even though we construe *pro se* pleadings liberally, Devore has failed to satisfy even this low threshold. He cites several substantive constitutional provisions that he claims the various defendants violated, but fails to state in what manner they did so. As such he has not shown that he is entitled to relief. Thus, it was proper for the district court to dismiss these additional claims under Rule 12(b)(6).

\*\*3 Devore also claims that one of the defendants violated the Indiana voyeurism statute. It is not clear from the district judge's language whether she dismissed this claim "on the merits" or declined to exercise supplemental jurisdiction over the claim. 28 U.S.C. § 1367(c)(3). We believe the latter option was the correct course.

AFFIRMED.

106 F.3d 403 (Table), 1997 WL 14789 (7th Cir.(Ind.)), Unpublished Disposition

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Not Reported in F.Supp.2d                                                                                  Page 1

Not Reported in F.Supp.2d, 2005 WL 2994328 (C.D.Ill.)
**(Cite as: 2005 WL 2994328 (C.D.Ill.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
C.D. Illinois.
William B. MOYER, Plaintiff,
v.
GLEN F. HULTZ, J.L. Abbott, Pat Staples, Thomas J. Brownfield, Chet Vahle, Mark Drummond, Brian Anderson, Jennifer Cifaldi, D. Gouhl, Unknown Baliff, and Barney S. Bier, Defendants.
No. 05-3039.

Nov. 8, 2005.
William B. Moyer, Nebo, IL, pro se.

George J. Casson, Clifford G. Kosoff, O'Halloran Kosoff Geitner & Cook PC, Northbrook, IL, Sarah R. Kerley, Illinois Attorney General, Springfield, IL, for Defendants.

*OPINION*

SCOTT, J.

*1 This matter is before the Court on a Motion to Dismiss (d/e 22) by Defendants Jennifer Cifaldi, Donna Goehl, Barney S. Bier, Judy Abbott, and Glen Hultz and a Motion to Dismiss (d/e 27) by Defendants Brian Anderson, Thomas Brownfield, Mark Drummond, Patrick Staples, and Chet Vahle. [FN1] For the reasons set forth below, the Motions are allowed.

> FN1. The Court notes that, while the Amended Complaint refers to Bailiff D. Gouhl and D. Goul, the correct spelling of the name is Goehl. Because Defendant Goehl's identity is not at issue, the Court will use the correct spelling for consistency.

Plaintiff Moyer has filed a *pro se* six-count Amended Complaint (d/e 6), alleging violations of 42 U.S.C. § 1983 and "R.I.C.O." (presumably the Racketeer Influenced and Corrupt Organizations Act). According to the Amended Complaint, Moyer was cited by Illinois State Police Trooper Brian Anderson on October 15, 2003, for failing to wear a seat belt as required under Illinois law. Moyer pled not guilty to the offense, and the matter proceeded to jury trial in Circuit Court in Adams County, Illinois, on February 9, 2004. The Amended Complaint alleges that just before the trial, Adams County Assistant State's Attorney Jennifer Cifaldi announced that there was an active warrant for Moyer's arrest from Pike County, Illinois, and that Moyer could not leave the building at the end of the trial. Moyer alleges he was placed under arrest by two bailiffs, but he does not state when this occurred. The allegations of the Amended Complaint state that a jury trial did indeed take place on February 9, 2004, before Adams County Judge Chet Vahle, in which Moyer represented himself.

According to the Amended Complaint, immediately before the trial began Cifaldi informed Moyer that she was "changing the charge from seat belt not worn to seat belt not properly adjusted and fastened." *Amended Complaint,* p. 5. Moyer alleges that he objected and asked to call Cifaldi as a witness. According to the Amended Complaint, Judge Vahle ruled that Moyer could not do so. Moyer asserts that prior to trial, Judge Vahle told Moyer that he would be held in contempt of court if he brought up certain matters before the jury. According to Moyer, during the trial, whenever Moyer tried to broach one of these topics, Judge Vahle said, "you know what will happen." *Id.* The Amended Complaint does not state the outcome of the trial. Moyer has attached a Notice of Appeal in the Adams County case as an exhibit to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 2994328 (C.D.Ill.)

**(Cite as: 2005 WL 2994328 (C.D.Ill.))**

Page 2

Amended Complaint. *Amended Complaint*, Ex. 7. This Notice of Appeal indicates that Moyer was convicted on February 9, 2004, and was ordered to pay a $69.00 fine and $25.00 in court costs. The Notice of Appeal was file stamped March 8, 2004, by the Circuit Clerk of Adams County. The Amended Complaint does not reveal the status of the appeal.

Moyer filed his Amended Complaint in the present case on March 28, 2005. The Amended Complaint names as defendants Glen Hultz, Clerk of the Circuit Court of the 8th Judicial Circuit of Illinois, Adams County, Assistant Adam's County State's Attorney J.L. Abbott, Captain Patrick Staples of the Illinois State Police, Chief Judge of Adams County Thomas Brownfield, Adams County Judges Chet Vahle and Mark Drummond, Trooper Brian Anderson of the Illinois State Police, Adams County Assistant State's Attorney Jennifer Cifaldi, Adams County Bailiff Donna Goehl, and an additional unknown bailiff. Moyer asks this Court to overturn his state arrest and conviction and also seeks punitive damages in various amounts.

*2 Defendants move to dismiss based on various theories. As an initial matter, the Court recognizes that, as a general rule, federal courts other than the Supreme Court have no subject matter jurisdiction to review state court judgments. *See District of Columbia Ct. of App. v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206, (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Federal courts do have authority to review collaterally state court judgments in criminal cases, but only through the habeas corpus process, which is not at issue here. *See* 28 U.S.C. § 2254; *Preiser v. Rodriguez,* 411 U.S. 475, 488-90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Therefore, to the extent Moyer is challenging the state court judgment itself, this Court lacks jurisdiction.

Moreover, to the extent Moyer is raising § 1983 claims that would necessarily demonstrate that his seat belt conviction is invalid, his claims are barred by *Heck v. Humphrey. See Heck,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Under *Heck,* in order to pursue civil damages for wrongs that would necessarily demonstrate the invalidity of his conviction, Moyer "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 486-87. The record contains no indication that Moyer's seat belt conviction has been invalidated in any of these ways.

Moyer's *pro se* Amended Complaint, however, raises claims distinct from his seat belt violation conviction and outside the scope of *Rooker-Feldman,* and the Court, thus, turns to Defendants' argument for dismissal pursuant to Fed.R.Civ.P. 12(b)(6). With respect to Defendants Hultz, Abbott, Staples, Brownfield, and Bier, the Court notes that while these Defendants are named in the caption, there is no further mention of them in the Amended Complaint. Merely including these Defendants in the caption of the Complaint is not sufficient to state a claim against them. *See Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir.1998). Under Fed.R.Civ.P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff need not plead particular legal theories or particular facts in order to state a claim. The Supreme Court has recognized that all that is required is "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (internal quotations and citations omitted). In the present case, Moyer fails to meet even this low threshold with respect to Defendants Hultz, Abbott, Staples, Brownfield, and Bier. The claims against these five Defendants are, therefore, dismissed.

*3 Moyer's RICO claims are similarly unavailing. In the Amended Complaint, Moyer purports to raise civil claims under RICO, but he does not specify under which subsection of 18 U.S.C. § 1962 he is proceeding. *See Amended Complaint,* p. 1.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 3

Not Reported in F.Supp.2d, 2005 WL 2994328 (C.D.Ill.)

**(Cite as: 2005 WL 2994328 (C.D.Ill.))**

Although there are significant substantive differences in the subsections of § 1962, "the existence of an 'enterprise' and a 'pattern of racketeering' are elements that are fundamental to each of the RICO subsections." *Starfish Inv. Corp. v. Hansen,* 370 F.Supp.2d 759, 769 (N.D.Ill.2005). The Amended Complaint is devoid of allegations that could support a finding of either of these two essential elements. Thus, the allegations of the Amended Complaint are insufficient to state a claim under any subsection of § 1962, and Moyer's RICO claims are dismissed.

Moving on to Moyer's § 1983 claims, the Court turns first to Defendants Vahle and Drummond. The Court finds that any claims against these two Defendants are barred by absolute judicial immunity. Judicial immunity shields judges from liability for acts performed in their judicial capacity. *Dawson v. Newman,* 419 F.3d 656, 661 (7th Cir.2005). The only allegations in the Amended Complaint that involve Judges Vahle and Drummond deal with acts they performed in a judicial capacity. Moyer's claims against Judges Vahle and Drummond are, therefore, dismissed.

With respect to Defendant Anderson, the Amended Complaint alleges that Trooper Anderson stopped Moyer on October 15, 2003, for failure to wear a seat belt. Moyer alleges that, upon being stopped for the traffic violation, he asked Anderson for his "constitutional rights. The 4th, 5th, and 6th Amendment," and that, in response, Anderson told Moyer that he would go to jail if he did not cooperate. *Amended Complaint,* p. 5, Count 1. The only other allegation relating to Anderson is that Anderson appeared as the State's sole witness at Moyer's trial.

Anderson asserts that he is entitled to qualified immunity. The Court, however, does not reach the question of qualified immunity because the Amended Complaint fails to allege that Anderson violated Moyer's constitutional rights. In analyzing a qualified immunity claim, the Court must consider the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The facts alleged in Moyer's Amended Complaint are insufficient to show a constitutional violation by Defendant Anderson. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* Moyer's claims against Anderson are dismissed for failure to state a claim.

The allegations of the Amended Complaint relating to Defendant Cifaldi are two-fold. In Count 5, Moyer alleges that Cifaldi amended the charge against him immediately prior to trial. In Count 6, Moyer alleges that Cifaldi told him that there was a warrant for his arrest from Pike County and that he could not leave the building at the end of trial. Moyer further alleges that he asked Cifaldi what the warrant was about, and she said she did not know who issued it, or what it was about.

*4 Cifaldi asserts that she is entitled to absolute prosecutorial immunity on all of Moyer's claims. It is well-established that prosecutors are absolutely immune from a § 1983 suit for damages for initiating a prosecution and in presenting the State's case. *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The allegations against Cifaldi in Count 5 fall within the scope of *Imbler.* Thus, Cifaldi is entitled to absolute immunity from the Count 5 claims.

Turning to the allegations of Count 6, the Court notes that arrests are normally police, not prosecutorial, functions. Under a broad reading of Count 6, Cifaldi directed two bailiffs to arrest Moyer on the Pike County warrant. The Second Circuit examined a similar situation in *Day v. Morgenthau. Day,* 909 F.2d 75 (1990). The plaintiff in *Day* alleged that a prosecutor directed a court officer to arrest him without a warrant and without probable cause. The Second Circuit determined that the prosecutor was not entitled to absolute immunity on the arrest claim, because the actions alleged were not within the scope of initiating a prosecution or presenting the State's case. *Id.* at 77- 78. Turning to the instant case, the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 4

Not Reported in F.Supp.2d, 2005 WL 2994328 (C.D.Ill.)

**(Cite as: 2005 WL 2994328 (C.D.Ill.))**

Court is convinced that, similarly, Cifaldi is not entitled to absolute immunity for the claims alleged in Count 6. [FN2]

> FN2. While Cifaldi is not entitled to absolute immunity, the doctrine of qualified immunity may apply under the circumstances. *See Day,* 909 F.2d at 78. Cifaldi fails to raise this defense, however, so the Court does not address the issue.

In the alternative, Cifaldi asserts that Moyer fails to state a claim under § 1983 with respect to the claims alleged against her in Count 6. The Court agrees. "In order to bring a Section 1983 claim, the plaintiff must allege that a person acting under color of state law engaged in conduct that deprived him of a right, privilege or immunity secured by the Constitution." *Henderson v. Bolanda,* 253 F.3d 928, 932 n. 3 (7th Cir.2001) (*citing* 42 U.S.C. § 1983). In the present case, there are no allegations that the Pike County warrant was deficient or that it was executed unreasonably. According to the Amended Complaint, even after Cifaldi made her announcement regarding the outstanding warrant, Moyer was allowed to participate fully in his seat belt trial. Moyer fails to state a claim against Cifaldi in Count 6 because he fails to allege that she engaged in conduct that would constitute a Constitutional violation. Moyer's claims against Cifaldi are dismissed.

Finally, Moyer names as Defendants Goehl and an "unknown bailiff." The Court notes that Moyer fails to identify the "unknown bailiff" in any way, and thus, the "unknown bailiff" is not a proper Defendant. In Count 6, Moyer alleges that he was placed under arrest, pursuant to the Pike County warrant, by two bailiffs, presumably Defendant Goehl and the unknown bailiff. Defendant Goehl asserts that she is entitled to absolute immunity from Moyer's claims. However, the doctrine of qualified immunity, not that of absolute immunity, applies to cases involving a law enforcement official's execution of an arrest warrant. *See Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Because Goehl does not raise a qualified immunity defense, the Court does not analyze its applicability to Moyer's claims against her.

*5 In the alternative, Goehl asserts that Moyer fails to state a claim under § 1983 with respect to the claims alleged against her. As previously noted, a § 1983 plaintiff "must allege that a person acting under color of state law engaged in conduct that deprived him of a right, privilege or immunity secured by the Constitution." *Henderson,* 253 F.3d at 932 n. 3. Read broadly, Moyer's Amended Complaint alleges that Goehl placed him under arrest based on the Pike County warrant. There are no allegations that the Pike County warrant was deficient or that it was executed unreasonably. Moyer fails to allege a Constitutional violation by Goehl, and his claims against her are dismissed for failure to state a claim.

THEREFORE, for the reasons set forth above, the Motion to Dismiss (d/e 22) by Defendants Jennifer Cifaldi, Donna Goehl, Barney S. Bier, Judy Abbott, and Glen Hultz and the Motion to Dismiss (d/e 27) by Defendants Brian Anderson, Thomas Brownfield, Mark Drummond, Patrick Staples, and Chet Vahle are ALLOWED. Moyer's Amended Complaint is dismissed. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

Not Reported in F.Supp.2d, 2005 WL 2994328 (C.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 3:05cv03039 (Docket) (Feb. 22, 2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                          Page 1

Not Reported in F.Supp.2d, 2002 WL 171965 (N.D.Ill.)

**(Cite as: 2002 WL 171965 (N.D.Ill.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.
Indira ADUSUMILLI, Plaintiff,
v.
SWEDISH COVENANT HOSPITAL, Defendant.
**No. 01 CV 5404.**

Feb. 4, 2002.

*MEMORANDUM OPINION AND ORDER*

MANNING, J.

\*1 The plaintiff, Indira Adusumilli, has brought this *pro se* civil action pursuant to 42 U.S.C. § 2000e. The plaintiff claims that the defendant, Swedish Covenant Hospital, has discriminated against her on the basis of her sex, in violation of Title VII. More specifically, the plaintiff alleges that although she has repeatedly complained to her employer about a sexually hostile work environment and pervasive sexual harassment, the defendant has failed to transfer her to a different department or to take any other corrective action. The plaintiff additionally maintains that the defendant has retaliated against her for challenging her mistreatment. This matter is before the court for consideration of the defendant's motion to dismiss the complaint for failure to state a claim. For the reasons stated in this order, the motion will be granted.

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner,* 404 U.S. 519, 520 (1972), *reh'g denied,* 405 U.S. 948 (1972); *see also McCormick v. City of Chicago,* 230 F.3d 319, 325 (7 th Cir.2000). They can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines,* 404 U.S. at 521; *Zimmerman v. Tribble,* 226 F.3d 568, 571 (7 th Cir.2000).

When considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts--as well as any inferences reasonably drawn therefrom--in the light most favorable to the plaintiff. *Autry v. Northwest Premium Services, Inc.,* 144 F.3d 1037, 1039 (7 th Cir.1998). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. *Jones v. Edgar,* 3 F.Supp.2d 979, 980 (C.D.Ill.1998). Nevertheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7 th Cir.1992), *cert. denied,* 506 U.S. 893 (1992).

*FACTS*
The plaintiff alleges the following facts, which will be accepted as true for purposes of this motion: The plaintiff has been employed as an administrative secretary in the pharmacy department at Swedish Covenant Hospital since June 8, 2000. The plaintiff contends that male coworkers and supervisors have subjected her to a "sexually hostile" work environment ever since she began working there.

More specifically, the plaintiff alleges that a male technician, Tudor Iacob, "inappropriately poked [plaintiff's] fingers" when he was showing her a pneumatic tube. A male director, Ramesh Patel, inappropriately touched her hands on several occasions while showing her how to use a computer program and when taking binders the plaintiff handed him. Patel additionally looked at the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

Not Reported in F.Supp.2d, 2002 WL 171965 (N.D.Ill.)

**(Cite as: 2002 WL 171965 (N.D.Ill.))**

plaintiff's groin once and stared at her face on multiple occasions, making her feel uncomfortable. A male co-worker, Jun Magsino, touched the plaintiff's fingers and hands while showing her how to prepare a gel. Another co-worker, Merdin Kyaw, ogled the plaintiff's breasts. Supervisor Zoon Park intentionally brushed his hips against the plaintiff's when they were standing together in the pharmacy. Park also touched the plaintiff's hand "inappropriately" when the plaintiff was giving him a binder. He once approached the plaintiff, stood very close to her, and stared.

*2 The plaintiff reported the above incidents to the hospital's President and CEO, Mark Newton, as well as Anthony Guaccio, the Vice President of Human Resources.

Following the plaintiff's complaint, male technician Sandeep Mehta touched his penis to the plaintiff's hips and told her that she looked beautiful. Another co-worker, Michael Vo, rubbed his arm against hers. A mailroom employee intentionally touched the plaintiff's fingers on three occasions when she was giving boxes to him. Another male co-worker stared at the plaintiff's breasts during a meeting. The plaintiff again reported the matters to the Human Resources Department, but no action was taken.

The plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission [hereinafter, "EEOC"] on March 13, 2001.

Subsequently, the plaintiff requested a transfer to another department. Guaccio told her that she would not be transferred unless she withdraw her EEOC charge.

When the plaintiff brought the issues to the attention of her direct supervisor, Patel, he told her to look for another job. Patel additionally docked the plaintiff an hour's pay for attending a funeral over her lunch hour, even though the plaintiff had received permission to attend the funeral and had returned to work within an hour.

The plaintiff has suffered "adverse mental health," including depression and unspecified "mental disability," as a result of the perceived harassment. The plaintiff has been under the treatment of physicians for her psychological distress.

On April 23, 2001, the plaintiff received her Notice of Right to Sue. She initiated this lawsuit on July 13, 2001.

### DISCUSSION

Even accepting the plaintiff's factual allegations as true, the complaint fails to state a claim as a matter of law. The work conditions the plaintiff describes do not amount to a sexually hostile work environment. Moreover, the plaintiff did not suffer any adverse employment action that rose to the level of actionable retaliation after she filed an EEOC charge. In fact, the plaintiff has filed at least five other lawsuits against schools and other employers making substantially similar allegations. [FN1] In each case, the courts have rejected the plaintiff's claims and explained to her what is and is not actionable. Because in pursuing this lawsuit the plaintiff continues to ignore court rulings and well established case law, the defendant will be awarded its costs and attorneys' fees incurred in defending this suit.

> FN1. The court's docket reflects the following cases filed by the plaintiff in this district, besides the instant case: *Adusumilli v.. Chicago Police Dept.,* Case No. 95 C 7680; *Adusumilli v. Loyola University,* Case No. 97 C 8188; *Adusumilli v. Illinois Institute of Technology,* Case No. 97 C 8507; *Adusumilli v. Novus Services,* Case No. 98 C 6129; and *Adusumilli v. Discover Financial Services.,* Case No. 00 C 5522. Four of the five are employment discrimination cases; the other is a Title IX civil rights action against a school alleging sexual harassment.

I. Sexually Hostile Work Environment

Under Title VII of the Civil Rights Act of 1964, it is unlawful "for an employer to ... discriminate against any individual with respect to his

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

Not Reported in F.Supp.2d, 2002 WL 171965 (N.D.Ill.)

**(Cite as: 2002 WL 171965 (N.D.Ill.))**

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employer violates Title VII when "discrimination based on sex ... create[s] a hostile or abusive work environment." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 66 (1986).

*3 However, "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Id.* at 67. Rather, "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal quotation marks and citations omitted); *see also Faragher v. City of Boca Raton,* 524 U.S. 775, 785 (1998). The complained-of conduct must be "hostile or deeply repugnant" rather than merely "unpleasant." *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 431 (7 th Cir.1995) (rejecting plaintiff's claim of hostile work environment even though plaintiff alleged that her supervisor called her "pretty girl," made grunting noises when she wore a skirt, suggested she "run around naked," called her his "Anita Hill," and pantomimed masturbation in her presence).

Moreover, "isolated and innocuous" incidents will not rise to the level required to establish hostile work environment, whatever the plaintiff's subjective perceptions. *See Doe v. R.R. Donnelly & Sons Co.,* 42 F.3d 439, 444 (7 th Cir.1994). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher,* 524 U.S. at 788 (internal citations omitted). In order to prevail on a hostile environment sexual harassment claim, a plaintiff must show that his or her work environment was both subjectively and objectively hostile. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993). An objectively hostile environment is one that a reasonable person would find hostile or abusive. *Id.* at 21, 23. In determining whether a plaintiff has met this standard, courts must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

In this case, the plaintiff fails to state a colorable claim for sexual harassment because the alleged conduct has not been severe, debilitating, or pervasive enough to create a hostile work environment. To the contrary, the plaintiff complains of conduct remarkably similar to perceived offenses that the courts have repeatedly discounted in her prior lawsuits. *See, e.g., Adusumilli v. City of Chicago,* No. 95 CV 7680, 1997 WL 769457,*9 (N.D.Ill.1997) (Plunkett, J.) (granting employer's motion for summary judgment and holding that allegations that co-workers ogled the plaintiff and touched her arm, fingers, and buttocks did not give rise to a Title VII claim), *aff'd Adusumilli v. City of Chicago,* 164 F.3d 353, 361-62 (7 th Cir.1998), *cert. denied,* 528 U.S. 988 (1999); *Adusumilli v. Illinois Institute of Technology,* No. 97 CV 8507, 1998 WL 601822,*4 (Leinenweber, J.) (granting motion to dismiss Title IX claim of sexual harassment because the plaintiff's allegations that various professors and students ogled her and touched her hand, shoulder, back, leg, and breast failed to state a claim). In each of these cases, the plaintiff has alleged some form of ogling and inappropriate touching; in each case, her claims have been rejected.

*4 As with all of her prior cases, it is clear that the instances of conduct the plaintiff alleges in the instant complaint constitute harmless and isolated incidents that do not rise to the level of creating a hostile work environment. Even if the plaintiff has found the staring and touching offensive, her subjective perceptions are insufficient to state an actionable claim. Only a single incident-when a co-worker allegedly touched his penis against the plaintiff-could be deemed serious, and only then if the plaintiff's perception was correct and he hadn't simply unintentionally brushed against her. That episode, while offensive and inexcusable if intentional, was not sufficient, either by itself or in conjunction with the other events described by the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 4

Not Reported in F.Supp.2d, 2002 WL 171965 (N.D.Ill.)

(Cite as: 2002 WL 171965 (N.D.Ill.))

plaintiff, to create a sexually hostile work environment. No reasonable person could find that the incidents about which the plaintiff complains have been so objectively extreme or humiliating as to rise to the level of a Title VII violation.

"Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview." *Harris,* 510 U.S. at 23; *McKenzie v. Illinois Dept. of Transportation,* 92 F.3d 473, 480 (7 th Cir.1996). Whatever the plaintiff's subjective perceptions may be, the minor incidents complained of here do not suffice to state a claim for hostile work environment sexual harassment. In numerous other cases, including *Baskerville* and the plaintiff's own previous suits, the courts have held that conduct much more severe than the conduct the plaintiff currently alleges does not constitute actionable sexual harassment. *See, e.g., McKenzie,* 92 F.3d at 479-80 (holding that three sexually suggestive comments over a three-month period did not create a hostile work environment); *Saxton v. American Telephone & Telegraph Co.,* 10 F.3d 526, 534-35 (7 th Cir.1993) (holding that supervisor who inappropriately teased plaintiff, kissed her, touched her leg and upper thigh, and lurched at her did not create hostile work environment).

Under these circumstances, it is clear that the plaintiff cannot maintain any claim of sexual harassment. It may well be that the plaintiff genuinely believes that she has been the victim of sexual harassment, but her perceptions are completely unreasonable, if not irrational. Although the court has examined the plaintiff's allegations in this case without regard to her prior cases, her accusations are completely unfounded and border on the standard of frivolousness set forth in *Denton v. Hernandez,* 504 U.S.25, 32 (1992). The plaintiff has provided no facts whatsoever to support her contention that this case is somehow "different" from her other cases, or that her previous lawsuits were improperly dismissed by "intentionally unfair" judges. Given the number of times the plaintiff has been told what does and does not rise to the level of an actionable claim for sexual harassment, her claim that she has been subjected to a hostile work environment is dismissed with prejudice.

II. Retaliation

*5 The complaint likewise fails to state a cognizable retaliation claim. Defense counsel is mistaken in her assertion that the plaintiff raised the issue of retaliation for the first time in her brief opposing dismissal. The *pro se* complaint plainly advances a theory of recovery based on retaliation. The plaintiff alleges both that she was promised a transfer only if she agreed to drop her EEOC charge, and that she was unjustly punished for attending a funeral over her lunch hour when she refused to do so.

Counsel also misstates the law with respect to exhaustion. It is true that a Title VII plaintiff may generally raise only claims that were brought before the EEOC or claims that are "like or reasonably related to" allegations in the EEOC charge. *See, e.g., Cheek v. Peabody Coal Co.,* 97 F.3d 200, 202 (7 th Cir.1996). However, in this circuit there is an exception for retaliation claims in order to avoid multiple EEOC filings in cases where the filing of an EEOC charge is the catalyst for retaliation. *Heuer v. Weil-McLain,* 203 F.3d 1021, 1023 (7 th Cir.2000); *McKenzie v. Illinois Dept. of Transp.,* 92 F.3d 473, 482-83 (7 th Cir.1996).

Nevertheless, the plaintiff's retaliation claim fails because she has not articulated any materially adverse consequences for pursuing her EEOC charge. Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To state a claim for retaliation, the plaintiff must allege that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse job action; and (3) a causal link exists between the protected expression and the adverse action. *Dey v. Colt Construction & Development Co.,* 28 F.3d 1446, 1457 (7 th

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d     Page 5

Not Reported in F.Supp.2d, 2002 WL 171965 (N.D.Ill.)

**(Cite as: 2002 WL 171965 (N.D.Ill.))**

Cir.1994). Although the plaintiff's EEOC charge constituted statutorily protected activity, the court finds that the plaintiff did not suffer adverse employment actions.

According to the Seventh Circuit Court of Appeals,
> An adverse action occurs when an employee is fired or demoted, suffers a decrease in benefits or pay, or is given a significantly lesser job. Not every unwelcome employment action qualifies as an adverse action. Negative reviews, a change in job title, an increased distance to travel to work, or a lateral transfer do not, by themselves, qualify.

*Hill v. American General Finance, Inc.,* 218 F.3d 639, 644 (7 th Cir.2000).

In fact, it is not enough to state an adverse employment action-the plaintiff must show that she was subjected to "materially" adverse job action. *See, e.g., Ribando v. United Airlines, Inc.,* 200 F.3d 507, 510-11 (7 th Cir.1999):
> Although we have defined the term broadly, the adverse job action must be "materially" adverse, meaning more than "a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.,* 993 F.2d 132, 136 (7 th Cir.1993). We have explained, a materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. *Id.; see Burlington Indus. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 2268-69, 141 L.Ed.2d 633 (1988) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.")

*6 "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Id., citing Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7 th Cir.1996).

In her complaint, the plaintiff complains of two "adverse" employment actions: her supervisor purportedly refused to transfer her to a different department unless she dropped her EEOC charge and she was docked an hour's pay for attending a funeral on her lunch hour. But neither adverse job action was "material." The denial of a transfer cannot be characterized as adverse employment action at all; to the contrary, the denial maintained the *status quo.* Furthermore, being docked an hour's pay for attending a funeral over a lunch hour, while perhaps unfair under the circumstances described by the plaintiff, simply does not rise to the level of a "materially adverse change in the terms and conditions of employment."

In response to the motion to dismiss, the plaintiff additionally claims that she received unfair performance evaluations, was passed over for [unspecified] "promotions and other positions" for which she applied, and was denied sick time to care for her ill child. As noted above, negative performance evaluations cannot be deemed materially adverse job consequences. Furthermore, the hospital's sick leave policy cannot reasonably be characterized as retaliatory even if every other past employer allowed the plaintiff to use sick time when her child was ill.

The only claim that gives the court pause is the plaintiff's assertion, raised for the first time in her brief opposing dismissal, that she has been denied promotions as a result of her EEOC charge. The court is troubled that defense counsel omitted reference to that allegation in the reply brief, addressing only whether performance evaluations and sick time were materially adverse. "Adverse employment action" can encompass a failure to promote. *Spearman v. Ford Motor Co.,* 231 F.3d 1080 (7 th Cir.2000); *Hunt v. City of Markham, Ill.,* 219 F.3d 649, 654 (7 th Cir.2000).

But this court has already told the plaintiff on at least two occasions that unsupported allegations of retaliation do not comport with basic pleading requirements. *See Adusumilli v. Discover,* 1999 WL 286289 at *5 (no actionable claim where plaintiff failed to allege that any of the decision-makers

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 6

Not Reported in F.Supp.2d, 2002 WL 171965 (N.D.Ill.)

**(Cite as: 2002 WL 171965 (N.D.Ill.))**

involved in the implementation of actions she considered adverse knew about her EEOC charge or took action due to those complaints); *Adusumilli v. Illinois Institute of Technology,* 1998 WL 601822 at *5 (dismissing Adusumilli's retaliation claim because her "conclusory assertions do not satisfy" the requirement that plaintiff show a causal connection between the allegedly adverse action and the protected activity). *See also McDonnell v. Cisneros,* 84 F.3d 256, 259 (7 th Cir.1996) (dismissing retaliation claim where employee alleged no causal connection between the retaliatory conduct and the protected activity).

*7 Despite the court's prior admonitions, the plaintiff has failed to state any facts to support her claim that she was denied promotions for retaliatory reasons. The plaintiff does not indicate what the promotions were, whether she was qualified for the new positions she sought, or that the persons in charge of the promotion decisions were even aware of her EEOC charge. The plaintiff's conclusory, one-sentence assertion in her brief is insufficient to state a claim that she was denied promotions due to her EEOC charge, particularly given her past history of making similarly unsubstantiated claims though advised of the necessary elements of such a claim. The plaintiff's retaliation claims cannot survive the defendant's motion to dismiss. Because the plaintiff has failed to show either materially adverse employment action or causality, her retaliation claims are dismissed with prejudice.

III. Costs of Suit

The plaintiff continues to file lawsuits making the same or substantially similar frivolous claims. The district and appellate courts in this circuit have repeatedly explained the law to the plaintiff concerning what constitutes sexual harassment and retaliation. A judge of this district court found at least one complaint, in *Adusumilli v. Discover Financial* Services, No. 98 C 6129, 1999 WL 286289,*6-7 (N.D.Ill. Apr. 19, 1999) (Gottschall, J.), to be "baseless" and sanctionable. The judge in that case even circulated her opinion to the other judges of the district so that they would be on notice of the plaintiff's frivolous litigation. In fact, the Court of Appeals, in an unpublished order, granted the defendant-appellee's motion for sanctions in connection with the appeal of that case. *See* Mandate entered August 20, 1999, in Appeal No. 99-2269. But warnings and even sanctions have not deterred the plaintiff from relitigating essentially the same lawsuit over and over, against different employers.

Rule 11 of the Federal Rules of Civil Procedure holds even unrepresented parties to a specified standard for filing claims in federal court. Specifically, the rule states that "[b]y presenting to the court ... a pleading, ... an unrepresented person is certifying that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances,*--... (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law ...." (emphasis added). Fed.R.Civ.P. 11(b).

"Frivolous, vexatious, and repeated filings by *pro se* litigants interfere with the orderly administration of justice by diverting scarce judicial resources from cases having merit and filed by litigants willing to follow court orders." *U.S. ex rel. Verdone v. Circuit Court for Taylor County,* 73 F.3d 669, 671 (7 th Cir.1995). In addition to sanctions, courts may also award attorneys' fees and court costs against *pro se* litigants who file frivolous or vexatious suits. Courts may even restrict a litigant's access to the courts. *See, e.g., Lysiak v. C.I.R.,* 816 F.2d 311, 313 (7 th Cir.1987)(holding that "[a] court faced with a litigant engaged in a pattern of frivolous litigation has the authority to implement a remedy that may include restrictions on that litigant's access to the court" and enjoining *pro se* litigant from filing additional pleadings until previous monetary sanctions were paid); *Verdone,* 73 F.3d at 674 (ordering serial litigant to seek leave to file future pleadings).

*8 Ms. Adusumilli's pattern of filing and pressing suits that have no legal basis is both disturbing and unduly costly to defendants and the courts alike. After losing multiple lawsuits in which she alleged

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 7

Not Reported in F.Supp.2d, 2002 WL 171965 (N.D.Ill.)

**(Cite as: 2002 WL 171965 (N.D.Ill.))**

similar conduct, the plaintiff has pursued the instant lawsuit, which levels even less serious accusations of sexual harassment than the previous suits--and she did so even after being repeatedly cautioned by this court that complaints of ogling and touching would not suffice to state a claim for hostile work environment sexual harassment. It thus appears to the court that the plaintiff has not taken prior court rulings and warnings seriously.

The defendant has not moved for sanctions. Nevertheless, a prevailing defendant is entitled to costs and attorneys' fees if the plaintiff either brought suit in subjective bad faith or the action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Vitug v. Multistate Tax Com'n,* 883 F.Supp. 215, 218-19 (N.D.Ill.1995), citing *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 421 (1978) ; *Unity Ventures v. County of Lake,* 894 F.2d 250, 253 (7 th Cir . 1990). The court makes such a finding here. Because the plaintiff has put this court and yet another defendant to the time and expense of addressing a complaint containing claims nearly identical to those that have been repeatedly rejected in her previous suits, the defendant will be awarded attorneys' fees and costs of suit in accordance with Fed.R.Civ.P. 54(d)(1), 42 U.S.C. § 1988(b), and 42 U.S.C. § 2000e-5(k). The defendant is directed to submit a bill of costs and motion for attorneys' fees within fourteen days of the date of this order. If the plaintiff persists in litigating frivolous claims, the court may take more drastic action, including punitive sanctions and/or a regulatory injunction restricting the plaintiff's filings.

*CONCLUSION*

In sum, for the foregoing reasons, the defendant's motion to dismiss is granted as to all claims raised in the complaint. Both the plaintiff's sex discrimination and retaliation claims are patently without merit. Furthermore, on the court's own motion, attorneys' fees and costs of suit will be awarded in favor of the defendant, in an amount to be determined.

IT IS THEREFORE ORDERED, for the reasons set forth in this order, that the defendant's motion to dismiss [# 12] is granted. The complaint is dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(6). The case is terminated.

IT IS FURTHER ORDERED that the defendant file a bill of costs and motion for attorneys' fees within fourteen days of the date of this order.

Not Reported in F.Supp.2d, 2002 WL 171965 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 2002 WL 32603925 (Trial Motion, Memorandum and Affidavit) Memorandum - Motion to Grant Extension of Appeal (Apr. 15, 2002)

• 2001 WL 34618363 (Trial Motion, Memorandum and Affidavit) Defendant's Reply Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint (Nov. 30, 2001)

• 1:01CV05404 (Docket) (Aug. 23, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.