

Not Reported in F.Supp.2d                                                                                                      Page 1
Not Reported in F.Supp.2d, 2004 WL 2921867 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
William A. MURRAY, Plaintiff,
v.
AVON PRODUCTS, INC., Defendants.
No. 03 C 7594.

Dec. 16, 2004.

William A Murray, Chicago, IL, pro se.
Richard H. Schnadig, Aaron Robert Gelb, Vedder, Price, Kaufman & Kammholz, P.C., Chicago, IL, for Defendant.

MEMORANDUM OPINION AND ORDER

FILIP, J.

**\*1** Plaintiff William A. Murray ("Plaintiff" or "Murray") filed this *pro se* lawsuit against Avon Products, Inc. ("Defendant" or "Avon") alleging in a single count that Avon discriminated against him by failing to hire him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (D.E. 1, *amended by* D.E. 9.) Avon filed a motion for summary judgment (D.E.22), and Murray filed purported cross-motions for summary judgment (D.E.25, 27, 33). For the reasons stated below, the Court grants Avon's motion and denies Murray's motions.

BACKGROUND

Before getting into the facts of this case, the Court will go through the various filings offered by the parties relating to summary judgment.[FN1] After filing an answer to Plaintiff's First Amended Complaint (D.E.12), Defendant filed this motion for summary judgment, including the Notice to Pro Se Litigant Opposing Motion for Summary Judgment required by Local Rule 56.2 (D.E.24).[FN2]

FN1. In addition to the "substantive" papers discussed in this opinion, the Court has attempted to discern the relevance of several of Murray's papers filed in apparent support of his response and purported cross-motions for summary judgment. Murray filed three "volumes" of exhibits styled "Reproduction of Exhibits." Volume I (D.E.31) consists of computer print-outs of what appear to be Illinois Department of Corrections and Cook County Sheriff's Office records of numerous different persons named William Murray or some close derivation of the same. It is not clear to the Court whether any of these individuals is the Plaintiff, although it is clear that these materials relate to many different individuals of various names, ages, races, etc. Volume II (D.E.32) includes a computer printout of what is ostensibly a list of current and former inmates of the Federal Bureau of Prisons named William Murray, and a printout of some kind of record from the Wisconsin Circuit Court for a person named William R. Murray. (Plaintiff, incidentally, is named William A. Murray). Again, the Court is unaware whether any of these persons is the Plaintiff, although it again appears that the information relates to many different individuals. The last volume (D.E.25) includes printouts from what appear to be some kind of Internet bulletin board where persons can post racist comments under anonymous names, such as "supertrooper1" and "HA." This volume also contains copies of articles and cartoons dealing with racism. Plaintiff offers no explanation as to what any of these purported exhibits has to do with the age discrimination claim at issue. Plaintiff also makes clear-by the fact that he expressly raises a single claim for age discrimination, as well as by his statements in other portions of his filings-that he is not raising or attempting to raise a race discrimination claim. (*See, e.g.,* D.E. 1 (Compl.) at 1 (titled "Age Discrimination in Employment Act ..."); *id.* at 2 ("Cause of Action (Age Discrimination Act)"); D.E. 30 (document styled "Plaintiff's Response to Defendant's Motion to Strike Plaintiff's Cross-Motion for Summary Judgment") (stating that "Avon has no defense to age discrimination in employment. [ ... ] Avon's defense of racial discrimination in employment is no defense

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 2921867 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

to age discrimination in employment.").)

FN2. Before Defendant filed its motion for summary judgment, Plaintiff filed "Plaintiff's Response to Defendant's Motion for Summary Judgment." (D.E.21.) In light of Plaintiff's filing of a second response *after* Defendant filed its motion (D.E.29), the first improper filing will not be considered by the Court. The filing is consistent with Plaintiff's other filings, however, and consideration of it would not change the result in the case in any way.

In lieu of a response, Murray filed "Plaintiff's Cross-Motion for Summary Judgment," a two-page document that failed to conform in any manner with the requirements of Local Rule 56.1 ("L.R.56.1"). (D.E.25.) After Defendant filed its reply (D.E.26), Murray filed a second cross-motion for summary judgment (D.E.27), which this Court struck without prejudice on October 4, 2004, with the Court explaining that Plaintiff had failed to comply with L.R. 56.1. (D.E.28.) In that Order, the Court expressly allowed Murray another chance to file responsive documents or appropriate materials under the local rules in support of any cross-motion for summary judgment. (*Id.*)

Thereafter, Plaintiff filed his Response to Defendant's Motion for Summary Judgment (D.E.29), Plaintiff's Memorandum at Law In Support of His Cross-Motion for Summary Judgment (D.E.34), and Plaintiff's Response to Defendant's Motion to Strike Plaintiff's Cross-Motion for Summary Judgment (D.E.30). At that same time, Murray filed a third cross-motion for summary judgment. (D.E.33.) These materials were not in any meaningful compliance with the local rules. FN3

FN3. Plaintiff's filings often include materials and statements that bear no apparent connection to the factual or legal issues needed to analyze his claim. In addition to the documents discussed in note 1, *supra,* Murray makes statements such as: "Defendant is unconcerned about the expense of litigation-otherwise, defendant would have settled for five hundred dollars before the Illinois Department of Human Rights or for five thousand dollars in U.S. District Court." (D.E. 21 at 1); and "Defendant Avon's position is moot and a waste of time." (D.E. 30 at 1). According to the U.S. District Court Clerk's Office, Mr. Murray has filed a slew of *pro se* suits in this judicial district since this one. *See, e.g., Murray v. Penn Credit Corp.,* No. 04 C 7866 (filed Dec. 6, 2004) (*in forma pauperis* ("IFP") application pending); *Murray v. Douglas,* No. 04 C 7746 (filed Nov. 30, 2004) (IFP application pending); *Murray v. Universal Fidelity Corp.,* No. 04 C 7585 (filed Nov. 23, 2004) (IFP application granted; case pending); *Murray v. Risk Mgmt. Alternatives, Inc.,* No. 04 C 7457 (filed Nov. 17, 2004) (IFP application granted; case pending); *Murray v. CCB Credit Servs. Inc.,* No. 04 C 7456 (filed Nov. 17, 2004) (IFP application pending); *Murray v. Douglas,* No. 04 C 7416 (filed Nov. 16, 2004) (IFP application denied; motion to withdraw without prejudice granted); *Murray v. Citicorp, Citibank, & NCO Fin. Sys., Inc.,* No. 04 C 3294 (filed June 14, 2004) (motion to dismiss granted); *Murray v. Cook County Treasurer,* No. 03 C 8211 (filed Jan. 12, 2004) (motion to dismiss granted; motion to proceed IFP on appeal denied); *Murray v. Ill. Dep't of Human Rights,* No. 03 C 8415 (filed Dec. 2, 2003) (IFP application denied) *aff'd,* No. 04-1256 (7th Cir. Dec. 7, 2004). To the extent these suits are allowed to proceed forward, one can only hope that Murray will be more mindful of the applicable Local Rules.

Finally, as directed by the Court, Defendant filed a Combined Brief In Support of Defendant's Motion for Summary Judgment and Response to Plaintiff's Motions for Summary Judgment. (D.E.37.) That completed the briefing cycle.

The facts related below are taken from Defendant's Statement of Undisputed Facts in support of its motion for summary judgment. Murray has failed to comply in any way with the strictures of L.R. 56.1 in responding to Defendant's motion. In particular, Murray has failed to set forth any specific denials to Avon's individual statements of fact. Therefore, all properly supported statements of fact in Defendant's Statement of Undisputed Facts are deemed admitted by Murray. *See* L.R. 56.1(b)(3)(B) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *accord, e.g., Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir.2003); *Malec v. Sanford,* 191 F.R.D. 581, 584 (N.D.Ill.2000).

Not Reported in F.Supp.2d                                                                                                       Page 3
Not Reported in F.Supp.2d, 2004 WL 2921867 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*2** William Murray is a 52-year old man. (Def.'s Statement of Undisputed Facts (D.E.23) ("Def.SF") ¶ ¶ 1-2.) Avon is a manufacturer and distributor of beauty products such as cosmetics, fragrances, and toiletries. (*Id.* ¶ 3.) Avon operates four distribution centers and three manufacturing facilities in the United States, including one in Morton Grove, Illinois. (*Id.* ¶ 5.) This Illinois facility consisted of several buildings that housed various manufacturing units, including ones that dealt with compact powders, lotions, creams, tubes, and pouches; a lab; and a product mixing area. (*Id.* ¶ 6.)

During 2000 and 2001, Avon contracted with Suburban Job Link ("SJL"), a temporary staffing agency, for SJL to provide temporary workers for Avon's Morton Grove facility. (Def. SF ¶ 7.) These temporary workers were assigned by SJL to work at Avon for up to one year, after which time the assignment would end if the worker did not secure a permanent position with Avon. (Def. SF ¶ 8.) SJL workers at Avon were divided into three categories: Unskilled (newly placed individuals who had not taken and passed a basic skills test); Core (workers who demonstrated a measure of dependability and job proficiency): and Skilled (temps who passed a basic skills test administered by SJL and were considered eligible to be interviewed for open positions, provided their job performance was consistently above average). (*Id.* ¶ 9.) According to Avon Packaging Advisor Scott Gulliford (an employee responsible for scheduling, hiring, and orientating employees (Gulliford Aff. ¶ ¶ 1, 4)), Avon scrutinized skilled employees more closely than other employees because they were potential candidates for regular employment with Avon. (Def. SF ¶ 10.)

In October 2000, SJL placed Murray at Avon's Morton Grove facility in an unskilled position that involved screwing caps on lotions and other products on the assembly line. (*Id.* ¶ 11.) Murray passed SJL's basic skills test in July 2001 and was placed in the skilled temporary category, and he passed Avon's skills test in September 2001. (*Id.* ¶ 12.) After passing these tests, Murray alternated between packaging and operating the tube machines used to fill the tubes with cream. (*Id.* ¶ 13.) Murray was told several times by on-site SJL supervisors that Avon "wants people to become full-time Avon employees." (Murray Dep. 75:1-12; Def. SF ¶ 14.)

Around August 2000, Murray learned that Avon would be interviewing for full-time positions. (Def. SF ¶ 15.) In October 2001, Avon began a search to fill three open positions for Utility Packager. (*Id.* ¶ 16.) Production Supervisors Scott Gulliford, Melissa Krolak, Beth Norwicki, and Jerry Novoryta (also "the Advisors") worked together to compile an interview list from the SJL skilled temps. (*Id.*) Krolak did not immediately remember Murray and approached Murray on the production floor to ask him his name. (*Id.* ¶ 17). When the Advisors met to discuss which SJL employees would be interviewed, Gulliford and Krolak opposed interviewing Murray. (Def. SF ¶ 18.) These two advisors agreed that while Murray was merely adequate as an employee, they did not think he was as qualified as the other SJL employees for a full-time position. (*Id.*)

**\*3** Gulliford's opinion was that Murray worked slowly and lacked initiative. (Def. SF ¶ 19.) Gulliford frequently saw Murray sitting idle, with his arms crossed over his chest, when the line was stopped, rather than finding other ways to be productive such as cleaning his work area. (*Id.*) Of the SJL employees that Gulliford observed when the line was stopped, Murray was the one Gulliford most frequently saw sitting or otherwise not contributing to help his coworkers. (*Id.* ¶ 20.)

During one of the Advisors' discussions, Gulliford pointed out Murray to Novoryta, who upon seeing Murray recalled that he did not have a favorable impression of Murray's work habits compared to other SJL employees. (Def. SF ¶ 21.) Based on the Advisors' observations of Murray's work as a temporary worker, they decided not to interview Murray for the permanent employment slots. (Def. SF ¶ 22.) During the discussion about whom to interview, the Advisors did not discuss or reference Murray's age, and Gulliford did not know Murray's age. (*Id.* ¶ 23.) Avon filled the positions that Murray sought with three other persons.[FN4]

>   FN4. Avon included in its statement of facts that the positions were ultimately filled by Andrea Hister (date of birth, July 14, 1954), Delbert Howard (date of birth, January 27, 1954), and Jessica Rodriguez (date of birth, January 11, 1980). (Def. SF ¶ 24.) Murray objects to Avon's lack of first-hand knowledge as to the birthdates of the persons hired to the position Murray was seeking. (*See* D.E. 29 at 1.) Murray also makes a number of completely unsupported speculations, such as that Avon "probably hired these two employees after Avon

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2921867 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

learned of the age discrimination in employment case," and that these employees no longer work for Avon, or else they would have submitted their birth certificates or affidavits as to their ages. (*Id.*) Notwithstanding these irrelevant speculations, Murray is correct that the affidavit testimony of a human resources supervisor, Brad Olm, is not sufficient to establish the birthdates of the employees hired. (*See* Def. SF, Ex. B ¶ ¶ 1, 8 (Olm Dep.).) Olm has no personal knowledge of these employees' birth dates, and Avon offers no exception to the hearsay rule which would apply here. *Compare* Fed.R.Evid. 804(b)(4) (when witness is unavailable, a declarant may testify as to birth of another person only if the declarant was related to the other or was "so intimately associated with the other's family as to be likely to have accurate information"); *see also* Fed.R.Evid. 803(9) (addressing admissibility of records of vital statistics such as records of births, "if the report thereof was made to a public office pursuant to requirements of law."). The business record exception may have applied had Avon submitted human resources records to the Court as evidence, as well as some kind of testimony as to how Avon obtained the birthdate (such as by viewing a driver's license) so as to reasonably rebut a concern that the method of preparation of the records lacks indicia of trustworthiness. *See* Fed.R.Evid. 803(6). But the testimony of a witness who has merely reviewed some employee records does not suffice to overcome a hearsay objection, and the Court will not consider as evidence the ages of the persons hired by Avon.

After apparently filing a charge of discrimination with the EEOC and receiving a right to sue letter (*see* D.E. 9), Murray filed this lawsuit, alleging a single count of age discrimination for failing to interview or hire him for one of the open positions. (D.E. 1 at 2.)

SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether there is a genuine issue of fact, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette,* 359 F.3d 925, 928 (7th Cir.2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

DISCUSSION

A. Murray's Cross-Motions For Summary Judgment

The Court will begin by addressing Plaintiff's two remaining cross-motions for summary judgment. (D.E.25, 33.) L.R. 56.1 requires that with each motion for summary judgment filed, a party must file (1) any affidavits or other materials referred to in Federal Rule of Civil Procedure 56(e); (2) a supporting memorandum of law; and (3) a statement of uncontested material facts. The factual allegations in a statement of facts must be supported by admissible record evidence. *See* L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D.Ill.2000). "Failure to submit such a statement constitutes grounds for denial of the motion." L.R. 56.1(a). Moreover, while this Court is generally solicitous of *pro se* plaintiffs confronting the procedural requirements of summary judgment adjudication, precedent teaches that a *pro se* litigant is not exempt from meaningfully complying with L.R. 56.1 or provided blanket immunity from the requirements of that Rule. *See, e.g., Greer v. Bd. of Educ. of the City of Chicago,* 267 F.3d 723, 727 (7th Cir.2001); *Stevens v. Navistar Int'l Transp. Corp.,* 244 F.Supp.2d 906, 910 (N.D.Ill.2002) (St.Eve, J.) (collecting cases); *accord Members v. Paige,* 140 F.3d 699, 702 (7th Cir.1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced."). The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. *See, e.g., Koszola v. Bd. of Ed. of City of Chicago,* 385 F.3d 1104, 1109 (7th Cir.2004); *Curran v. Kwon,* 153 F.3d 481, 486 (7th Cir.1998) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1316 (7th Cir.1995) (collecting cases)). In light of the express written notice given to Murray by Avon concerning the requirements of Rule 56.1, and the Court having given Murray an additional, unsolicited opportunity to comply with the Rule after

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d      Page 5
Not Reported in F.Supp.2d, 2004 WL 2921867 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

having been informed that he had failed to do so, the Court exercises its discretion and does not excuse Murray from having failed to comply in any meaningful way with the local rules.

**\*4** In this regard, despite being admonished by the Court that his filings were out of compliance with L.R. 56.1 and being offered a second chance to file conforming papers, Murray failed to file a motion that fulfills the requirements of the rule. In neither motion did Murray file a statement of facts separate from his motion, nor did he file anything that could be construed as a supporting memorandum of law. See Malec, 191 F.R.D. at 585-87 (setting out general composition of memorandum of law). These deficiencies alone are grounds for the Court to deny Murray's motions. See Markham v. White, 172 F.3d 486, 490 (7th Cir.1999).

Moreover, even if the Court were to overlook this lack of compliance, Plaintiff has given no reason for the Court to grant summary judgment on his behalf. While the Court is obliged to read *pro se* pleadings generously, *see* Perry v. Sheahan, 222 F.3d 309, 315 (7th Cir.2000), the Court cannot in effect become Murray's lawyer, *see* Pelfresne v. Village of Williams Bay, 917 F.2d 1017, 1023 (7th Cir.1990). Murray has not even attempted to set out the elements and corresponding evidence necessary to succeed on a claim for age discrimination, see *infra.* Simply put, Murray has offered the Court no evidence or legal argument as to why he is entitled to summary judgment, and his cross-motions for summary judgment are denied.

B. Avon's Summary Judgment Motion

As for Avon's summary judgment motion, Avon argues that Murray has failed to establish a *prima facie* case of age discrimination, and that, even if he had, Murray has put forth no evidence that the legitimate nondiscriminatory explanation given by Avon for failing to hire Murray is pretextual. The Court agrees. Accordingly, and as explained below, Avon's motion is granted.

Because Murray has not provided direct evidence of age discrimination, he must proceed under the familiar burden-shifting framework set forth in McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See* Zaccagnini v. Charles Levy Circulating Co., 338 F.3d 672, 674-75 (7th Cir.2003). To establish a *prima facie* case under the ADEA, Murray must show that (1) he is a member of the protected class (age forty or older); (2) he applied for and was qualified for the position he sought; (3) Avon rejected him; and (4) Avon hired another similarly situated individual for the position who was substantially younger than Murray. *See* id. at 675. If Murray establishes a *prima facie* case, then the burden shifts to Avon "to articulate a legitimate, nondiscriminatory reason for its decision not to rehire him." *Id.* (citing Grayson v. City of Chicago, 317 F.3d 745, 748 (7th Cir.2003)). If Avon asserts a legitimate, nondiscriminatory explanation, the burden returns to Murray "to show that the company's proffered reason is merely a pretext for age discrimination." *Id.*

The Court agrees with Avon that Murray has failed to make out a *prima facie* case of age discrimination, although the Court does not accept each of Avon's arguments in this regard. First, Avon argues that Murray was not qualified for the position that he sought, thus failing to meet the second prong of a *prima facie* case. (D.E. 22 at 3.) The evidence before the Court, however, seems to allow the conclusion that Murray had objectively met the criteria at least to be considered "qualified" to be hired as a Utility Packager because he was a member of the "Skilled" group of temporary employees. (*See* Def. SF ¶ ¶ 9, 12.) *Compare* Bennett v. Roberts, 295 F.3d 687, 696 (7th Cir.2002) (finding that plaintiff failed to establish a *prima facie* case because she failed to put forward specific and actual hiring criteria for the position sought and for which she claimed she was qualified). Avon points to Gulliford's testimony that indicates that other Avon employees were better performers than Murray to show that Murray was not qualified. Although this testimony is significant, as discussed further below, the second prong of the *prima facie* analysis does not require Murray to demonstrate that he was the *most* qualified applicant of the bunch. Rather, the evidence simply must show that he *was* qualified. *Compare* Grayson, 317 F.3d at 749 (last prong of *prima facie* case requires proof that applicant was "as qualified" as those who were promoted in lieu of plaintiff). At least without further evidence from Avon that Murray's performance was "below average"-the other criterion given by Avon that makes temporary workers ineligible for permanent hiring (*see* Def. SF ¶ 9)-the Court construes the record in Murray's favor and finds that Murray was at least minimally qualified for putative consideration for the Utility Packager position. Thus, Murray has met the second element of his *prima facie* case.

**\*5** Avon next argues that Murray has failed to make

Not Reported in F.Supp.2d                                                                                                                    Page 6
Not Reported in F.Supp.2d, 2004 WL 2921867 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

out the fourth prong of his *prima facie* case-*i.e.,* that Avon hired another similarly situated individual for the position who was *substantially younger* than Murray-because Avon hired other applicants who were nearly the same age as Murray. (D.E. 22 at 4.) Despite the Court's earlier ruling, *supra* note 4, that it would not consider the birthdates of the persons Avon claims it hired in lieu of Murray, [FN5] that does not absolve Murray from carrying his burden of establishing through competent evidence that he was passed over in favor of substantially younger candidates. In this regard, the Court finds that Murray has not met this prong of his requisite *prima facie* showing. Murray has failed to present the Court with any evidence that Avon hired persons substantially younger than Murray. Although he objected to the persons offered by Avon as those who filled the positions, Murray does not provide the Court with his evidence as to the persons he believes actually obtained the positions over him or their ages. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This lack of evidence is dispositive, *see* Hottenroth v. Village of Slinger, 388 F.3d 1015, 1027 (7th Cir.2004), and summary judgment is appropriate on Murray's claim.

> FN5. According to this presentation, two of the three individuals hired, Delbert Howard and Andrea Histler, were substantially the same age as Murray. In this regard, Seventh Circuit precedent teaches that generally a person hired in lieu of a plaintiff in an age discrimination case must be at least ten years younger than the plaintiff. *See, e.g.,* Balderston v. Fairbanks Morse Eng. Div. of Coltec Industries, 328 F.3d 309, 322 (7th Cir.2003) ("The Seventh Circuit has defined 'substantially younger' as generally ten years younger.") (citation omitted). Mr. Howard and Ms. Histler were well within this ten-year age span.

The Court also finds that summary judgment is warranted in favor of Avon on alternative and independent grounds. Even if Murray had made out a *prima facie* case, Murray has presented no evidence that the facially nondiscriminatory reason offered for Avon's decision not to hire Murray was a pretext for age discrimination. Avon proffers that the Advisors observed Murray to lack initiative and have poor work habits (Def. SF ¶¶ 19, 21), a legitimate and nondiscriminatory reason for not hiring Murray to be a Utility Packager. [FN6] Murray has not introduced any direct evidence of pretext, so the Court must therefore determine whether Murray has, viewing the evidence in the light most favorable to him, succeeded in showing that Avon's proffered reason is not credible. *See* Wolf v. Buss (America) Inc., 77 F.3d 914, 919 (7th Cir.1996).

> FN6. Although Murray does not raise this evidentiary objection, so it is arguably waived, one might argue that a portion of Avon's evidence concerning the views of some of its decisionmakers about Murray runs afoul of the hearsay rules. Specifically, one might read certain information in the Gulliford affidavit concerning statements made by other fellow decisionmakers (*i.e.,* assertions that they stated that they too believed Murray was not as hardworking or as much of a self-starter as other potential candidates) as running afoul of the hearsay prohibition articulated in Fed.R.Evid. 801-02. Nonetheless, even if the statements of the other decisionmakers recounted in the Gulliford affidavit cannot be considered substantively (*i.e.,* for the purpose of showing that the declarants actually believed that Murray was a poor candidate), they could be considered on the non-hearsay basis of showing their effect on the listener, Gulliford. Such statements to Gulliford about Murray being a sub-par candidate were consistent with Gulliford's own personal views (which are properly supported in the record) and served to confirm Gulliford's assessment that Murray should not be interviewed or hired because he was not a strong candidate for a permanent position going forward. Under any scenario, the only evidence in the record submitted concerning the reason for Murray's non-hiring is consistent with Avon's position that Murray was not hired because of a non-discriminatory reason-*i.e.,* that Avon believed he was not hard-working, at least as compared to other candidates.

In this regard, Seventh Circuit precedent repeatedly instructs that a federal court " 'does not sit as a super-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 2921867 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 7

personnel department that reexamines an entity's business decisions." ' *Balderston,* 328 F.3d at 324 (quoting *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986)). "The only concern in reviewing an employer's reasons for termination is the honesty of the employer's beliefs." *Balderston v. Fairbanks Morse Eng. Div. of Coltec Indus. .,* 328 F.3d 309, 323 (7th Cir.2003); *accord, e.g., Olsen v. Marshall & Ilsley Corp.,* 267 F.3d 597, 602 (7th Cir.2001) ("Our only concern at the pretext stage is whether this defendant honestly remained dissatisfied with its employee's performance."); *id.* ("And without proof of a lie, no inference of a discriminatory motive can be shown."). Such a showing may be made by introducing evidence that demonstrates that (1) the proffered reason is factually baseless; (2) the proffered reason is not the actual motivation for the discharge; or (3) the proffered reason was insufficient to motivate the refusal to hire. *See Wolf,* 77 F.3d at 919. In this regard, an employee's rosy view of his own abilities or his own attractiveness as a putative job candidate is not enough to show that the employer is lying or otherwise not credible when the employer offers a facially unobjectionable reason for hiring someone other than the plaintiff. *See Olsen,* 267 F.3d at 602 (collecting cases). Relatedly, the Seventh Circuit has repeatedly instructed that "it is not enough for a plaintiff to show that his employer's explanation was based on an inaccurate assessment of its employee's performance." *Id.; accord, e.g., Walker v. Glickman,* 241 F.3d 884, 890 (7th Cir.2001) ("[T]he court's role is not to determine whether [the employer's] decision was right, but whether [the employee] presented sufficient evidence that [the employer's] reason was a lie for the action it took."); *Roberts v. Separators, Inc.,* 172 F.3d 448, 453 (7th Cir.1999) ("Where an employer has honestly described the motivation behind its decision, that decision is not a pretext for discrimination just because the plaintiff asserts the defendant's beliefs were inaccurate.").

**\*6** Murray has made none of the showings discussed in caselaw such as *Wolf* in his response to Avon's summary judgment motion. Rather, Murray has merely used his response "brief as a veritable catapult to hurl a jumbled mass of information ... [at] the district court in the hope of avoiding summary judgment." *Greer v. Bd. of Educ. of City of Chicago, Ill.,* 267 F.3d 723, 727 (7th Cir.2001). Simply put, Murray has not put forward, as he must, any evidence to doubt that Avon did not hire him because of its commonsense concern that he was not as hardworking or as much of a self-starter as other readily available and willing candidates for the job.

Thus, summary judgment is appropriate on the alternative and independent ground that Murray has failed to produce evidence that Avon's reason for not hiring him was pretextual.

CONCLUSION

For the reasons stated above, Avon's motion for summary judgment is granted, and Murray's cross-motions for summary judgment are denied.

So ordered.

N.D.Ill.,2004.  
Murray v. Avon Products, Inc.  
Not Reported in F.Supp.2d, 2004 WL 2921867 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 1607924 (Trial Pleading) Answer to Complaint (Jan. 12, 2004)
• 2003 WL 23666982 (Trial Motion, Memorandum and Affidavit) Plaintiff's Second Memorandum at Law (Dec. 22, 2003)
• 2003 WL 23666333 (Trial Pleading) First Amendment to Original Complaint (Dec. 16, 2003)
• 1:03cv07594 (Docket) (Nov. 20, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.