E-FILED
Wednesday, 18 January, 2006  02:02:58 PM
Clerk, U.S. District Court, ILCD

**FILED**

**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CHARLES LEE GREEN** | ) | |
| | ) | JAN 18 2006 |
| **Plaintiff,** | ) | JOHN M. WATERS, Clerk |
| | ) | U.S. DISTRICT COURT |
| | ) | CENTRAL DISTRICT OF ILLINOIS |
| | ) **05-2222** | URBANA, IL |
| | ) | |
| **V.** | ) | |
| | ) | |
| **ILLINOIS POWER COMPANY, Veta Rudolph Lueke,** | ) | |
| **William "Bill" Pray, George Aufmuth, Myron Kumler,** | ) | |
| **Ken Justice, Rod Hilburn, Mike Crandall, Francis Walsh** | ) | |
| **International Brotherhood of Electrical Workers (IBEW)** | ) | |
| **Local 51 And Travelers** | ) | |
| | ) | |
| **Defendants** | ) | |

**The cause of action in this case raises an issue of federal law. Equitable relief sought.**

**EXHIBITS IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE, REQUEST FOR RESTRAINING ORDER AND RESPONSE TO DEFENDANTS ILLINOIS POWER COMPANY, Veta Rudolph Lueke, William "Bill" Pray, George Aufmuth, Myron Kumler, Ken Justice, Rod Hilburn, Mike Crandall, Francis Walsh RESPONSE TO PLAINTIFF'S MOTION TO STRIKE, REQUEST FOR RESTRAINING ORDER AND MOTION FOR SANCTIONS**

Respectfully submitted by,

Plaintiff
Charles Green
Pro se
520 Monterey
Danville, Illinois 61832
217-446-1724
January 17, 2006

# EXHIBIT    1

**Green, Charles L**

**From:**    Walsh II, Francis L
**Sent:**    Tuesday, August 09, 2005 2:58 PM
**To:**    Green, Charles L
**Cc:**    French, Marie J
**Subject:** RE: WORK COMP

Since  you are represented by an attorney, you will need to contact him to discuss pending status.

> -----Original Message-----
> **From:** Green, Charles L
> **Sent:** Tuesday, August 09, 2005 1:26 PM
> **To:** Walsh II, Francis L
> **Subject:** WORK COMP
>
> Mr. Walsh,
>
> What is the status of my workers compensation claims (all claims)?
>
>
> Thank you
>
> Charles Green

# Incident Analysis Form

Travelers Claim Number: _AFU7030_

Send completed form to: Manager of Health, Safety, and Training (Mike Crandall, F-25 )

Location: _Champaign_

Employee: _Charles Lee Green_
Title: _Substation Electrician_  Dept./RA: _2940_

On  (date) _5-27-04_  the local area Safety Committee conducted an analysis of the incident reported.

Those present at analysis were: _Bill Pray, Patt Easton, Charles Green_

(The minimum present should be the injured if possible, at least one safety committee representative, and the injured employee's supervisor.)

Date of the Incident: _5-27-04_    Time of Day _9:00 Am_

Day of Week  S / M / T / W /(T)/ F / S    Did the incident occur during overtime?  Yes (No)

Number of Hours Worked: _N/A_    Conditions: (Routine / Emergency / Indoors / Outdoors

Weather: (Clear / Rain / Snow / Ice / Mud / Cloudy / Windy

Were applicable, did the employee ask for help?  Yes  No  N/A
_Requested for truck to be seviced_

## WHO

Who was present and witnessed the incident?  _N/A_

Who else has knowledge of this incident?  _N/A_

Was tailgate safety meeting conducted? ☐ Yes ☐ No ☒ N/A
  If so, was meeting documented? ☐ Yes ☐ No
  Was the possible hazard identified during meeting? ☐ Yes ☐ No

What, if any, equipment or people were available to avoid the accident? (I.e., Was PPE used? Were the proper tools used? Were the proper techniques used?)  _Truck needs serviced_

39

Revised 12/22/03

**WHERE**
Location of incident    *Champaign / Danville*

Location of others present during incident    *N/A*

**WHAT**
What happened (be detailed)
(chronological history of incident)    approx 4 years ago - Charles had to drive from Danville to Champaign every day - adding many miles to truck - (100 miles round trip.) Causing Condition of truck to deteriate. To keep truck on the road - he must keep a very tight grip on the steering wheel causing pain in hand + fingers - also pain in left right arm also. When he wakes up in the morning fingers are curled up. as if he were gripping the steering wheel. Truck has over 200,000 miles .
Charles has difficulty picking up and holding on to things

40

Revised 12/22/03

2:05-cv-02222-MPM      # 57-2      Page 6 of 63

## EXPLANATION

The physical acts that contributed to the incident
(i.e., pulling, tugging, slipping, hit by, etc.) _Extended + repetitive_
_gripping of steering wheel._

Conditions that may have directly contributed to the incident.
(i.e., weather, location, ground – wet, dry, grass, dirt, rock, etc.-,
equipment.) _Vehicle is_
_harder to steer in bad weather, as well as in good_
_conditions._

What will prevent a recurrence of the incident. (i.e., proper use of PPE,
proper use of equipment, design, precautions taken for adverse conditions,
better communications, additional training, proper work practices, etc.) _Better truck_
_maintenance or new truck._

_ACTION TAKEN/NEEDED: get truck in for service. –_
_look into getting Charles a different vehicle to drive._
_Charles is seeking medical attention for pain in hands +_
_fingers. (Patty Easton, co-chair of Champaign Safety) took_
_truck for a drive - it does vibrate a lot even going slow -_
_it needs fixed or replaced._

### FOLLOW-UP

What steps have been taken?
(i.e., cover at safety meeting, get proper
equipment, get equipment repaired, get proper
PPE, carry sting kit.)                    Action Date:_____

_FOLLOW UP ACTION ITEMS :_

41

Revised 12/22/03

FORM 45: **Employers First Report of Injury or Illness**                    PLEASE TYPE OR PRINT

Filing of this report does not affect your liability under the Workers' Compensation Act and is not incriminatory in any sense.

| A | **\*45** ILLINOIS UNEMPLOYMENT COMPENSATION NUMBER | 60020 | DATE OF REPORT | MONTH 5 DAY 27 YEAR 04 | CASE OR FILE NUMBER |
|---|---|---|---|---|---|

| B | EMPLOYER'S NAME Illinois Power Company | | Is this a lost workday case? ☐ Yes ☐ No |
|---|---|---|---|

| C | DOING BUSINESS UNDER THE NAME OF Illinois Power Company | CITY, STATE | ZIP CODE |
|---|---|---|---|

| D | MAIL ADDRESS 500 S. 27th St., Decatur, Il. 62525 | CITY, STATE | ZIP CODE |
|---|---|---|---|

| E | EMPLOYER LOCATION IF DIFFERENT FROM MAIL ADDRESS | | |
|---|---|---|---|

| F | NATURE OF BUSINESS OR SERVICE Electric & Gas Utility | SIC CODE 4931 | TOTAL NUMBER OF EMPLOYEES AT THE LOCATION WHERE ILLNESS OR INJURY OCCURRED 4,000 |
|---|---|---|---|

| G | NAME OF WORKERS' COMP. INSURANCE CARRIER N/A | POLICY NUMBER N/A | SELF INSURED YES ☒ ☐ NO | COUNTY WHERE INJURY OCCURRED Champaign / Vermillion |
|---|---|---|---|---|

| H | EMPLOYEE'S NAME (LAST, FIRST, MIDDLE) Green Charles Lee | SOCIAL SECURITY NUMBER 4168 8 3769 |
|---|---|---|

| I | HOME ADDRESS 520 Monterey | CITY, STATE Danville Il | ZIP CODE 61832 |
|---|---|---|---|

| J | MALE ☑ FEMALE ☐ | MARRIED ☑ SINGLE ☐ WIDOW(ER) ☐ DIVORCED ☐ | BIRTH DATE MONTH 10 DAY 19 YEAR 58 | NUMBER OF DEPENDENT CHILDREN UNDER 18 AT TIME OF INJURY OR ILLNESS 3 |
|---|---|---|---|

| K | DATE AND TIME OF THE INJURY OR EXPOSURE Daily 7-3 '85 MONTH/DAY/YEAR ☐ a.m. ☐ p.m. | EMPLOYEE'S AVERAGE WEEKLY EARNINGS | LAST DAY EMPLOYEE WORKED MONTH 5 DAY 27 YEAR 04 |
|---|---|---|

| L | JOB TITLE OR OCCUPATION Substation Eletrician | DEPARTMENT NORMALLY ASSIGNED Substation |
|---|---|---|

| M | ADDRESS OF LOCATION WHERE INJURY OR EXPOSURE OCCURRED | CITY, STATE Illinois | ZIP CODE |
|---|---|---|---|

| N | DID EMPLOYEE DIE AS A RESULT OF THE INJURY OR ILLNESS? YES ☐ NO ☐ | IF EMPLOYEE DIED AS A RESULT OF THE INJURY OR ILLNESS, GIVE DATE OF DEATH | MONTH DAY YEAR |
|---|---|---|

| O | WAS THE INJURY OR EXPOSURE ON THE EMPLOYER'S PREMISES? ☒ YES ☐ NO | DID THIS INCIDENT RESULT IN: ☒ ☐ | OCCUPATIONAL INJURY OCCUPATIONAL DISEASE | Was Employee given Industrial Commission Handbook? YES ☐ NO ☑ |
|---|---|---|---|

| P | NATURE OF THE INJURY | Pain and Stiffness in Hand + Fingers; Right Forearm |
|---|---|

| Q | PART OF THE BODY AFFECTED (BE SPECIFIC) | Left and Right Hand and Fingers; Right Forearm |
|---|---|

| R | WHAT TASK WAS EMPLOYEE PERFORMING WHEN ILLNESS OR INJURY OCCURRED? | Driving Truck # 31010 |
|---|---|

| S | OBJECT OR SUBSTANCE RESPONSIBLE FOR INJURY OR ILLNESS (SOURCE) | Poor truck maintenance. Steering wheel, Wheels Forced excessive highway travel, Truck Frame |
|---|---|

| T | HOW DID ACCIDENT OR ILLNESS OCCUR (TYPE)? | Driving Truck # 31010. Very difficult to steer, vibrate, especially when turning alway & have to too strong grip on steering wheel Resulting in pain and stiffness in hands and Fingers |
|---|---|

| U | WHAT HAZARDOUS CONDITIONS, METHODS OR LACK OF PROTECTIVE DEVICES CONTRIBUTED? | Age of Truck over 20 miles, truck maintenance wheel alignment wheel balance, vibrating Frame. Vibrating steering wheel Difficulty in steering, excessive highway travel Forced by management |
|---|---|

| V | WHAT UNSAFE ACT BY A PERSON CAUSED OR CONTRIBUTED TO THE INJURY OR ILLNESS? | Poor truck maintenance, over extend in life of track excessive Highway Travel forced by management |
|---|---|

| W | HAVE MEDICAL SERVICES BEEN RENDERED TO THE EMPLOYEE? Scheduled YES ☐ NO ☑ | IS OR HAS THE EMPLOYEE BEEN HOSPITALIZED? YES ☐ NO ☑ |
|---|---|

| X | NAME AND ADDRESS OF PHYSICIAN | CITY, STATE | ZIP CODE |
|---|---|---|

| Y | NAME AND ADDRESS OF HOSPITAL | CITY, STATE | ZIP CODE |
|---|---|---|

| Z | REPORT PREPARED BY: (NAME—PRINT OR TYPE) Charles Green | SIGNATURE CLG | TITLE AND TELEPHONE NUMBER Admin.Claims 217/424-7082 |
|---|---|---|

ACCIDENT REPORTING DEPT., ILLINOIS INDUSTRIAL COMMISSION, 160 North LaSalle Street, Chicago, Illinois 60601
WITHOUT WRITTEN APPROVAL OF COMMISSION, THIS FORM MAY NOT BE REPRODUCED                    (Rev. 1-81)



# ILLINOIS POWER

**Part of the DYNEGY Performance Team**

| | |
|---|---|
| Procedure Nbr.: | 05-1 |
| Exhibit/Attachment: | |
| Rev Nbr.: | |
| Rev Date: | 06/22/98 |

# V. YOUR RESPONSIBILITY TO COMPLY

## V. YOUR RESPONSIBILITY TO COMPLY

**The principles and policies set forth in the Work Environment Policies and Behavior section represent the fundamental ethical standards of this Company and govern all Illinova employees. It is therefore crucial that all employees be familiar with these sections so they can avoid unacceptable actions and recognize them if they do occur. Failure to comply with the guidance set forth in this handbook may result in serious disciplinary action, including termination of employment. Ignorance of intent will not excuse inappropriate behavior.**

**It is not possible to specify in this handbook every circumstance or situation that may arise. However, if an action violates the intent of these policies, guidelines, rules or if common sense indicates that an action is inappropriate—even if not specifically prohibited here—discipline may result. Employees are expected to act with integrity in all circumstances, whether or not those circumstances are specifically addressed in the handbook.**

..........................

Category:  Human Resources - Personnel, Policies & Guidelines
SubCategory:Section  2 - Employee Handbook



# *One* DYNEGY

*ETHICS AND COMPLIANCE*



## *Did you know...*

## ...Dynegy has a "no retaliation" policy for whistleblowers?

A whistleblower is an employee who steps forward to report suspected illegal or unethical activity by an employer or co-worker to superiors, other members of management, outside law enforcement, or other federal or state compliance agencies.

It is Dynegy's policy to ensure that no retaliation occurs against any employee who, in good faith, raises an ethical concern or reports illegal activity. This means Dynegy will not demote, terminate, or otherwise take adverse employment action against an employee for calling attention to suspected unethical or illegal acts.

In fact, as prescribed by the Sarbanes-Oxley Act, there is criminal liability for companies or individuals who retaliate against or otherwise interfere with the employment of individuals who provide truthful information to law enforcement officials regarding the actual or potential commission of any federal offense. Companies and individuals can be prosecuted and are subject to imprisonment for a maximum of ten years and fines of up to $250,000 for individuals and $500,000 for corporations.

Dynegy has established a number of means by which employees may report alleged violations, including:

- Call the Integrity Helpline at 866-YOUR-DYN (866-968-7396)
- Call the Ethics and Compliance Office at 713-767-0000
- Email the Ethics and Compliance Office at ethics@dynegy.com
- Contact any of the following departments: Human Resources, Legal, or Internal Audit

Should you have any questions, please contact the Ethics and Compliance Office by calling 713-767-0000 or by emailing ethics@dynegy.com.

"Did you know....." is sponsored by the Ethics and Compliance Office. Suggestions for future "Did you know....." communications should be emailed to the Ethics and Compliance Office at ethics@dynegy.com.

**Charles Green**

06/22/2004 11:32 AM

To: William Pray/DEC/Dynegy@IP, Don Waddell/DEC/Dynegy@IP, Michael Crandall/DEC/Dynegy@IP, Barb Beck/DEC/Dynegy@IP, David St. James/DEC/Dynegy@IP, Mike Booth/DEC/Dynegy@IP, Carl Spence/DEC/Dynegy@IP

cc:

Subject: 830 conference call followup

On 6-22-04 at approximately 8:30 am I met with Don Wadell and Bill Pray, Mike crandall, Barb Beck,David St. James, Mike Booth and possibly Carl Spence (who was arriving late) via conference call per Bill's June 21, 2004 11:30am request. We met at the Illinois power Company champaign/urbana service center.

The topic for discussion was my injury to my hands. Crandall claims that hewanted to know what IP could do and what I could to iliminate the problem. . Crandall assured me that the information gathered at the meeting was to get to the root cause of the injury, and find ways to eliminate the problem so that no one else would have to go through it. No other reason was given..

I described to everyone my situation as it is spelled out on my accident reports. I included I was being forced to drive excessive miles in a truck with problems is a factor.

It was recommended that I see a company sponsored doctor for therapy and treatment.

,Bill stated that the truck has been worked on and that various parts had been replaced. I was asked if Dr dethmers recommended exercises for my hand, I replied no. I was asked if I would see a company doctor sponsored by illinois power I said yes i will see anyone who could make my hand better. laughing crandall asked Bill if he heard my reply as if there is some other motive for me seeing their doctor. Bill stated that I had been given a different truck to drive while the truck was being repaired.

we discussed that the truck had been in for maintenance several times but the problem still exist.

Crandal asked if there were any more Questions. Don wanted to know if I would drive the truck to make sure it was ok if not drive the truck that i was driving until adequate maintenance is done and that although the temporary truck tag expires it can be brought out of retirement if the other truck is still faulty.

my response to crandall's questions was, that they should stop forcing people to drive excessive miles would eliminate some of the problems. at this point you could hear a pin drop. then, Cranday acted as if he did not hear the question so i repeated it . Don stated good poing no one else would reply. I repeated it again since crandall sudenlly develop hearing problems. My response was again ignored by every one.

and the meeting went on. I was told to drive the truck and report back Bill/St. James is going to check into the company sponsored doctor.

crandal asked if there are any omre questions and comments. I replied that I had some but they are not going to respond to them.

meeting was ajourned.


If you feel that I have left anything out or this report is in error please feel free to make corrections. Those of you who do not know I am represented by an attorney in this matter. Yyou may contact him at the following address. He is aware that we had this meeting . I will also notify my attorney of the conclusion of this meeting.

Marvin Gerstein
Attorney at Law
803 south Grove
Urbana Illinois 61801

# EXHIBIT   2

141-11 (10/94)

**FORM 45: Employers First Report of Injury or Illness**    PLEASE TYPE OR PRINT

Filing of this report does not affect your liability under the Workers' Compensation Act and is not incriminatory in any sense.

| | | | | | |
|---|---|---|---|---|---|
| **A** | **\*45** | ILLINOIS UNEMPLOYMENT COMPENSATION NUMBER  60020 | DATE OF REPORT  MONTH 5 DAY 27 YEAR 04 | CASE OR FILE NUMBER | |

**B** EMPLOYER'S NAME  Illinois Power Company    Is this a lost workday case? ☐Yes ☐No

**C** DOING BUSINESS UNDER THE NAME OF  Illinois Power Company    CITY, STATE    ZIP CODE

**D** MAIL ADDRESS  500 S. 27th St., Decatur, Il. 62525    CITY, STATE    ZIP CODE

**E** EMPLOYER LOCATION IF DIFFERENT FROM MAIL ADDRESS

**F** NATURE OF BUSINESS OR SERVICE  Electric & Gas Utility    SIC CODE 4931    TOTAL NUMBER OF EMPLOYEES AT THE LOCATION WHERE ILLNESS OR INJURY OCCURRED  4,000

**G** NAME OF EMPLOYERS' COMP. INSURANCE CARRIER  N/A    POLICY NUMBER  N/A    SELF INSURED YES ☒ ☐NO    COUNTY WHERE INJURY OCCURRED  Champaign/Vermillon

**H** EMPLOYEE'S NAME (LAST, FIRST, MIDDLE)  Green  Charles  Lee    SOCIAL SECURITY NUMBER 416 88 3769

**I** HOME ADDRESS  520 Monterey    CITY, STATE Danville Il    ZIP CODE 61832

**J** MALE ☒ FEMALE ☐ MARRIED ☒ SINGLE/ WIDOW(ER) ☐ DIVORCED ☐    BIRTH DATE  MONTH 10 DAY 19 YEAR 58    NUMBER OF DEPENDENT CHILDREN UNDER 18 AT TIME OF INJURY OR ILLNESS 3

**K** DATE AND TIME OF THE INJURY OR EXPOSURE  Daily 7-3 MONTH/DAY/YEAR 05 ☐a.m. ☐p.m.    EMPLOYEE'S AVERAGE WEEKLY EARNINGS    LAST DAY EMPLOYEE WORKED  MONTH 1 DAY 27 YEAR 04

**L** JOB TITLE OR OCCUPATION  Substation Eletrician    DEPARTMENT NORMALLY ASSIGNED  Substation

**M** ADDRESS OF LOCATION WHERE INJURY OR EXPOSURE OCCURRED    CITY, STATE Illinois    ZIP CODE

**N** DID EMPLOYEE DIE AS A RESULT OF THE INJURY OR ILLNESS? YES ☐ NO ☐    IF EMPLOYEE DIED AS A RESULT OF THE INJURY OR ILLNESS, GIVE DATE OF DEATH    MONTH DAY YEAR

**O** WAS THE INJURY OR EXPOSURE ON THE EMPLOYER'S PREMISES? ☒YES ☐NO    DID THIS INCIDENT RESULT IN: OCCUPATIONAL INJURY ☒  OCCUPATIONAL DISEASE ☐    Was Employee given Industrial Commission Handbook? YES ☐ NO ☒

**P** NATURE OF THE INJURY  Pain and Stiffness in Hand + Fingers; Right Forearm

**Q** PART OF THE BODY AFFECTED (BE SPECIFIC)  Left and Right Hand and Fingers; Right Forearm

**R** WHAT TASK WAS EMPLOYEE PERFORMING WHEN ILLNESS OR INJURY OCCURRED?  Driving Truck # 31010

**S** OBJECT OR SUBSTANCE RESPONSIBLE FOR INJURY OR ILLNESS (SOURCE)  Poor Truck maintenance. [?] - Steering Wheel, Wheels Forced excessive highway travel, Truck Frame

**T** HOW DID ACCIDENT OR ILLNESS OCCUR (TYPE)?  Driving Truck # 31010. Very difficult to Steer, Vibrate, especially when turning always have to keep grip on Steering wheel Resulting in pain and stiffness in hands and Fingers

**U** WHAT HAZARDOUS CONDITIONS, METHODS OR LACK OF PROTECTIVE DEVICES CONTRIBUTED?  Age of Truck over 200,000 miles, Truck maintenance wheel/alignment wheel balance, vibrating Frame. Vibration steering wheel Difficulty in steering, excessive highway travel Forced by management

**V** WHAT UNSAFE ACT BY A PERSON CAUSED OR CONTRIBUTED TO THE INJURY OR ILLNESS?  Poor Truck maintenance, over extend in Life of Truck excessive Highway Travel Forced by management

**W** HAVE MEDICAL SERVICES BEEN RENDERED TO THE EMPLOYEE?  Scheduled YES ☐ NO ☒    IS OR HAS THE EMPLOYEE BEEN HOSPITALIZED?  YES ☐ NO ☒

**X** NAME AND ADDRESS OF PHYSICIAN    CITY, STATE    ZIP CODE

**Y** NAME AND ADDRESS OF HOSPITAL    CITY, STATE    ZIP CODE

**Z** REPORT PREPARED BY: (NAME—PRINT OR TYPE)  Charles Green    SIGNATURE  CLG    TITLE AND TELEPHONE NUMBER  Admin. Claims 217/424-7082

ACCIDENT REPORTING DEPT., ILLINOIS INDUSTRIAL COMMISSION, 160 North LaSalle Street, Chicago, Illinois 60601
WITHOUT WRITTEN APPROVAL OF COMMISSION, THIS FORM MAY NOT BE REPRODUCED    (Rev. 1-81)

EXHIBIT  3

**Green, Charles L**

| | |
|---|---|
| **From:** | IP Training |
| **Sent:** | Tuesday, September 20, 2005 7:32 AM |
| **To:** | Gruenewald, Robert L; Dolin JR, Eldridge L; Green, Charles L; Miller, Chad E |
| **Cc:** | Roth, Robert F; Hughes, William J; Wilson, Daniel L; Wilkins, Tony; Watson, John J; Icenogle, Eric D; Pray, Bill; Swires, Billy A |

**Subject:** Diversity Workshop Enrollment

Good Morning:

I had you registered to attend the Diversity Workshop on 9/13 or 9/14 in Decatur. I did not see your name on the roster. Let me know when you would like to reschedule this mandatory training.  Here is a link to the training schedule:

Diversity Workshop

Bob, Tony, John, Eric, Billy & Dan: The following people did not attend but I do not have a valid email address for them. Please let me know when you would like them to attend.

Easter, Johnie G
Ferguson Jr, Tommy R
Kelley, Donna Ann
Ledbetter, Tim W
Mooney, Kourt
Parsons, Chris L
Pfeifer, Allen D
Pfeifer, Wesley A
Schenkel, Jeffrey Dean
Willman, Scott A

Thank you,

Lisa Menke
Training Administrator
iptraining@ameren.com
314-554-4460

**Charles Green**

07/29/2003 11:23 AM

To: Larry Altenbaumer/DEC/Dynegy@Dynegy
cc: Carl Spence/DEC/Dynegy@Dynegy, Tony
    Wilkins/DEC/Dynegy@Dynegy, Wanda Cruz/DEC/Dynegy@Dynegy
Subject: Re: Communication with Bruce Williamson 📄

Dear Mr. Altenbaumer,

What you state in you email is policy "Dynegy Inc., and all of its subsidiaries and affiliates, including Illinois Power, are committed to providing an equal opportunity work environment and to investigating and responding to any complaints of harassment or discrimination, or any other inappropriate workplace conduct, from an employee. In addition, the Company will not tolerate or condone any retaliation against an employee who brings any complaints or issues forward"

Just because the company responds to an issue does not mean that the proplem has been solved or resolved. As for as retaliation, again policy, This company has ways of getting back at people who file a complaint, you know as well as I do along with everyone else who receives this email. Mr. Williamson will soon find out himself. For example but not limmited to this company wants to punish me for filing a complaint by forcing mefor the last three years to drive back and fourth from danville everyday where 99.993% of my work is located in Danville. The ICC has ordered Illinois Power to place employees in the Danville area to provide better response time. What IP does is places an employee in every department back in the Danville area except Substation. Since I had seniority I would have been that person. IP just had an event where the customers were out for four or five hours to long for that reason, being that I was called out and had to drive over to champaign to get my truck, do other jobs in Champaign before returning to Danville to restore power. Maybe this is what management calls an intelligent business decision or is it ignorance due to tunnel vision of retaliation against me. IP can't hide this type of behavior forever and believe me I will do everything in my power to reveal it especially if it involving me.

You also state "I am aware that all of the issues you listed in your email to Mr. Williamson have been fully investigated and addressed by Illinois Power and are currently the subject of litigation filed by you. " **Do you believe that there is discrimination going on at Illinois Power and that it is being politically covered up by MANAGEMENT, Legal, Unions and other Department and Reperesentatives? Why was each White Employee involved in My complaints promoted subsequent to the complaints? Is this how IP going to continue to cure the problem? This does not do anything for the Minority (black) employee who filed the complaint(s).**

Finally, You also states " If you have any new and additional concerns, other than those asserted in your litigations, please don't hesitate to contact any of the individuals identified in this email, any supervisor or Human Resources representative with whom you feel comfortable, or myself, and the Company will appropriately address them."
**What is appropriate and to benefit whom?**

As you can see I can go on and on. Thanks to all of you for your eyes and ears.

Have a nice day.

C.G.
Larry Altenbaumer

**Larry Altenbaumer**

07/29/2003 08:57 AM

To: Charles Green/DEC/Dynegy@Dynegy
cc: Tony Wilkins/DEC/Dynegy@Dynegy, Wanda
    Cruz/DEC/Dynegy@Dynegy, Carl Spence/DEC/Dynegy@Dynegy
Subject: Communication with Bruce Williamson

Dear Mr. Green:

Thanks for your recent communication to Bruce Williamson. Dynegy Inc., and all of its subsidiaries and

affiliates, including Illinois Power, are committed to providing an equal opportunity work environment and to investigating and responding to any complaints of harassment or discrimination, or any other inappropriate workplace conduct, from an employee. In addition, the Company will not tolerate or condone any retaliation against an employee who brings any complaints or issues forward. Illinois Power has taken a number of steps in recent years to more proactively address issues affecting minority employees. Several individuals within Illinois Power have stepped forward to provide leadership on these issues, including Carl Spence, Tony Wilkins and Wanda Cruz. Any one of these individuals would be happy to personally discuss with you any concerns you might have related to your employment. I am aware that all of the issues you listed in your email to Mr. Williamson have been fully investigated and addressed by Illinois Power and are currently the subject of litigation filed by you. If you have any new and additional concerns, other than those asserted in your litigations, please don't hesitate to contact any of the individuals identified in this email, any supervisor or Human Resources representative with whom you feel comfortable, or myself, and the Company will appropriately address them.

Sincerely,

Larry Altenbaumer
President, Illinois Power Company

# EXHIBIT   4



# ILLINOIS POWER

**Part of the DYNEGY Performance Team**

Procedure Nbr.:        06- 8
Exhibit/Attachment:
Rev Nbr.:
Rev Date:              06/22/98

Problems on the Job

Problems on the Job

Should you encounter a problem on the job, you should first consult your
immediate supervisor. If you are not comfortable taking it to your supervisor
or if your supervisor is the problem, you should consider other internal
options including higher management, Employee Services, OmegaLine, Audit
and Compliance Services, or your union, if appropriate.

..........................

Category:  Human Resources - Personnel, Policies & Guidelines
SubCategory:Section  2 - Employee Handbook



## ILLINOIS POWER
**Part of the DYNEGY Performance Team**

V. YOUR
RESPONSIBILITY TO
COMPLY

| | |
|---|---|
| Procedure Nbr.: | 05-1 |
| Exhibit/Attachment: | |
| Rev Nbr.: | |
| Rev Date: | 06/22/98 |

## V. YOUR RESPONSIBILITY TO COMPLY

**The principles and policies set forth in the Work Environment Policies and Behavior section represent the fundamental ethical standards of this Company and govern all Illinova employees. It is therefore crucial that all employees be familiar with these sections so they can avoid unacceptable actions and recognize them if they do occur. Failure to comply with the guidance set forth in this handbook may result in serious disciplinary action, including termination of employment. Ignorance of intent will not excuse inappropriate behavior.**

**It is not possible to specify in this handbook every circumstance or situation that may arise. However, if an action violates the intent of these policies, guidelines, rules or if common sense indicates that an action is inappropriate—even if not specifically prohibited here—discipline may result. Employees are expected to act with integrity in all circumstances, whether or not those circumstances are specifically addressed in the handbook.**

...........................

Category:  Human Resources - Personnel, Policies & Guidelines
SubCategory: Section  2 - Employee Handbook



## *One* DYNEGY

*ETHICS AND COMPLIANCE*



## *Did you know...*

### ...Dynegy has a "no retaliation" policy for whistleblowers?

A whistleblower is an employee who steps forward to report suspected illegal or unethical activity by an employer or co-worker to superiors, other members of management, outside law enforcement, or other federal or state compliance agencies.

It is Dynegy's policy to ensure that no retaliation occurs against any employee who, in good faith, raises an ethical concern or reports illegal activity. This means Dynegy will not demote, terminate, or otherwise take adverse employment action against an employee for calling attention to suspected unethical or illegal acts.

In fact, as prescribed by the Sarbanes-Oxley Act, there is criminal liability for companies or individuals who retaliate against or otherwise interfere with the employment of individuals who provide truthful information to law enforcement officials regarding the actual or potential commission of any federal offense. Companies and individuals can be prosecuted and are subject to imprisonment for a maximum of ten years and fines of up to $250,000 for individuals and $500,000 for corporations.

Dynegy has established a number of means by which employees may report alleged violations, including:

- Call the Integrity Helpline at 866-YOUR-DYN (866-968-7396)
- Call the Ethics and Compliance Office at 713-767-0000
- Email the Ethics and Compliance Office at ethics@dynegy.com
- Contact any of the following departments: Human Resources, Legal, or Internal Audit

Should you have any questions, please contact the Ethics and Compliance Office by calling 713-767-0000 or by emailing ethics@dynegy.com.

"Did you know....." is sponsored by the Ethics and Compliance Office. Suggestions for future "Did you know....." communications should be emailed to the Ethics and Compliance Office at ethics@dynegy.com.

**Charles Green**

06/22/2004 11:32 AM

To: William Pray/DEC/Dynegy@IP, Don Waddell/DEC/Dynegy@IP, Michael Crandall/DEC/Dynegy@IP, Barb Beck/DEC/Dynegy@IP, David St. James/DEC/Dynegy@IP, Mike Booth/DEC/Dynegy@IP, Carl Spence/DEC/Dynegy@IP

cc:

Subject: 830 conference call followup

On 6-22-04 at approximately 8:30 am I met with Don Wadell and Bill Pray, Mike crandall, Barb Beck,David St. James, Mike Booth and possibly Carl Spence (who was arriving late) via conference call per Bill's June 21, 2004 11:30am request. We met at the Illinois power Company champaign/urbana service center.

The topic for discussion was my injury to my hands. Crandall claims that hewanted to know what IP could do and what I could to iliminate the problem. . Crandall assured me that the information gathered at the meeting was to get to the root cause of the injury, and find ways to eliminate the problem so that no one else would have to go through it. No other reason was given..

I described to everyone my situation as it is spelled out on my accident reports. I incjuded I was being forced to drive excessive miles in a truck with problems is a factor.

It was recommended that I see a company sponsored doctor for therapy and treatment.

,Bill stated that the truck has been worked on and that various parts had been replaced. I was asked if Dr dethmers recommended exercises for my hand, I replied no. I was asked if I would see a company doctor sponsored by illinois power I said yes i will see anyone who could make my hand better. laughing crandall asked Bill if he heard my reply as if there is some other motive for me seeing their doctor. Bill stated that I had been given a different truck to drive while the truck was being repaired.

we discussed that the truck had been in for maintenance several times but the problem still exist.

Crandal asked if there were any more Questions. Don wanted to know if I would drive the truck to make sure it was ok if not drive the truck that i was driving until adequate maintenance is done and that although the temporary truck tag expires it can be brought out of retirement if the other truck is still faulty.

my response to crandall's questions was, that they should stop forcing people to drive excessive miles would eliminate some of the problems. at this point you could hear a pin drop. then, Cranday acted as if he did not hear the question so i repeated it . Don stated good poing no one else would reply. I repeated it again since crandall sudenlly develop hearing problems. My response was again ignored by every one.

and the meeting went on. I was told to drive the truck and report back Bill/St. James is going to check into the company sponsored doctor.

crandal asked if there are any omre questions and comments. I replied that I had some but they are not going to respond to them.

meeting was ajourned.

If you feel that I have left anything out or this report is in error please feel free to make corrections. Those of you who do not know I am represented by an attorney in this matter. Yyou may contact him at the following address. He is aware that we had this meeting . I will also notify my attorney of the conclusion of this meeting.

Marvin Gerstein
Attorney at Law
803 south Grove
Urbana Illinois 61801

# EXHIBIT 

**Charles Green**

06/14/2004 10:37 AM

To: Shawn Schukar/DEC/Dynegy@IP, William Pray/DEC/Dynegy@IP
cc:
Subject: follow up

On 6-14-04 at approximately 8:00am I met with Shawn Schukar and Bill Pray per his 7:15am request. We met at the Illinois power Company voorhees service center.

The topic for discussion was my injury to my hands. Shawn claims that hewanted to know what IP could do and what I could to iliminate the problem. I informed shawn and Bill at this time that i am represented by an attomey and I feel that he should be present. Shawn assured me that the information gathered at the meeting was to get to the root cause of the injury, and find ways to eliminate the problem.

I described to bill and shawn my situation as it is spelled out on my accident reports. I included I was being forced to drive excessive miles in a truck with problems is a factor. Shawn stated that the company makes decisions based on needs of service. I replied, if it was needs of service I should not have been forced to drive from danvile to champaign especially when i work in danville and i live in danville.

Shawn stated that he was unaware of the circumstances surrounding the forced driving and etc. Therefore it was left out of his final report to resolve my injury problem. I reminded them that if they are trying to correct the problem then the forced driving is an issue. He, Shawn apparently dissagreed and excluded the information from his report.

I noted that the company shopuild not discriminate when making their decisions. shawn and bill recommended that I see some company doctor for therapy, a new and wider stering cover was brought up, truck maintenance, new truck, and exercise hand. I was asked if I would see a doct I said yes i will see anyone who could make my hand better.

we discussed that the truck had been in for maintenance several times but the problem still exist.

I suggested that i stop driving the truck shawn feelt that that was not a wise decision. I again reminded shawn and bill that forcing people to drive excessive miles is an issue and should be addressed so that noone else will have to go through it. That topic was still irrelevent and or unimportant to shawn. I told Shawn that he should not pick and choose what he is going to put in his report.

If you feel that I have left anything out or this report is in error please feel free to make corrections. In the future if there are any questions regarding any injury claim that i have please contact my attorney at the address below. My attorney will advise me on what i should do. I will also notify my attorney of this meeting.

Marvin Gerstein
Attorney at Law
803 south Grove
Urbana Illinois 61801
217-367-8734

thank you

Charles Green

# EXHIBIT   6

**Bruce A Williamson**

06/30/2003 12:45 PM

To: Charles Green/DEC/Dynegy@Dynegy
cc:
Subject: Re: concerns🗎

Charles,

I would like to talk to you directly. I have tried a number I got from my secretary (217-383-7251?) but I get a voice mail for some one named "Bill". Can you plese call me at either my office (713-767-0910) or if you perhaps get this late or would prefer to talk after hours, call me on my personal cell phone which is 713-962-9910. Alternatively, if you are on e-mail and can give me a good phone number to try you at just respond to this e-mail and I will call you.

Other than to ask my assistant (who has been with me for years) for your phone number I have not spoken to anyone about your note, nor will I until you and I can talk.

I taken the rules of the road I laid out very seriously and will not tolerate any racial discrimination. I appreciate your note and look forward to hearing from you.

Bruce Williamson


Charles Green

**Charles Green**

06/30/2003 06:33 AM

To: Bruce A Williamson/HOU/Dynegy@Dynegy
cc:
Subject: concerns

Bruce A. Williamson
President & CEO

My name is Charles Green I am a substation electrician in the Illinois Power Company's Champaign Illinois substation department. According to theValue Creation Project you have stated "As stated in our *One* Dynegy guiding principles, we will be successful when we come to work each day with the goal of maximizing our individual potential and the potential of our company." I understand this to mean that Illinois Power and Dynegy will be governed under the same rules, policies and procedures.

Who will make sure that management at Illinois Power is going to follow the policies and procedures that you at Dynegy has in place , when for example, my experience has shown me that they can't follow their own rules. With out going into detail below is a partial list of issues that I have experienced while working at Illinois Power: being placed in a false light, denied employment opportunities for example but not limited to promotions, transfers, workers compensation, training, I seen violation of seniority system, collective bargaining agreement, cover ups, fraud, false swearing, perjury and the list goes on.

My concern is this I am a black employee over forty and has not been given the opportunities that less qualified white employees have and I need to know from some one if I even have a future at

Illinois Power and/or Dynegy.

I have filed complaints, grievances, and encouraged other Minorities to do the same to end some of this unequal treatment. I feel that for this I have been targeted. It seems that it is ok for Caucasian employees to do the very thing I have done without being targeted. I could go on and on, If you need more details please let me know and I will supply you with them.

I appreciate your input on these issues and concerns.

Thank you

Charles Green

# EXHIBIT    7

**Illinois Power Company**
500 South 27th Street
Decatur, Illinois 62521-2200

June 1, 2004

Charles L. Green
420 Montgomery
Danville, IL 61832

**ILLINOIS POWER**
Part of the DYNEGY Performance Team

RE: Claim AFU7030 D/A: 5/27/04
Short Description: Pain and stiffness in hands, forearms and fingers

Dear Mr. Green:

We at Illinois Power are sorry to learn you may have sustained a work related injury. Please be advised that the administration of our Workers' Compensation claims is being handled by Travelers Insurance. A Travelers claim adjuster may contact you to obtain needed information for the processing of your claim and assist in your successful return to work. Please keep a record of your assigned claim number identified at the top of this letter. Noting this claim number on documents forwarded to Travelers Insurance either by you or your medical provider will help with proper processing. Travelers will be responsible for the medical fees resulting from the care they have *authorized*.

Travelers Insurance claim unit information:    1-800-842-6172  Fax (866)-275-8293
                                               Travelers Insurance
                                               PO BOX 3205
                                               Naperville, IL  60566-3205

To ensure you receive the proper claim benefits, it will be your personal responsibility to ensure bills are forwarded to Travelers and to keep your supervisor and Travelers claim adjuster advised of your work status. If any billing problems arise we would encourage you to contact Travelers first so any problems can be promptly identified and corrected. If you have concerns that arise regarding the handling of your claim you may contact me at (217)-424-7133.

Should there be a time when you are temporarily totally disabled (TTD) or removed from all work duties by your physician due to this work related incident, you are entitled to receive 66 and 2/3rds of your pre-injury average weekly wage in accordance with the Illinois Workers' Compensation Act. In addition to this wage benefit Illinois Power provides a supplemental benefit that allows you to receive an equivalent of your previous weekly base net take home pay. These payments will come in the form of 2 separate checks, one from Travelers and one from Illinois Power.

The TTD benefits you receive from Travelers Insurance is not taxed. Under current law IP is not allowed to deduct anything from this benefit other than law mandated child support payments. Therefore, your supplemental benefits paid by Illinois Power may not be large enough to allow for deductions such as union dues, life insurance or credit union fees. You may be required to make such payments by personal check.

The 401K deduction can only be made against the supplemental income benefit portion. However, if you enrolled in the 'voluntary after tax 401K account' you may make contributions by personal check to that fund. This type of contribution will only defer taxes on the earnings of those funds.

It is the goal of Illinois Power to act along with you to obtain a successful recovery and a prompt, but proper, return to work. We only stand to benefit from your return.

Sincerely,

Francis (Buzz) Walsh
Manager Claims

Charles Green
520 Monterey
Danville, Illinois 61832

June 10, 2004

Travelers
Medical Only Unit
P.O. Box 3205
Naperville Illinois 60566-7205

File Number: 028 CM AFU7030 K

Dear Travelers,

This letter is in response to your May 27, 2004 Letter. I have sought medical attention and missed time from work.

I am being represented by an attorney in this matter and all matters regarding injury claims. If you need any information regarding any of my claims, effective immediately, please contact my attorney listed below. There is no need for you to contact me directly.

Marvin Gerstein
Attorney at Law
803 South Grove
Urbana Illinois 61801
217-367-8734

Sincerely,

Charles Green

# EXHIBIT  8

**Green, Charles L**

| | |
|---|---|
| **From:** | Pray, Bill |
| **Sent:** | Thursday, September 01, 2005 10:10 AM |
| **To:** | Green, Charles L; Hilburn, Rodney B; Toliver, Friedjof Glenn |
| **Subject:** | RE: Fax Received: 1 217 431 8490 [0671] 1 page(s) |

10-4

I'll talk to Dof about it.  Where is the flag in the sub?

-----Original Message-----
From: 1_217_431_8490@illinoispower.com [mailto:1_217_431_8490@illinoispower.com]
Sent: Wednesday, August 31, 2005 11:36 AM
To: Pray, Bill
Subject: Fax Received: 1 217 431 8490 [0671] 1 page(s)


Fax Message Delivery

Date: 11:35:56 AM, Wednesday, August 31, 2005
Job ID: NYLK473916
DID/DTMF: 0671
Elapsed Transmission Time: 0:00:33
Line: 16
Pages: 1
Server: PLZNTPFAX1
Signal Noise: 485
Signal Quality: 90
Signal Speed: 14400
Signal Strength: 320

1

# EXHIBIT    9

PT:  GREEN, CHARLES
H:   63 52 05 8
DOS: 06/18/03

Pt showed up upstairs to check in for his physical therapy treatment
session today saying that his coverage had been denied through worker's
compensation. He said that he was wondering today if he would be able to
come to physical therapy. Through the receptionist I instructed him that
he could continue with physical therapy. He would have to sign a waiver
for the financial charges that may incur today since he has been denied
through worker's compensation. Pt declined this today and left.    I did
leave a voice mail for Barclay Milton regarding this situation because pt
did say he was going to contact an attorney. I likewise faxed progress
reports to Barclay Milton from the visits he has been in physical therapy,
as well as now the three that he has canceled. He does have a recheck
scheduled with her later this week.

Darcee Divan, P.T./dm
Christie Clinic Department of Physical Therapy
D:  06/18/2003 T:  06/20/2003
P#:  412

| Approved:  Darcee Divan, PT | 6/30/2003 11:52:00 AM |

CHRISTIE CLINIC ASSOCIATION
101 West University Avenue
Champaign, IL   61820-3970
Phone: 217-366-1200


Pt: GREEN, CHARLES
H: 63-52-05-8
DOB:   10/19/58
635205



DOS: 5/29/03
MILTON
P#: 431


MRI - LEFT KNEE:
Exam history - knee pain with twisting of knee 1 month ago.

The medial and lateral menisci appear to be intact.   The posterior
cruciate ligament is visualized and appears unremarkable.   The anterior
cruciate ligament is not well seen within the tibial tunnel on the sagittal
views.    The ligament, however, appears to be intact on the axial views.

There is some increased signal within the medial capsular ligament adjacent
to the medial collateral ligament suggesting a strain.     There is no
evidence of ligament disruption.

A popliteal cyst is present.    There is a fairly well circumscribed area
of low signal on the T1 weighted images which appears as high signal on the
T2 weighted images in the lateral femoral condyle.    Similar foci are also
present within the medial femoral condyle.    The findings suggest bone
contusion.    The underlying cartilage appeared to be unremarkable.

CONCLUSION:
Constellation of findings as described above.    The findings suggest a post-
traumatic etiology given the history of twisted knee 1 month ago with
entire knee pain.    There is no definite evidence of meniscal or ligament
tear.    If the patient's symptoms persist or worsen, a repeat examination
is recommended.


SIDNEY P. WALKER, M.D./jkc
Rad #:    441
DT:  5/30/2003

Reviewed:  Barclay Milton, MSN, NP                                        6/2/2003 9:29:55 AM

# EXHIBIT 10

Don Waddell
10/06/2004 02:33 PM

To: Tony Taylor, Craig Curtis, Daniel Wilson, Nancy
Brazas/DEC/Dynegy@IP, Bob Roth, Bob
Weatherford/DEC/Dynegy@IP, Greg Einck, Henry Gay, Friedjof
Tollver/DEC/Dynegy@IP, Dave Smith/DEC/Dynegy@IP, Kent Owens
cc:
Subject: Ergonomics -- Vibration

## Vibration

Although using powered hand tools may help reduce employee exposure to risk factors such as repetition and force, they can expose employees to vibration. Vibration restricts the blood supply to the hands and fingers, which, depending on the vibration level and duration of exposure, can contribute to an injury. Signs and symptoms of vibration-induced injury, such as Reynaud's phenomenon, start with occasional numbness or loss of color in the fingertips. They progress to more frequent and persistent symptoms affecting a larger area of the fingers and resulting in reduction in feeling and manual dexterity.

### Factors that increase the amount of employee exposure to vibration include:

- Bad power tool design - Even new tools can expose employees to excessive vibration if they are not designed with devices that dampen or shield employees from vibration.

- Poor power tool maintenance.

- Old power tools.

### Whole Body Vibration:

Work conditions that involve sitting, standing, or lying on a vibrating surface produce whole-body vibration. Excessive levels and durations of exposure to whole-body vibrations may contribute to back pain and performance problems. The International Standards Organization (ISO) and American Conference of Governmental Industrial Hygienists (ACGIH) have proposed duration limits for vibration levels to reduce these problems. These limits take into account the fact that whole-body vibrations may be transmitted along three different axes corresponding to back-to-chest, right-to-left, and foot-to-head movements and that the body is more tolerant of certain vibration frequencies than others.

### General controls to reduce vibration:

- Use low vibration tools.

- Use vibration dampeners or shields to isolate source of vibration from employee.

- Inspect and maintain power tools regularly.

- Limit the duration of tasks that involve vibration, and rotate tasks.

# EXHIBIT  _11_



**Ergo-Power™**
**Power and Safety in Motion**



# Injury
# Prevention
# Programs

## *WORKSHOP*
## *GUIDE*

Produced and Distributed by
*Business Health Resources*
*Copyright 2002 BHR*

# Ergo-Power™ Workshop Guide

## TABLE OF CONTENTS

Getting the Most from this Workshop Guide ..................................... page 2

The Nature of Cumulative Trauma ...................................................... page 2, 3

Help Yourself Feel Better Everyday? / Self Care ............................. page 4

The Basics of Great Bodymechanics / Ergo-Power™ Postures ....... page 5, 6

Basic Lifts for Home and Work .......................................................... page 7, 8, 9

Additional Stretching Exercises ......................................................... page 10

Strengthening Exercises for the Stomach ......................................... page 11

Strengthening Exercises for the Lower and Upper Back ................. page 12

Strengthening Exercises for the Neck and Shoulders ...................... page 13

Ergo-Power™ for Office Professionals ............................................ pages 14 - 18

Course Critique Form ......................................................................... page 19

---

**Disclaimer and Liability Limitation**

The information provided in this Workshop guide is based on currently accepted orthopedic and medical research and clinical experience. Ergo-Power™, Business Health Resources, and their associates are not responsible for any damages that arise from misuse or improper use of the information contained in this Workshop Guide. This includes failure to screen employees for their ability to participate in the Workshop or in any of the activities described in this Workshop Guide. Each individual assumes all risk from their participation in these activities and is solely responsible for their Fitness to perform any of the activities described in this Guide.

Copyright 2002 **Business Health Resources**
PO Box 700
Babylon, New York 11702
(631) 666-2745
**Ergo-Power.com**

---

DO NOT REPRODUCE

Unauthorized reproduction without written permission from Business Health Resources is Illegal.

## Getting the Most from this Workshop Guide

This Guide is provided as a resource for you to review after attending your Ergo-Power Workshop. Going from a point where you experience discomfort on a regular basis to a point where you feel great most of the time requires a plan and a persosnal commitment to carry out your plan. For most people, making one change alone is not enough to experience maximum improvement in how you feel everyday. The best way to get results is to combine improvements in your bodymechanics at work and home with an overall stretching program. Areas that you have had problems with for a while will probably require strengthening exercise for that area and some other aspect of self care.

Consult with your physician prior to starting any new exercises to be sure they are appropriate for your condition.

## The Nature of Cumulative Trauma

Our bodies are mechanical systems. Use it the way it was designed to be used, and it is strongest and least stressed. When using it in ways it is not designed to work, we increase the stresses and weaken the structures. This leads to small amounts of damge to the muscles, ligaments, joints, and nerves. The amount of damage done at any particular time is usually so small, we call it MICROTRAUMA. With poor working habits however, these tiny bits of damage begin to add up, and significant injury to our tissues occurs slowly over time..

Eventually, after enough damage has occurred, even seemingly innocent tasks can become "the last straw" and result in a severe and disabling injury. **The nature of Cumulative Trauma is that you don't feel it while you are doing it to yourself.**

## Symptoms

Symptoms of Cumulative trauma include:
- Pain and Discomfort
- Stiffness and Soreness
- Numbness or Tingling
- Muscle Weakness and Fatigue

**2**

Copyright 2002 Business Health Resources

## Muscle Changes

Muscles become fatigued when working with stressful postures and techniques. In time, muscle spasms develop, diminishing blood supply to the muscle fibers, weakening them. Muscle spasms allow strains and sprains to occur far more easily, even when doing normal activities. Over the years, as more and more scarring and damage occurs, pain becomes more intense and frequent. Stretching regularly can help to reverse these degenerative changes.



Muscle fibers degenerating and becoming scarred and fibrotic.

## Joint Changes



Stressful bodymechanics can increase the physical loads placed on our muscles and joints as much as 5 to 10 times. These excessive forces cause Microtrauma to the cartilage, joint capsule, and ligaments. Our cartilage weakens, cracks, and thins. In time we begin to experience episodes of inflammation and pain. Strains and sprains occur more easily. Over time, these changes result in degenerative arthritis.

Joint cartilage thins and degenerates, allowing damage to the underlying bone.

## Disc Changes



Healthy Disc

Our spines are the main supportive structures of the body. The discs act as shock absorbers and cushions to protect the vertebrae from excessive compressive loads. Bending and twisting causes the compressive loads to increase dramatically. This overloads the discs. The elastic fibers that strengthen the disc bulge, overstretch and slowly tear. Over time considerable amounts of damage to the walls of the disc results. The disc can slowly bulge, or acutely tear or herniate, putting pressure on the spinal nerves. Disc problems are the number one cause of permanent disability.

Degenerated Disc from using Poor Bodymechanics

Copyright 2002 Business Health Resources

**3**

## Help Yourself Feel Better Everyday

Improvements in Bodymechanics can be made a little at a time if you are not comfortable making a complete change all at once. Pick one or two Ergo-Power™ Principles and focus on following those in your work for the first 3 days. (For example - Face Forward to avoid twisting) Pick 2 or 3 stretches and commit to doing them as a warm up, or as a microbreak to feel better. Every 3 days pick another Ergo-Power™ Principle and another 2 stretches and incorporate them into your routine. The key is to make a plan and stick to it. You are worth the effort !

## Self Care

Simple Self Care techniques can help you to feel better everyday, and prevent serious conditions from developing. Discontinue if swelling, stiffness, or pain increases.

**R.I.C.E**. stands for REST, ICE, COMPRESSION, and ELEVATION, which is the First Aid Formula for strains and sprains. Apply  COLD for 15 to 20 minutes every other hour for 2 to 3 days after an injury to reduce swelling.

**Moist or Dry Heat** applications reduce muscle spasm and mild inflammation associated with chronic conditions. Apply heat for 20 minutes 1 or 2 times daily.

**Massage** reduces muscle spasm, improves circulation, and promotes healing.  Use gentle finger pressure and a skin cream for lubrication.  Rub with gentle circular motions, or move in the direction of the muscle fibers.  NEVER rub directly over boney areas, tendons or nerves.   Discontinue if bruising appears, or pain worsens.

**Stretching and Strengthening** exercises are absolutely necessary to promote healing and regeneration of damaged tissue.  It may not be appropriate for some conditions, or immediately after an acute traumatic injury.  Consult your doctor before beginning.

**You need to see a doctor if:**
- All traumatic joint injuries
- Pain is severe and unrelenting or returns after an initial period of rest
- Pain persissts more than 3 days or an injury doesn't heal after 2 weeks of self care
- Infection is suspected

**4**

Copyright 2002 Business Health Resources

# EXHIBIT  12

**Shawn Schukar**

06/14/2004 11:40 AM

To: Charles Green/DEC/Dynegy@IP
cc: William Pray/DEC/Dynegy@IP, barb_beck@illinoispower.com
Subject: Re: follow up🗋

Charles

I agree with most of what you indicated in your summary. Two points that I would like to clarify.

1. One of the action items was to discuss stretching techniques with a specialist associated with repetitive motion to help with the kind of problem you seem to be having with your hand and see if there was any of these types of opportunities with your situation. This was not a recommendation for physical therapy since this would be the call of your Physician.

2. You referenced several times that I was not concerned with what you considered excessive miles. This is not true. What I indicated that while I was unaware of the decision that resulted in your commute, I indicated that there were several issues that affected when/why an individual would be required to report in a certain location. I also indicated that in the workplace we are exposed to several risk factors and we wanted to understand given the conditions what we could do to reduce the risk of additional injuries. In addition during our conversation Bill explained that you have been in Danville for 9 months based on some changes in business needs. Given the fact that you do not have the commute distance of the past, the issue with the commute does not seem to be something that would need to be addressed further.

  Shawn E Schukar
Senior Vice President Utility Operations
Illinois Power Company
217 424 7075
Charles Green

        **Charles Green**

        06/14/2004 10:37 AM

To: Shawn Schukar/DEC/Dynegy@IP, William Pray/DEC/Dynegy@IP
cc:
Subject: follow up

On 6-14-04 at approximately 8:00am I met with Shawn Schukar and Bill Pray per his 7:15am request. We met at the Illinois power Company voorhees service center.

The topic for discussion was my injury to my hands. Shawn claims that hewanted to know what IP could do and what I could to iliminate the problem. I informed shawn and Bill at this time that i am represented by an attorney and I feel that he should be present. Shawn assured me that the information gathered at the meeting was to get to the root cause of the injury, and find ways to eliminate the problem.

I described to bill and shawn my situation as it is spelled out on my accident reports. I included I was being forced to drive excessive miles in a truck with problems is a factor. Shawn stated that the company makes decisions based on needs of service. I replied, If it was needs of service I should not have been forced to drive from danvile to champaign especially when i work in danville and i live in danville.

Shawn stated that he was unaware of the circumstances surrounding the forced driving and etc. Therefore it was left out of his final report to resolve my injury problem. I reminded them that if they are trying to correct the problem then the forced driving is an issue. He, Shawn apparently dissagreed and excluded the information from his report.

I noted that the company shopuild not discriminate when making their decisions. shawn and bill recommended that i see some company doctor for therapy, a new and wider stering cover was brought up, truck maintenance, new truck, and exercise hand. I was asked if I would see a doct I said yes i will see anyone who could make my hand better.

we discussed that the truck had been in for maintenance several times but the problem still exist.

I suggested that i stop driving the truck shawn feelt that that was not a wise decision. I again reminded shawn and bill that forcing people to drive excessive miles is an issue and should be addressed so that noone else will have to go through it. That topic was still irrelevent and or unimportant to shawn. I told Shawn that he should not pick and choose what he is going to put in his report.

If you feel that I have left anything out or this report is in error please feel free to make corrections. In the future if there are any questions regarding any injury claim that i have please contact my attorney at the address below. My attorney will advise me on what i should do. I will also notify my attorney of this meeting.

Marvin Gerstein
Attorney at Law
803 south Grove
Urbana Illinois 61801
217-367-8734


thank you

Charles Green

# EXHIBIT   13

**Charles Green**

05/26/2004 01:50 PM

To: William Pray/DEC/Dynegy,
cc:
Subject: dr. apppp

bill, As per our conversation. i will bring you a copy of the accident report/workers comp. form. for my hand/knees.

thank you

c.g.

EXHIBIT 

FORM 45: **Employers First Report of Injury or Illness**     PLEASE TYPE OR PRINT

Filing of this report does not affect your liability under the Workers' Compensation Act and is not incriminatory in any sense.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **A** | *45 | ILLINOIS UNEMPLOYMENT COMPENSATION NUMBER | 60020 | DATE OF REPORT | MONTH 5 DAY 27 YEAR 04 | CASE OR FILE NUMBER | AFU 7030 |

| | | |
|---|---|---|
| **B** | EMPLOYER'S NAME Illinois Power Company | Is this a lost workday case? ☐ Yes ☐ No |

| | | | |
|---|---|---|---|
| **C** | DOING BUSINESS UNDER THE NAME OF Illinois Power Company | CITY, STATE | ZIP CODE |

| | | | |
|---|---|---|---|
| **D** | MAIL ADDRESS 500 S. 27th St., Decatur, Il. 62525 | CITY, STATE | ZIP CODE |

| | |
|---|---|
| **E** | EMPLOYER LOCATION IF DIFFERENT FROM MAIL ADDRESS |

| | | | | |
|---|---|---|---|---|
| **F** | NATURE OF BUSINESS OR SERVICE Electric & Gas Utility | SIC CODE 4931 | TOTAL NUMBER OF EMPLOYEES AT THE LOCATION WHERE ILLNESS OR INJURY OCCURRED | 4,000 |

| | | | | | |
|---|---|---|---|---|---|
| **G** | NAME OF WORKERS' COMP. INSURANCE CARRIER N/A | POLICY NUMBER N/A | SELF INSURED YES ☒ ☐ No | COUNTY WHERE INJURY OCCURRED Champaign / Vermillon | |

| | | | |
|---|---|---|---|
| **H** | EMPLOYEE'S NAME (LAST, FIRST, MIDDLE) Green Charles Lee | SOCIAL SECURITY NUMBER | 416 88 3769 |

| | | | |
|---|---|---|---|
| **I** | HOME ADDRESS 520 Monterey | CITY, STATE Danville Il | ZIP CODE 61832 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **J** | MALE ☒ FEMALE ☐ | MARRIED ☒ SINGLE/ ☐ WIDOW(ER) ☐ DIVORCED ☐ | BIRTH DATE | MONTH 10 DAY 19 YEAR 58 | NUMBER OF DEPENDENT CHILDREN UNDER 18 AT TIME OF INJURY OR ILLNESS | 3 |

| | | | | |
|---|---|---|---|---|
| **K** | DATE AND TIME OF THE INJURY OR EXPOSURE Daily 7-3:15 MONTH DAY YEAR ☐ a.m. ☐ p.m. | EMPLOYEE'S AVERAGE WEEKLY EARNINGS | | LAST DAY EMPLOYEE WORKED MONTH 1 DAY 27 YEAR 04 |

| | | | |
|---|---|---|---|
| **L** | JOB TITLE OR OCCUPATION Substation Electrician | 29.35/hr. | DEPARTMENT NORMALLY ASSIGNED Substation |

| | | | |
|---|---|---|---|
| **M** | ADDRESS OF LOCATION WHERE INJURY OR EXPOSURE OCCURRED | CITY, STATE Illinois | ZIP CODE |

| | | | |
|---|---|---|---|
| **N** | DID EMPLOYEE DIE AS A RESULT OF THE INJURY OR ILLNESS? YES ☐ NO ☐ | IF EMPLOYEE DIED AS A RESULT OF THE INJURY OR ILLNESS, GIVE DATE OF DEATH | MONTH DAY YEAR |

| | | | | |
|---|---|---|---|---|
| **O** | WAS THE INJURY OR EXPOSURE ON THE EMPLOYER'S PREMISES? ☒ YES ☐ NO | DID THIS INCIDENT RESULT IN: ☒ OCCUPATIONAL INJURY ☐ OCCUPATIONAL DISEASE | Was Employee given Industrial Commission Handbook? | YES ☐ NO ☑ |

| | | |
|---|---|---|
| **P** | NATURE OF THE INJURY | Pain and Stiffness in Hand + Fingers; Right Forearm |

| | | |
|---|---|---|
| **Q** | PART OF THE BODY AFFECTED (BE SPECIFIC) | Left and Right Hand and Fingers; Right Forearm |

| | | |
|---|---|---|
| **R** | WHAT TASK WAS EMPLOYEE PERFORMING WHEN ILLNESS OR INJURY OCCURRED? | Driving Truck # 31010 |

| | | |
|---|---|---|
| **S** | OBJECT OR SUBSTANCE RESPONSIBLE FOR INJURY OR ILLNESS (SOURCE) | Poor Truck maintenance. ☒ - Steering Wheel/Wheels Forced excessive highway travel. Truck Frame |

| | | |
|---|---|---|
| **T** | HOW DID ACCIDENT OR ILLNESS OCCUR (TYPE)? | Driving Truck # 31010. Very difficult to steer, vibrate, especially when turning always & have to keep strong grip on steering wheel. Resulting in pain and stiffness in hands and fingers |

| | | |
|---|---|---|
| **U** | WHAT HAZARDOUS CONDITIONS, METHODS OR LACK OF PROTECTIVE DEVICES CONTRIBUTED? | Age of Truck over 20 miles, Truck maintenance wheel alignment wheel balance, vibrating Frame. Vibration steering wheel. Difficulty in steering, excessive highway travel forced by management |

| | | |
|---|---|---|
| **V** | WHAT UNSAFE ACT BY A PERSON CAUSED OR CONTRIBUTED TO THE INJURY OR ILLNESS? | Poor truck maintenance, over extend in life of truck excessive Highway Travel forced by management |

| | | | |
|---|---|---|---|
| **W** | HAVE MEDICAL SERVICES BEEN RENDERED TO THE EMPLOYEE? Scheduled YES ☐ NO ☑ | IS OR HAS THE EMPLOYEE BEEN HOSPITALIZED? | | YES ☐ NO ☑ |

| | | | |
|---|---|---|---|
| **X** | NAME AND ADDRESS OF PHYSICIAN | CITY, STATE | ZIP CODE |

| | | | |
|---|---|---|---|
| **Y** | NAME AND ADDRESS OF HOSPITAL | CITY, STATE | ZIP CODE |

| | | | |
|---|---|---|---|
| **Z** | REPORT PREPARED BY: (NAME—PRINT OR TYPE) Charles Green | SIGNATURE CLC | TITLE AND TELEPHONE NUMBER Admin. Claims 217/424-7082 |

ACCIDENT REPORTING DEPT., ILLINOIS INDUSTRIAL COMMISSION, 160 North LaSalle Street, Chicago, Illinois 60601

WITHOUT WRITTEN APPROVAL OF COMMISSION, THIS FORM MAY NOT BE REPRODUCED     (Rev. 1-81)

# Incident Analysis Form

Travelers Claim Number: _AFU7030_

Send completed form to: Manager of Health, Safety, and Training (Mike Crandall, F-25 )

Location: _Champaign_

Employee: _Charles Lee Green_
Title: _Substation Electrician_   Dept./RA: _2940_

On  (date) _5-27-04_ the local area Safety Committee conducted an analysis of the incident reported.

Those present at analysis were: _Bill Pray, Patt Easton,_
_Charles Green_

(The minimum present should be the injured if possible, at least one safety committee representative, and the injured employee's supervisor.)

Date of the Incident: _5-27-04_           Time of Day _9:00 Am_

Day of Week   S / M / T / W /(T)/ F / S      Did the incident occur during overtime?   Yes (No)

Number of Hours Worked: _N/A_      Conditions: (Routine)/ Emergency / Indoors / Outdoors

Weather:  (Clear)/ Rain / Snow / Ice / Mud / Cloudy / Windy

Were applicable, did the employee ask for help?   Yes  No  N/A
_Requested for truck to be seviced_

## WHO

Who was present and witnessed
the incident?            _N/A_

Who else has knowledge of
this incident?         _N/A_

Was tailgate safety meeting conducted? [ ] Yes   [ ] No   [X] N/A

If so, was meeting documented? [ ] Yes   [ ] No

Was the possible hazard identified during meeting? [ ] Yes   [ ] No

What, if any, equipment or people were available to avoid the
accident? (i.e., Was PPE used? Were the proper tools used?
Were the proper techniques used?)      _Truck needs serviced_

39

Revised 12/22/03

**WHERE**

Location of incident    Champaign / Danville

Location of others present during incident    N/A

**WHAT**

What happened (be detailed)
(chronological history of incident) approx 4 years ago - Charles had to drive from Danville to Champaign every day - adding many miles to truck - (100 miles round trip.) Causing condition of truck to deteriorate. To keep truck on the road - he must keep a very tight grip on the steering wheel causing pain in hand + fingers - also pain in ~~left~~ right arm also. When he wakes up in the morning fingers are curled up as if he were gripping the steering wheel. Truck has over 100,000 miles. Charles has difficulty picking up and holding on to things

40

## EXPLANATION

The physical acts that contributed to the incident
(i.e., pulling, tugging, slipping, hit by, etc.) _Extended + repetitive_
gripping of steering wheel.

Conditions that may have directly contributed to the incident.
(i.e., weather, location, ground – wet, dry, grass, dirt, rock, etc.-,
equipment.) _Vehicle is_
harder to steer in bad weather as well as in good
conditions.

What will prevent a recurrence of the incident. (i.e., proper use of PPE,
proper use of equipment, design, precautions taken for adverse conditions,
better communications, additional training, proper work practices, etc.) _Better truck_
maintenance or new truck

ACTION TAKEN/NEEDED: get truck in for service. -
look into getting Charles a different vehicle to drive.
Charles is seeking medical attention for pain in hands +
fingers. (Patty Easton, co-chair of Champaign Safety) took
truck for a drive - it does vibrate a lot even going slow -
it needs fixed or replaced.

## FOLLOW-UP

What steps have been taken?
(i.e., cover at safety meeting, get proper
equipment, get equipment repaired, get proper
PPE, carry sting kit.)                    Action Date:_____

FOLLOW UP ACTION ITEMS!

41

Revised 12/22/03

## MEDICAL TREATMENT

Doctor information _Scheduled to to doctor 5-18-04 -_
_Dr. Dethmers - Danville_

Date and time seen by Occupational
Physician, and/or personal doctor

Doctor's recommendations
(i.e., restrictions, medications, lost
work day case, treatment, etc.)

## REPORTING OF ACCIDENT

Date and time Travelers notified

IP person who made contact with Travelers

Traveler's contact person and contact phone

## SIGNATURES

Concurrence: _____    Date _5-27-04_
                  Employee

Approved: _____    Date _5/27/04_
                  Supervisor

_____
Safety-Committee Representative

Reviewed by: _____    Date _____

cc:  FOS & Regional Supervisors
     Safety Committee members
     Employee File
     Appropriate Director
     Appropriate Regional Business Management Service Director

42

# EXHIBIT    15

**Charles Green**                    To: William Pray/AmerenIP@IP
02/04/2005 01:23 PM                  cc:
                                     Subject: Re: wc/fmla 📄

Thank you that is all I've been asking you for, for quite some time.

c.g.


William Pray

**William Pray**                     To: Charles Green/AmerenIP@IP
02/03/2005 01:41 PM                  cc: Cathy Lowary/AmerenIP@IP, Ellen Hearn/AmerenIP@IP, Friedjof
                                     Toliver/AmerenIP@IP, Henry Gay/AmerenIP@IP, Jackie
                                     Lowe/AmerenIP@IP, Nancy Hines/AmerenIP@IP, Patty
                                     Easton/AmerenIP@IP, Phyl Orcutt/AmerenIP@IP, Sandy S
                                     Smith/AmerenIP@IP, Sue Doolen/AmerenIP@IP, Veda
                                     Cooling/AmerenIP@IP
                                     Subject: Re: wc/fmla 📄

Charles

Workers Comp is handled by Buzz Walsh 424-7133
FMLA is handled by Penny Robinson 424-8236.


Bill
Charles Green

**Charles Green**                    To: William Pray/AmerenIP@IP, Henry Gay/AmerenIP@IP, Friedjof
02/03/2005 11:48 AM                  Toliver/AmerenIP@IP, Veda Cooling/AmerenIP@IP, Sue
                                     Doolen/AmerenIP@IP, Nancy Hines/AmerenIP@IP, Phyl
                                     Orcutt/AmerenIP@IP, Jackie Lowe/AmerenIP@IP, Cathy
                                     Lowary/AmerenIP@IP, Patty Easton/AmerenIP@IP, Sandy S
                                     Smith/AmerenIP@IP
                                     cc: Ellen Hearn/AmerenIP@IP
                                     Subject: wc/fmla

I HAVE REQUESTED ON SEVERAL OCCASIONS ILLINOIS POWER CONTACT PERSON FOR
WORKERS COMPENSATION AND FMLA AMONG OTHER THINGS ASSOCIATED WITH WORKERS
COMP AND FMLA BUT I HAVE NOT RECEIVED ANY INFORMATION. WILL SOMEONE PLEASE
PROVIDE ME WITH THE ABOVE CONTACT PERSONS.

THANK YOU

C.G.

**Green, Charles L**

| | |
|---|---|
| **From:** | Green, Charles L |
| **Sent:** | Thursday, April 28, 2005 1:52 PM |
| **To:** | Pray, William Paul; Doolen, Sue E |
| **Subject:** | reminder |

Since Bill informed me that I had a birthday to take I will be taking off om april 29, 2005... time sheets have been faxed over for the week.

I have completed all inspections for the month of april except vermilion and TEC.  They are scheduled to be completed tomorrow but I will not be here, so you need to get someone to do them for me.  Bunsonville has been done.

Thank you


C.g.

**Green, Charles L**

| | |
|---|---|
| **From:** | Green, Charles L |
| **Sent:** | Tuesday, April 26, 2005 10:23 AM |
| **To:** | Pray, William Paul; Gay JR, Henry; Doolen, Sue E |
| **Subject:** | Time off |

I need to take vacation on may 6, 2005

vacation on july 1-july 8, 2005

may 24 2005 I have a dr appointment for my knee


thank you
c.g.

**Green, Charles L**

| | |
|---|---|
| **From:** | Green, Charles L |
| **Sent:** | Monday, March 21, 2005 10:29 AM |
| **To:** | Robinson, Penny E; Pray, William Paul; Cooling, Veda D |
| **Subject:** | FMLA |

I HAVE NOT RECEIVED A COPY OF THE LAST TWO FMLA FORMS FROM YOU FOR APPROVAL/DISAPPROVAL.

WHAT DO I NEED TO DO.

C.G.

**Green, Charles L**

| | |
|---|---|
| **From:** | Green, Charles L |
| **Sent:** | Monday, March 21, 2005 10:29 AM |
| **To:** | Robinson, Penny E; Pray, William Paul; Cooling, Veda D |
| **Subject:** | FMLA |

I HAVE NOT RECEIVED A COPY OF THE LAST TWO FMLA FORMS FROM YOU FOR APPROVAL/DISAPPROVAL.

WHAT DO I NEED TO DO.

C.G.

**Green, Charles L**

---

| | |
|---|---|
| **From:** | Charles Green [CGreen3@ameren.com] |
| **Sent:** | Friday, December 17, 2004 7:28 AM |
| **To:** | Hines, Nancy L |
| **Subject:** | Re: fmla |

Thanks for the forms...I receved them back from the doctors yesterday.  I guess I need to give them to Bill Pray.

c.g.

**Nancy Hines**

11/17/2004 08:42 AM

To:                                    Charles Green/DEC/Dynegy@IP
cc:                                    William Pray/DEC/Dynegy@IP, Henry Gay/DEC/Dynegy@IP, Veda Cooling/DE Sue Doolen/DEC/Dynegy@IP

DocLink

Subject:                          Re: fmla

I put the FMLA forms in the mail today.

**Charles Green**

11/17/2004 06:37 AM

To:                                    William Pray/DE Henry Gay/DEC/Dynegy@IP, Veda Cooling/DEC/Dynegy@IP, Nancy Hines/DEC/Dynegy@IP, Sue Doolen/DEC/Dynegy@IP
cc:
Subject:                          fmla

I am in need of FMLA forms can one of you provide me with them.  I have made a request for them in the past but never received them.

Please mail them to my home address.

Charles Green
520 Monterey
Danville Illinois 61832

Thank you

c.g.

9

# FMLA LEAVE REQUEST & RESPONSE
## (Family and Medical Leave Act of 1993)



This form contains medical information and will be maintained in files separate from employee personnel files

## FMLA REQUEST (TO BE COMPLETED BY EMPLOYEE)

Name: *Charles Green*

Title: *Substation Electrician*    Department: *Substation*

Supervisor: *William "Bill" Pray*   Soc Sec # *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*   Today's Date: *3-8-05*

I am requesting FMLA leave due to:
- ☐ the birth of my child or the placement of an adopted or foster child in my home
- ☑ a serious health condition of my own
- ☐ a serious health condition affecting my ☐ spouse ☐ child ☐ parent, for which I am needed to provide care

Leave to begin: *February 7, 2005* until: *all medical treatment is complete (unknown)*

Employee Signature: *[signature]*

Under the Family and Medical Leave Act, if you have worked at least one year and at least 1,250 hours in the past 12 months, you are eligible for up to 12 weeks unpaid leave under certain specific circumstances. You are entitled to receive health benefits as if you were still working. When returning to work, if you return within the 12 week period, you must be reinstated to the same or an equivalent job with the same pay, benefits and terms and conditions of employment. If you do not return to work following FMLA leave, you may be required to reimburse us for our share of health insurance premiums paid on your behalf during your FMLA leave.

## RESPONSE TO REQUEST (TO BE COMPLETED BY EMPLOYER)

☐ **You are <u>ELIGIBLE</u> for leave under the FMLA for:**
- ☐ employee's own serious health condition
- ☐ pregnancy or prenatal
- ☐ adoption, foster care, or time spent with newborn
- ☐ serious health condition of a spouse, parent, or child

Revised (11/2004)

1.  Except as explained below, you have a right under the FMLA for up to 12 weeks of unpaid leave in a 12 month period. Your health benefits must be maintained during any period of leave under the same conditions as if you continued to work. You will be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment on your return from leave if you return during or on the day of expiration of the 12 month period. If you do not return to work following FMLA leave for a reason other than: (1) the continuation, recurrence, or onset of a serious health condition which would entitle you to FMLA leave; or (2) other circumstances beyond your control, you may be required to reimburse us for our share of health insurance premiums paid on your behalf during your FMLA leave. Failure to return to work at the time indicated by the medical physician or practitioner may result in your failure to have the additional absence protected under FMLA.
2.  The requested leave will be counted against your annual FMLA leave entitlement.
3.  We will require that you substitute eligible paid leave for unpaid FMLA
4.  If unpaid leave is used resulting in insufficient coverage for deductions and insurance premiums:
    (a). If you normally pay a portion of the premiums for your health insurance, these payments must continue during the period of FMLA leave in order to maintain your health insurance.
    (b). You have a minimum 30-day grace period in which to make premium payments. If payment is not made timely, your group health insurance may be canceled. We will notify you in writing at least 15 days before the date that your health coverage will lapse, or, at our option, we may pay your share of the premiums during FMLA leave, and recover these payments from you upon your return to work.
    (c). Please contact the Benefits Center at 1-866-456-7697 to make the necessary arrangements concerning your particular benefit options or if you have questions.
5.  After an extended absence you may be required to present a fitness-for-duty certificate prior to being permitted to return to work. If such certification is required but not received, your return to work may be delayed until the certification is provided.
6.  While on leave, you are required to furnish us with periodic reports every 30 days of your status and intent to return to work. Failure to provide sufficient and timely information to determine FMLA eligibility could result in the delay or denial of FMLA benefits. If the circumstances of your leave change and you are able to return to work earlier than previously reported, you will be required to notify us at least two work days prior to the date you intend to report for work.
7.  Your pay status may be subject to review if your medical restrictions change.

## ❑ You are **INELIGIBLE** for FMLA leave, for the reason(s) identified below:

❑ You have not been employed for the equivalent of at least 12 months.

❑ You have not actually worked 1250 hours (paid work time, no paid leaves) in the previous 12 months.

❑ You have exhausted the 480 hours FMLA entitlement in the previous 12 months.

❑ You failed to give the company 30 days notice for a foreseeable situation.

❑ Your claimed condition does not satisfy the definition of Serious Health Condition in the FMLA.

❑ Required information was not provided on the Medical Certification. Adequate information to make a determination regarding your condition was not provided, or was untimely.

❑ Your ill family member does not qualify as a spouse, parent, or child.

❑ The condition of your spouse, parent, or child does not require your care as defined by the FMLA.

❑ Other: _____

_____

Employer Signature:_____ Title: _____

Date:_____                                    **Revised (11/2004)**

**Page 3**

## MEDICAL CERTIFICATION OF PHYSICIAN OR PRACTITIONER FOR FAMILY & MEDICAL LEAVE (FMLA)



This form contains medical information and will be maintained in files separate from employee personnel files

### Please Print or Type (except signature)

Employee should return this form to the company within fifteen (15) days of request to have absence considered FMLA. Failure to return it in the required time limit may result in the absence being disqualified for FMLA and therefore subject to Company absenteeism standards.

**PART A**
**TO BE COMPLETED BY THE EMPLOYEE REQUESTING FAMILY AND/OR MEDICAL LEAVE**
**** ALL FIELDS IN THIS PART MUST BE COMPLETED ****

Today's Date: *3-21-05*

1. Name: *Charles Green*

2. Soc. Sec. #: *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*

2. I am requesting FMLA leave due to:

☐ Birth of my child or placement of my adopted or foster child in my home

☑ My own serious health condition

☐ The serious health condition of my:     ☐ spouse,     ☐ child,     ☐ parent,    for which I am needed to provide care.

3. **When Family Leave is needed to care for a family member with a serious health condition**, you must state the care you will provide and an estimate of the time period during which this care will be provided, including a schedule if leave is to be taken intermittently or on a reduced leave schedule:

*Patient under ment (M.) knee Arthroscopy on 3-7-05*

Under the Family and Medical Leave Act, if you have worked at least one year and at least 1,250 hours in the past 12 months, you are eligible for up to 12 weeks unpaid leave under specific circumstances. You are entitled to receive health benefits as if you were still working. When returning to work, you must be reinstated to the same or an equivalent job with the same pay

# MEDICAL CERTIFICATION OF PHYSICIAN OR PRACTITIONER    Page 4

**PART B**
**TO BE COMPLETED BY THE PHYSICIAN OR HEALTH PRACTITIONER**
**\*\* ALL FIELDS IN THIS PART MUST BE COMPLETED \*\***

4. CHECK CONDITION(S) APPLICABLE TO THIS REQUEST FOR FMLA LEAVE:

❏ a) INPATIENT HOSPITAL CARE (i.e., admitted for overnight stay) in a hospital or medical facility, including any related subsequent treatment or period of incapacity. This can be for any amount of time.
   Examples: surgery with overnight stay in hospital

☒ b) ABSENCE PLUS TREATMENT. Incapacitation for more than 3 consecutive calendar days due to a serious health condition, along with continuing treatment by (or under the supervision of) a health care provider, where employee goes to physician or health practitioner twice, <u>or</u> goes once and receives a regimen of treatment (i.e., medication, therapy). A regimen of treatment <u>does not</u> include the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed rest, drinking fluids, exercise, or other similar activities that can be initiated without a visit to a health care provider. Incapacitation is the inability to perform the essential functions of a person's job, attend school, or perform other regular daily activities due to the serious health condition.
   Examples: contagious diseases, outpatient surgery, severe infections, injuries, pneumonia, severe nervous disorders, all more than 3 consecutive calendar days

❏ c) PREGNANCY
   Examples: prenatal doctor visits, severe morning sickness, pregnancy complications, delivery

❏ d) CHRONIC CONDITIONS REQUIRING TREATMENT, which can be for short periods of time, periodically.
   Examples: seizures, asthma, serious migraines, serious allergies, lupus, AIDS. An illness such as flu, resulting from a weakened immune system (chronic condition), may be FMLA as well

❏ e) PERMANENT/LONG-TERM CONDITIONS REQUIRING SUPERVISION. A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective.
   Examples: Alzheimer's, strokes, terminal diseases, severe strokes

❏ f) MULTIPLE TREATMENTS (NON-CHRONIC CONDITIONS) for a previously accepted FMLA condition. The treatments are necessary for the improvement of the condition. These can be for short periods of time, periodically.
   Examples: physical therapy, chemotherapy, radiation, dialysis, treatments for substance abuse, cosmetic surgery and/or skin grafts due to an accident

5. Description of the medical facts supporting condition(s) checked under Item #4: _Surgery_

_and therapy post-op._

6. Medical Code # for physical condition (e.g., CPT code, DSM IV Code): _717.9_

7. Date condition began: _Insperific. Probable duration of condition or incapacitation:_ _4-6 wks_
   _disability begon 3-7-05_

9 (a). If patient is an employee, how condition checked in Item #4 prevents employee from performing job duties (Job Duties for Employee May Be Attached): _No standing / walking / kneeling / bending_
_No lifting_

9 (b). Is employee able to perform work of any kind? _[no]_

Revised (11/2004)

# MEDICAL CERTIFICATION OF PHYSICIAN OR PRACTITIONER    Page 5

10. Regimen of treatment prescribed (Prescribed medications or therapy):

*Sq post-op exam 3-15-05 begin therapy @ that time*

11. Will it be necessary for the employee to work only intermittently or work on a less than full schedule as a result of the condition or treatment?    YES    ? NO    Probable Duration: __4-6 wks__

12. If the condition is a chronic condition or pregnancy, is the employee presently incapacitated? ☐ YES ☐ NO
If Yes, what is the likely duration and frequency of incapacity? _____

---

**PART C**
**TO BE COMPLETED BY THE PHYSICIAN OR PRACTITIONER FOR CERTIFICATON RELATING ONLY TO CARE FOR THE EMPLOYEE'S SERIOUSLY ILL FAMILY MEMBER**
** ALL FIELDS IN THIS PART MUST BE COMPLETED **

13. Does (or will) the patient require assistance for basic medical, hygiene,
nutritional needs, safety, or transportation?    ☐ YES    ☐ NO

14. Is the employee's presence necessary or would it be beneficial for the
care of the patient? (This may include psychological comfort.)    ☐ YES    ☐ NO

15. Estimate the period of time care is needed or the employee's presence would be beneficial:

---

**PART D**
**TO BE COMPLETED BY PHYSICIAN OR PRACTITIONER**
** ALL FIELDS IN THIS PART MUST BE COMPLETED **

16. Physician or Health Practitioner:
PRINTED _____
SIGNATURE _____
Date: _____    Phone: __705-447-4165__

---

Supervisor: Fax to HR Compliance Section 217-420-0823    Date Received & Faxed: _____
Mail original to Human Resources E-05

Revised (11/2004)